Eric I. Abraham
HILL WALLACK LLP
202 Carnegie Center
CN 5226
Princeton, NJ 08543
Telephone: (609) 924-0808
Facsimile: (609) 452-1888

*Of Counsel:*
Richard J. Basile
David W. Aldrich
Roy D. Gross
Erin R. Woelker
ST. ONGE STEWARD JOHNSTON & REENS LLC
986 Bedford Street
Stamford, Connecticut 06905-5619
Telephone: (203) 324-6155
Facsimile: (203) 327-1096

*Attorneys for Defendants Apotex, Inc. and Apotex Corp.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTRAZENECA LP and<br>ASTRAZENECA AB,<br><br>     Plaintiffs,<br><br>  v.<br><br>APOTEX, INC. and APOTEX CORP.,<br><br>     Defendants. | Consolidated Civil Action No.: 1:08-CV-1512<br>(RMB) (AMD) |

## MEMORANDUM IN SUPPORT OF DEFENDANT APOTEX'S
## MOTION TO COMPEL THE PRODUCTION OF
## COMMUNICATIONS WITH IN-HOUSE COUNSEL IN SWEDEN

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION........................................................................................ 1

BRIEF STATEMENT OF THE FACTS ...................................................... 2

ARGUMENT ............................................................................................... 5

I.     The Withheld Documents Cannot Be Withheld On the Basis of Attorney-
       Client Privilege ................................................................................. 5

       A.     Swedish Law Applies to the Question of Whether the Withheld
              Documents Are Shielded from Discovery By An Attorney-Client
              Privilege ............................................................................... 6

       B.     The Withheld Documents Are Not Shielded from Discovery By
              An Attorney-Client Privilege Under Swedish Law...................... 11

II.    The Withheld Documents Cannot Be Withheld On the Basis of Swedish
       Trade Secret Law ............................................................................ 12

       A.     The Withheld Documents Should Be Produced Because Plaintiffs
              Never Filed A Motion for Protective Order Seeking Permission to
              Withhold These Non-Privileged Documents ............................... 12

       B.     The Withheld Documents Should Also Be Produced Because Plaintiffs'
              Purported Authority for Withholding Them Is A Foreign Statute,
              Which Does Not Deprive An American Court of the Power to Order
              Discovery from A Party Subject to Its Jurisdiction ..................... 15

CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*Advertising to Women, Inc. v. Gianni Versace S.p.A,*
　　1999 WL 608711, *2 (N.D. Ill. 1999) ................................................................. 10

*Astra Aktiebolag v. Andrx Pharms., Inc.,*
　　208 F.R.D. 92 (S.D.N.Y. 2002) ......................................................... 7,8,9,10

*Baxter Travenol Labs., Inc. v. Abbott Labs.,*
　　1987 WL 12919, *8 (N.D. Ill. 1987) ................................................................. 10

*Bayer AG & Miles, Inc. v. Barr Labs., Inc.,*
　　1994 WL 705331, *6 (S.D.N.Y. 1994) ............................................................. 10

*Beckman Industs., Inc. v. Int'l Ins. Co.,*
　　966 F.2d 470 (9th Cir. 1992) ............................................................................. 18

*Bristol-Myers Squib Co. v. Rhone-Poulenc Rorer, Inc.,*
　　1998 WL 158958, *1 (S.D.N.Y. 1998) ............................................................. 10

*Buttitta v. Allied Signal, Inc.,*
　　2010 WL 1427273 (N.J. Super. A.D., April 5, 2010) ................................. 15,16,18

*Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.,*
　　103 F.R.D. 52 (D.D.C. 1984) ........................................................................... 6,7

*Fisher v. United States,*
　　425 U.S. 391, 96 S.Ct. 1569 (1976) .................................................................. 5

*Glaxo, Inc. v. Novopharm, Ltd.*,
  148 F.R.D. 535 (E.D.N.C. 1993) ........................................................... 5

*Golden Trade, S.r.L. v. Lee Apparel Co.*,
  143 F.R.D 514 (S.D.N.Y. 1992) ................................................... 6,7,9,10

*Infineon Techs. AG v. Green Power Techs. Ltd*,
  247 F.R.D. 1 (D.D.C. 2005) ................................................................. 18

*In re Ampicillin Antitrust Litig.*,
  81 F.R.D. 377 (D.D.C. 1978) ................................................................. 7

*In re Auto. Refinishing Paint Antitrust Litig.*,
  358 F.3d 288 (3rd Cir. 2004) ............................................................... 15

*In re Rivastigmine Patent Litig.*,
  237 F.R.D. 69 (S.D.N.Y. 2006) ......................................................... 5,11

*McCook Metals L.L.C. v. Alcoa Inc.*,
  192 F.R.D. 242 (N.D. Ill. 2000) ....................................................... 5,10

*Odone v. Croda Int'l. PLC.*,
  950 F.Supp. 10 (D.D.C. 1997) ...................................................... 7,8,10

*Opperman v. Allstate New Jersey Ins. Co.*,
  2008 WL 5071044, *2 (D.N.J. 2008) ............................................. 12,13

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3rd Cir. 1994) ................................................................. 12

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) ..................................................... 15,16,18

*Robotic Parking Sys., Inc. v. City of Hoboken,*
    2010 WL 324524, *5 (D.N.J. 2010)................................................................12,13

*Schindler Elevator Corp., v. Otis Elevator Co.,*
    657 F.Supp.2d 525 (D.N.J. 2009) .................................................................14,15

*Smithkline Beecham Corp. v. Apotex Corp.,*
    193 F.R.D 530 (N.D. Ill. 2000) ........................................................................5,6

*Societe Nationale Industrielle Aerospatiale v. U.S. District Court,*
    482 U.S. 522 (1987) ...................................................................................15,16,18

*Softview Computer Prods. Corp. v. Haworth Inc.,*
    58 U.S.P.Q.2d 1422 (S.D.N.Y. 2000) ...............................................................10

*Tulip Computers Int'l v. Dell Computer Corp.,*
    210 F.R.D. 100 (D. Del. 2002).............................................................................6

*United States v. Landof,*
    591 F.2d 36 (9th Cir. 1978).................................................................................5

*United States v. Vetco, Inc.,*
    691 F.2d 1281 (9th Cir. 1981)...........................................................................14

*VLT Corp. v. Unitrode Corp.,*
    194 F.R.D. 8 (D. Mass. 2000) .............................................................................6

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,*
    707 F. Supp. 1429 (D. Del. 1989) .......................................................................6

**Rules & Statutes**

Federal Rule of Civil Procedure 26(c) .............................................................. 12

Federal Rule of Civil Procedure 37(a) .............................................................. 1

Local Civil Rule 37.1 ....................................................................................... 1

Restatement (Third) of Foreign Relations Law § 442(1)(c) ........................................ 15

## INTRODUCTION

After Defendants Apotex, Inc. and Apotex Corp (collectively, "Apotex") and Plaintiffs AstraZeneca LP and AstraZeneca AB (collectively, "AstraZeneca" or "Plaintiffs") each submitted letters to the Court addressing Plaintiffs' refusal to fully respond to certain discovery requests, the Court conducted a discovery conference on April 29, 2010.  During that conference, the Court ordered Plaintiffs to respond to certain requests.  Additionally, the Court granted Apotex leave to file a formal motion to compel with respect to several discovery disputes if— after the production of additional documents (which Plaintiffs completed on May 21, 2010) and after further consideration and consultation with Swedish counsel concerning a declaration that had been submitted by Plaintiffs—Apotex believed such a motion was warranted.

Among the issues discussed during this discovery conference was Plaintiffs' refusal to produce documents that have been withheld on the ground that they comprise communications between in-house counsel and other employees in Sweden concerning non-U.S. activities.  After further considering the declaration submitted by Plaintiffs and consulting with Swedish counsel, Apotex submits that a formal motion concerning the production of these documents is warranted. Accordingly, pursuant to Federal Rule of Civil Procedure 37(a) and Local Civil Rule 37.1, Apotex respectfully submits this memorandum in support of its Motion to Compel the Production of Communications with In-House Counsel In Sweden.

Plaintiffs should be compelled to produce all withheld documents that comprise communications between Swedish in-house employees relating to the prosecution of Swedish and international patent applications because they have no proper basis for withholding them. Plaintiffs have refused to produce these documents based upon two arguments: (1) their *original* basis for withholding the documents, which is that the documents are allegedly privileged, and

1

(2) their *newer* purported basis for withholding these documents, which is that the documents allegedly are not discoverable because they are protected by the Swedish Trade Secret Protection Act. However, Plaintiffs' arguments concerning attorney-client privilege fail because U.S. privilege law does not apply, as these communications do not "touch base" with the United States, and under Swedish law, communications between in-house counsel and other company employees are not protected by an attorney-client privilege. Likewise, Plaintiffs' new arguments concerning the Swedish Trade Secret Protection Act fail because foreign statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence, regardless of whether the act of production may violate the foreign statute.

Accordingly, Apotex respectfully requests that the Court compel Plaintiffs to produce all documents relating to the prosecution of Swedish and international patent applications, including document nos. 6, 8-13, 19-26, 30-32, 118-119, 127-133, 149-153, 173-176, 187, 194 and 248 on Plaintiffs' privilege log, as well as all similar communications concerning in-house attorneys and legal staff in Sweden.

## BRIEF STATEMENT OF FACTS

On January 15, 2010, Plaintiffs sent Apotex and co-defendant Breath, Ltd. a letter stating that certain documents allegedly protected by the attorney-client privilege and/or work product immunity were inadvertently produced and requested the return of these documents. Gross Decl.,[1] Ex. A. Included in this letter was a series of pages bearing bates numbers AZ1343541-AZ134346.

---

[1] Declaration of Roy D. Gross In Support of Defendant Apotex's Motion to Compel the Production of Communications with In-House Counsel In Sweden.

On January 19, 2010, Apotex requested clarification regarding whether AZ1343541-AZ134346 is actually protected by the attorney-client privilege and/or work product immunity. Gross Decl., Ex. B. On January 20, 2010, Plaintiffs corrected their request, indicating that only AZ1343541 was allegedly protected by the attorney-client privilege, as it reflects communications with counsel (James Peel). Gross Decl., Ex. C. Upon receiving this clarification, Apotex sent Plaintiffs a follow-up letter on February 2, 2010 asking whether James Peel was an in-house employee in Sweden at the time of the communication in question and whether the communication in question related to the prosecution of a Swedish patent application (SE19970004186). Gross Decl., Ex. D. Plaintiffs eventually confirmed both points on February 22, 2010. Gross Decl., Ex. E. That same day, Apotex advised Plaintiffs that communications with in-house counsel in Sweden relating to a Swedish patent application are not protected by an attorney-client privilege and requested that Plaintiffs immediately produce all documents that have been improperly withheld on this basis. Gross Decl., Ex. F.

Plaintiffs rebuffed this request in a letter dated February 25, 2010, in which they cited two cases to support the position that the attorney-client privilege applies to protect AZ1343541 from disclosure. Gross Decl., Ex. G. However, as Apotex subsequently explained to Plaintiffs, these cases are inapposite. Gross Decl., Ex. H. Though it does not have the burden to do so, Apotex provided Plaintiffs with a detailed explanation and references demonstrating that communications with in-house employees in Sweden are not protected by an attorney-client privilege. *Id.* Apotex again requested that Plaintiffs produce all communications withheld on this basis, and Apotex requested a teleconference to discuss the matter if Plaintiffs continued to maintain that this privilege exists. *Id.*

Plaintiffs ignored these requests. On March 10, 2010, Apotex received Plaintiffs' confidential privilege log, which showed that Plaintiffs had improperly withheld many additional documents on this basis. Gross Decl., Ex. I. Because Plaintiffs would not respond to the explanation and evidence provided by Apotex and continued to withhold documents on this improper basis, Apotex sought the Court's assistance via letter on April 7, 2010. Gross Decl., Ex. J. Plaintiffs responded with their own letter on April 19, 2010, raising two purported justifications for their refusal to produce these documents. Gross Decl., Ex. K.

First, Plaintiffs again argued that the documents were protected by an attorney-client privilege. Though Plaintiffs had originally suggested that communications with in-house counsel in Sweden are shielded by an attorney client privilege (Gross Decl., Ex. G), Plaintiffs—unable to maintain this position in light of the evidence subsequently provided by Apotex (Gross Decl., Ex. H; Ex. J. at 7)—now argue that U.S. privilege law applies (Gross Decl., Ex. K at 9-12). Second, Plaintiffs presented a new argument that the documents are shielded from discovery by the Swedish Trade Secret Protection Act. For the reasons set forth below, Apotex submits that these arguments are fundamentally flawed, and thus, pursuant to the Court's direction at the April 29, 2010 status conference, Apotex files the present motion herewith.

In its letter to the Court, Apotex identified ninety-two communications on Plaintiffs' privilege log that comprise communications to and from Mr. James Peel. Gross Decl., Ex. J at 8, n.36. In their responsive letter to the Court, Plaintiffs stated that fifty-three of these documents relate to the prosecution of a U.S. patent application. Gross Decl., Ex. K at 9. Accordingly, Apotex seeks production of the remaining thirty-nine communications with Mr. Peel, which Plaintiffs acknowledged relate to the prosecution of non-U.S. patent applications[2]—namely, an

---

[2] Plaintiffs' only specifically identify thirty-seven of these thirty-nine documents as relating to non-U.S. patent applications, remaining silent on the remaining two (document nos. 119 and 133). Because

earlier Swedish patent application and an earlier international ("PCT") application filed in Sweden. *Id.* at 10. Specifically, Apotex seeks production of document nos. 6, 8-13, 19-26, 30-32, 118-119, 127-133, 149-153, 173-176, 187, 194 and 248 on Plaintiffs' privilege log. Additionally, as stated in Apotex's letter to the Court, Apotex also seeks production of documents reflecting communications with any other in-house counsel or legal staff in Sweden that do not relate to U.S. activities.

<h2 style="text-align:center"><u>ARGUMENT</u></h2>

**I.      The Withheld Documents Cannot Be Withheld On the Basis of Attorney-Client Privilege**

"The burden of proving privilege rests on the party resisting disclosure." *Glaxo, Inc. v. Novopharm, Ltd.*, 148 F.R.D. 535, 538 (E.D.N.C. 1993) (citing *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569 (1976)). *See also United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978). In its letter to the Court of April 19, 2010, Plaintiffs argued that Apotex had not submitted a declaration concerning Swedish privilege law. Gross Decl., Ex. K at 12. However, this is not Apotex's burden, and when foreign law is involved, "[t]he burden is on the party asserting the privilege to provide the court with the applicable foreign law, and demonstrate that the privilege applies to the documents it seeks to exclude from discovery." *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 535 (N.D. Ill. 2000). *See also McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D 242, 256 (N.D. Ill. 2000); *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 100 (S.D.N.Y. 2006) (rejecting assertion of privilege in Swedish documents). Moreover, the

---

Plaintiffs have not established that these two documents relate to the prosecution of a U.S. application (and would therefore be subject to U.S. privilege law), Apotex seeks their production as well.

Declaration of Peter Sande, submitted by Plaintiffs with their letter to Court, does not attest to

attorney-client privilege in Sweden, but rather, is all about Swedish trade secret law. Gross

Decl., Ex. L. Nevertheless, Apotex submits the Declaration of Linda Landén ("Landén Decl.") in

support of this motion. Gross Decl., Ex. M.

### A.   Swedish Law Applies to the Question of Whether the Withheld Documents Are Shielded from Discovery By An Attorney-Client Privilege

When determining whether U.S. or foreign privilege law applies to communications

between foreign patent attorneys and their clients, courts typically apply the "touching base" test

in conjunction with public policy considerations of the American forum. *Smithkline Beecham*

*Corp. v. Apotex Corp.*, 193 F.R.D 530, 536, n.6 (N.D. Ill. 2000); *VLT Corp. v. Unitrode Corp.*,

194 F.R.D. 8, 15 (D. Mass. 2000); Gross Decl., Ex. K (Pls.' letter of April 19, 2010) at 9 (listing

cases). "Under this test, communications that relate to activity in a foreign country are governed

by that country's privilege law, while communications that 'touch base' with the United States

are controlled by United States privilege law." *Tulip Computers Int'l v. Dell Computer Corp.*,

210 F.R.D. 100, 104 (D.Del. 2002).

Accordingly, communications with foreign patent attorneys relating to the prosecution of

a patent application *in the United States* do "touch base" with the United States, while

communications with foreign patent attorneys relating to the prosecution of patents *in foreign*

*countries* do not "touch base" with the United States. *Willemijn Houdstermaatschaapij BV v.*

*Apollo Computer Inc.*, 707 F. Supp. 1429, 1447 (D. Delaware, 1989); *Chubb Integrated Sys. Ltd.*

*v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 65 (D.D.C.1984). Those communications that do *not*

touch base with the United States are "governed by the privilege law of the foreign country in

which the patent application is filed," even if the client is a party to a lawsuit in the United

6

States. *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D at 514, 520 (S.D.N.Y. 1992). *See also, Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) (applying German law, since Germany has most compelling interest to protect the documents); *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 377, 391 (D.D.C.1978) (extending the British privilege law pursuant to British Civil Evidence Act of 1968 to a British patent agent's communications that related solely to patent activities outside the United States); *Chubb,* 103 F.R.D. at 65 (affording comity of foreign privilege to patent agents when the communications of the patent agents related solely to activities outside the United States).

In the present case, the communications at issue do not touch base with the United States because they were between in-house counsel and other employees in Sweden, some of which related to the prosecution of a Swedish patent application, others of which related to a PCT application filed in Sweden. Therefore, these communications should be governed by the privilege law of Sweden, the country in which these patent applications were filed.

However, Plaintiffs have turned up two atypical cases, which they cite in their letter to the Court of April 19, 2010. Relying on these cases, Plaintiffs take the position that the communications at issue "touch base" with the United States because the Swedish patent application and the PCT application were later used to establish priority for Plaintiffs' U.S. patent application. While it is true that the later filed U.S. patent application claims priority to the original Swedish application, the communications at issue deal only with the applications filed in Sweden, and thus, relate to proceedings before a Swedish patent office. The communications do not concern the future event of using a Swedish application to claim a priority date for a later U.S. filing, and thus, they do not "touch base" with the United States.

7

The two cases Plaintiffs cite have unusual sets of facts completely different from this case, and therefore, are inapposite. To support its position, Plaintiffs cite *Odone v. Croda Int'l PLC.*, 950 F.Supp. 10 (D.D.C. 1997). In *Odone*, the court applied U.S. discovery and privilege rules to communications between a British patent agent and the defendant that related to a British patent application. However, in contrast with the present case, the *Odone* court was faced with the decision of whether to apply U.S. discovery and privilege rules or foreign rules after having determined that the relevant British law was *more restrictive* toward discovery than U.S. law and that the defendant had failed to establish the applicability of the British privilege law. *Id.* at 15. Declining to apply the British law, the court reasoned that "[i]t would be against U.S. public policy to *limit* discovery... by awarding comity to the *restrictive* discovery laws of Great Britain while at the same time extending the full panoply of our open discovery privileges to foreign defendants that have availed themselves to the protections of U.S. patent and trademark law pursuant to the Patent Cooperation Treaty." *Id.* at 14 (emphasis added). In other words, the interest in applying the more liberal U.S. discovery rules (and not allowing a foreign law to restrict discovery that would otherwise be allowable in the U.S. from a party that had availed itself of the protections of U.S. law) was a determining factor in the *Odone* court's decision. In contrast, in the present case, the proper application of Swedish privilege law would lead to *more open* discovery, rather than restricting it, as Sweden specifically does not shield communications with in-house counsel from discovery.

Plaintiffs also inappropriately rely on *Astra Aktiebolag,* a case which cites *Odone.* As noted above, *Astra Aktiebolag* itself is one of the many cases which acknowledge that communications that do not touch base with the U.S. are governed by the law of the country in which the patent application is filed. *Astra Aktiebolag,* 208 F.R.D. at 98. However, in that case,

the court was faced with the issue of what law to apply concerning Korean communications, and ultimately declined to apply Korean privilege law—essentially, because there wasn't one. *Id.* The court explained that Korea had basically no attorney-client privilege law, and that the reason for this was that it was not necessary, as there was minimal discovery in Korean civil suits *generally.* Thus, the application of Korean "privilege law" (i.e., the absence thereof) in a vacuum would actually lead to the disclosure of documents that would normally *not* be undiscoverable in Korea. *Id.* Rather than applying the lack of a Korean attorney-client privilege in this manner and ordering the discovery of all the documents—which "would offend the very principles of comity that choice-of-law rules were intended to protect"—the court resorted to the application of U.S. privilege law. *Id.*

Discovery practices in Sweden are completely different from those in Korea. Sweden has its own discovery procedures and has developed an attorney-client privilege law as part of those discovery practices—it has simply elected to not shield communications between in-house counsel and other employees from discovery. Thus, this Court does not face the same dilemma as the court in *Astra Aktiebolag* (and need not resort to U.S. privilege law in order to avoid offending principles of comity), as Sweden has established an attorney-client privilege and set forth what types of communications it protects.

In *Astra Aktiebolag,* the issue of Korean privilege was a peculiar one, and it should be noted that, when considering communications between *German* counsel and employees, the *Astra Aktiebolag* court applied German law, not U.S. law. *Id.* at 98. As noted above, *Astra Aktiebolag* itself observed:

> Communications "relating to assistance in prosecuting patent applications in their own foreign country" or "rendering legal advice…on the patent law of their own country" are, as a matter of comity, governed by the privilege "law of the foreign country in which the patent application is filed," even if the client is a party to an American lawsuit."

9

*Id.* (citing *Golden Trade* at 520 (internal citations omitted)).  Plaintiffs' citation to the *Astra*

*Aktiebolag* case in support of its position based on how that court handled the unusual, isolated

situation of Korean discovery is disingenuous.

Citing these two inapposite cases, Plaintiffs inappropriately suggest that communications

with foreign counsel concerning foreign patent applications touch base with the U.S.  This is *not*

the general rule.  Contrary to Plaintiffs' suggestion, it is well accepted that communications with

foreign counsel concerning foreign patent applications do *not* touch base with the U.S.  *See, e.g.,*

*Softview Computer Prods. Corp. v. Haworth Inc.*, 58 U.S.P.Q.2d 1422, 1433 (S.D.N.Y. 2000)

(holding that"[i]f a communication with a foreign patent agent involves a foreign patent

application, then as a matter of comity, the law of that foreign country is considered regarding

whether that law provides a privilege comparable to the attorney-client privilege."); *Bristol-*

*Myers Squib Co. v. Rhone-Poulenc Rorer, Inc.*, 1998 WL 158958, *1 (S.D.N.Y. 1998)); *McCook*

*Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 256 (N.D. Ill. 2000); *Advertising to Women, Inc. v.*

*Gianni Versace S.p.A*, 1999 WL 608711, *2 (N.D. Ill. 1999); *Bayer AG & Miles, Inc. v. Barr*

*Labs., Inc.*, 1994 WL 705331, *6 (S.D.N.Y. 1994); *Baxter Travenol Labs., Inc. v. Abbott Labs.*,

1987 WL 12919, * 8 (N.D. Ill. 1987).

Additionally, public policy favors applying Swedish privilege law, not U.S. privilege law.

As explained below, in Sweden, communications between in-house counsel and other employees

are not shielded from discovery.  Therefore, Swedish law would lead to the discovery of relevant

documents, rather than the preclusion of these documents.  Hence, public policy favors applying

the well-established, general rule that the law of the foreign country should be applied to

communications concerning non-U.S. patent applications, rather than the rare *exception*, such as

*Odone*, where public policy (open disclosure of documents) favored applying U.S. law.

**B.     The Withheld Documents Are Not Shielded from Discovery By An Attorney-Client Privilege Under Swedish Law**

It is well understood that there is no attorney-client privilege for in-house counsel in Sweden. Landén Decl. at ¶¶ 8-11 (Gross Decl., Ex. M). *See also* Gross Decl., Exs. N-S (publications describing same). The attorney-client privilege that exists under Swedish law is conferred by Chapter 36, Section 5 of the Swedish Procedural Code, under which the attorney-client privilege in Sweden exists only between clients and members of the Swedish Bar Association (bearing the title "advokat"). Landén Decl. at ¶¶ 8-10. Only lawyers in private practice are allowed membership in the SBA; in-house counsel are not permitted to be members. *Id.* at ¶¶ 9-10. This is a basic tenet of Sweden's legal profession, which insures that advokats are not subject to undue influence, a concern which applies to in-house counsel. *See, e.g.,* Gross Decl., Ex. T (SBA publication at 1, explaining that not allowing in-house lawyers to become members of the bar "is a corner stone of professional independence.").

Plaintiffs obviously no longer dispute this, as their letter to the Court of April 19, 2010 simply argues that the Court should apply U.S. law instead of Swedish law (Gross Decl., Ex. K at 9-12, and the Declaration of Peter Sande submitted with Plaintiffs' letter to the Court certainly makes no claim that Swedish privilege law shields communications with in-house counsel (Gross Decl., Ex. L). Therefore, because Mr. Peel was in-house counsel in Sweden, and because Swedish law applies to those communications with Mr. Peel that relate to patent applications filed in Sweden, these documents are not protected by an attorney-client privilege. *In re Rivastigmine Patent Litig.*, 237 F.R.D. at 100 (rejecting assertion of privilege where Plaintiffs' did not meet burden of submitting evidence demonstrating privilege under Swedish law). Additionally, though Apotex does not know which other individuals on Plaintiffs' privilege log

11

are Swedish in-house counsel and legal staff, communications with such in-house personnel that were not specifically directed to obtaining advice concerning the later filed U.S. patent application are governed by Swedish law, and thus, are not protected by an attorney-client privilege.

## II.     The Withheld Documents Cannot Be Withheld On the Basis of Swedish Trade Secret Law

In their letter to the Court of April 19, 2010, Plaintiffs raised—for the first time—a new purported basis for not producing these documents—namely, that they are protected under the Swedish Trade Secret Protection Act.  Like their privilege claim, Plaintiffs' reliance on the Swedish Trade Secret Protection Act is improper.

### A.     The Withheld Documents Should Be Produced Because Plaintiffs Never Filed A Motion for Protective Order Seeking Permission to Withhold These Non-Privileged Documents

"It is well-established that there is no absolute privilege protecting trade secrets and similar confidential information from discovery." *Opperman v. Allstate New Jersey Ins. Co.*, 2008 WL 5071044, at *2 (D.N.J. 2008).  Therefore, if Plaintiffs wished to withhold documents for this reason, it was their burden to move for a protective order pursuant to Fed.R.Civ.P. 26(c) and establish that good cause exists for the same. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3rd Cir. 1994).  The mere fact that documents may contain trade secrets does not, in and of itself, give a party the right to withhold those documents. *Robotic Parking Sys., Inc. v. City of Hoboken*, 2010 WL 324524, *5 (D.N.J. 2010) (motion for protective order denied in part—ordering discovery confidentiality agreement between parties, but ordering production of trade secret documents—where a party had "failed to meet its burden to demonstrate that total

12

non-disclosure is warranted"); *Opperman*, 2008 WL 5071044, at *3 (ordering production of trade secrets where party did not meet burden and information would be protected by discovery confidentiality order). Indeed, there is a discovery confidentiality order in place in this case specifically for the purpose of providing adequate protection for any trade secrets and similar confidential information produced by the parties.

Yet, Plaintiffs have never moved for a protective order to establish why they do not need to produce these documents on the basis of Swedish trade secret law, but instead, have simply withheld these documents. This is, of course, because this creative theory regarding the Swedish Trade Secret Protection Act is a new one, and it is not the reason Plaintiffs withheld the documents. Now realizing that their privilege claim is fundamentally flawed, Plaintiffs have resorted to this new theory in a last ditch effort to justify withholding them. However, Plaintiffs have never filed a motion for a protective order seeking permission to withhold these non-privileged documents on this basis.

Indeed, Plaintiffs have made virtually no attempt to even show that these documents would qualify for protection under relevant Swedish law. Though Plaintiffs submitted a lengthy declaration addressing the Swedish Trade Secret Protection Act (Gross Decl. Ex. K at 12-13), their discussion of how this relates to the facts of the case is limited to a single paragraph at the very end of their letter to the Court (Gross Decl. Ex. K at 12-13). Citing two paragraphs from Mr. Sande's declaration, Plaintiffs' letter suggests that communications between in-house counsel and other employees are trade secrets, and Swedish law forbids forced disclosure of trade secrets absent extraordinary circumstances, and therefore, forced disclosure of communications between in-house counsel and other employees is forbidden under Swedish law. *Id.* This argument is specious.

As Mr. Sande states, any type of information relating to a business could qualify as a trade secret. Sande Decl. ¶15; Landén Decl. at ¶16. This includes communications with in-house counsel, which, if they satisfy the requirements of a trade secret under the Act, are considered trade secrets. Sande Decl. ¶15. However, communications with in-house counsel are not *per se* considered trade secrets. Landén Decl. at ¶15. In order to qualify as a trade secret under the Act, the information must be (i) information concerning business activities, which (ii) the person/entity conducting the business wants to keep secret, and which (iii) would be likely to cause damage to the business. *Id.* at ¶14. This assessment must be made not only for each document, but for each piece of information in the document. *Id.* at ¶15. Indeed, the last requirement (disclosure is likely to cause damage) substantially limits the definition of a trade secret under the Act. *Id.* at ¶17. This is particularly true here, where the information is protected by a Discovery Confidentiality Order ("DCO").

Plaintiffs attempt to deftly suggest that communications with in-house counsel are automatically forbidden from discovery under the Swedish Trade Secret Protection Act is inappropriate. Plaintiffs have made absolutely no attempt to satisfy their burden of establishing why each document they wish to withhold based on the Swedish Trade Secret Act should in fact be precluded from disclosure. Plaintiffs have never filed a motion for a protective order seeking permission to withhold these non-privileged documents, and therefore, these documents should be produced. *United States v. Vetco, Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981) ("The party relying on foreign law has the burden of showing that such law bars production."); *Schindler Elevator Corp., v. Otis Elevator Co.*, 657 F.Supp.2d 525, 532 (D.N.J. 2009) (party did not make showing that information sought qualified as "manufacturing or business secrets" under Swiss law).

14

**B.      The Withheld Documents Should Also Be Produced Because Plaintiffs'
Purported Authority for Withholding Them Is A Foreign Statute, Which
Does Not Deprive An American Court of the Power to Order Discovery from
A Party Subject to Its Jurisdiction**

It is well-settled that "[foreign] statutes do not deprive an American court of the power to

order a party subject to its jurisdiction to produce evidence even though the act of production

may violate that statute." *Societe Nationale Industrielle Aerospatiale v. United States District

Court*, 482 U.S. 522, 544 n.29 (1987) (*"Aerospatiale"*).  *See also In re Automotive Refinishing

Paint Antitrust Litig.*, 358 F.3d 288, 303-304 (3rd Cir. 2004) (affirming the well-settled view of

*Aerospatiale,* and demonstrating its applicability in the Third Circuit).  Regardless of whether or

not the withheld documents would normally qualify as trade secrets under the Swedish Trade

Secret Protection Act, this foreign statute does not deprive this Court of the power to compel

their production.

Under *Aerospatiale*, courts may order production even if such production is prohibited by

foreign law. *Aerospatiale*, 482 U.S. at 544 n.29 (addressing whether French corporation must

comply with discovery requests despite French penal law that requires discovery comply with

the Hague Convention); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1478

(9th Cir. 1992) (affirming district court's contempt order against a Chinese company for failure

to produce documents despite Chinese secrecy law); *Schindler*, 657 F.Supp.2d at 532-33

(compelling deposition despite Swiss penal statute); *Buttitta v. Allied Signal, Inc.*, 2010 WL

1427273,*27 (N.J.Super.A.D., April 5, 2010) (deposition compelled despite Canadian blocking

statute).

In *Aerospatiale*, the Court endorsed the multi-factor balancing test set forth in the

Restatement (Third) of Foreign Relations Law § 442(1)(c) to determine whether it is appropriate

15

to order a party subject to its jurisdiction to produce relevant documents when possessed by one outside the United States. *Richmark*, 959 F.2d at 1475. Under this test, the court considers (1) the importance to the investigation or litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Aerospatiale,* 482 U.S. at 544 n.28; *Buttitta*, 2010 WL 1427273, at *24. Of these factors, the fifth factor is most important. *Richmark*, 959 F.2d at 1476.

Even if Plaintiffs *had* filed an appropriate motion properly seeking relief from discovery under the Swedish Trade Secret Protection Act, this multi-factor balancing test would tip significantly in favor of compelling production of these documents.

The first factor:  the importance of the documents.  These documents are highly relevant, as they constitute internal discussions among employees about patent applications filed in Sweden that have very similar content as the patents asserted in this litigation.  The documents, which undoubtedly detail what the inventors perceived as the inventions and what was intended by the various portions of the patent applications, are directly relevant to the issues in this lawsuit.  Indeed, by logging these documents on their privilege log, Plaintiffs have acknowledged that these documents are relevant.  Therefore, this factor weighs in favor of compelling disclosure.

The second factor: the specificity of the request.  This is very specific, as it relates to the particular, numbered entries on Plaintiffs' privilege log.  The scope of the discovery is limited to those communications with in-house counsel related to non-U.S. activities.  Thus, the request is

specific and not burdensome.  Therefore, this factor also weighs in favor of compelling disclosure.

The third factor:  the location of information.  Because these documents originated in Sweden, this factor weighs in Plaintiffs' favor.

The fourth factor:  alternative means of obtaining information.  The content of these communications obviously cannot be obtained elsewhere.  Therefore, this factor also weighs in favor of compelling disclosure.

The fifth factor:  the balance of national interests and hardship.  This is the most important factor and tips the scale overwhelmingly in favor of compelling discovery.  While Sweden may have a legitimate interest in preventing disclosure of trade secrets for the protection of its companies, the United States has a greater interest in affording defendants that have been sued in its courts pursuant to its laws the full opportunity to defend themselves.  Significantly, Apotex is not seeking these documents from someone who didn't ask to be subjected to discovery in U.S. courts.  Plaintiffs—who have not shown that each piece of information contained in the withheld documents comprises trade secrets in the first place—initiated this lawsuit.

Noncompliance with Apotex's discovery requests undermines Apotex's ability to fully defend itself and frustrates the purpose of liberal discovery.  According to Plaintiffs' expansive view of its subjective ability to withhold documents under the Swedish Trade Secret Protection Act, they would be able to refuse to produce a great deal of their responsive, relevant documents in this case, essentially shedding their discovery obligations.  Plaintiffs cannot be permitted to initiate litigation under U.S. laws in U.S. courts, while at the same time, claim immunity from U.S. discovery practice based on foreign trade secret laws.  Plaintiffs filed this lawsuit, and

cannot refuse to produce non-privileged documents by cloaking themselves with a supposed veil of secrecy under Swedish law.

Moreover, producing these supposed "trade secrets" would not cause any damage or hardship to Plaintiffs other than to hurt their position in this litigation that *they* filed. These are Plaintiffs own documents, and they are not forbidden to produce them by any law. Unlike the French corporations in *Aerospatiale,* the Chinese company in *Richmark,* or the Canadian company in *Buttita,* Plaintiffs would not be subjected to penalty or criminal prosecution for producing their own supposed trade secret documents. The only potential damage of this disclosure is the danger of putting Plaintiffs at a disadvantaged position in this litigation. A discovery confidentiality order is already in place to protect Plaintiffs' confidential information, which prevents any supposed harm by the release of Plaintiffs' "trade secrets." *Infineon Techs. AG v. Green Power Techs.* Ltd., 247 F.R.D. 1, 3 (D.D.C. 2005) (holding that "confidentiality concerns can be allayed by the limited modification, and by putting [] German counsel under the terms of the Protective Order."); *see also Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 475 (9th Cir. 1992) (holding that "legitimate interests in privacy can be protected by putting the intervenors under the same restrictions as those contained in the original protective order.").

Therefore, even if Plaintiffs took the proper steps to obtain a protective order to shield these documents from discovery, and actually satisfied its burdens for showing that the documents would be protected under the Swedish Trade Secret Protection Act, Plaintiffs would still fall far short of satisfying the balancing test described above to determine that this foreign statute should allow them to resist discovery in the lawsuit they filed in U.S. court.

## **CONCLUSION**

For the reasons set forth above, Apotex respectfully requests that the Court compel

Plaintiffs to produce Document Nos. 6, 8-13, 19-26, 30-32, 118-119, 127-133, 149-153, 173-

176, 187, 194 and 248 on Plaintiffs' privilege log, as well as all other documents listed on

Plaintiffs' privilege log that comprise communications between non-attorneys and in-house

counsel or legal staff in Sweden that do not relate to U.S. activities.

Dated:  July 20, 2010

s/Eric I. Abraham
Eric I. Abraham
HILL WALLACK LLP
202 Carnegie Center
CN 5226
Princeton, NJ  08543
Telephone: (609) 924-0808
Facsimile: (609) 452-1888
eia@hillwallack.com

Richard J. Basile
David W. Aldrich
Roy D. Gross
Erin R. Woelker
ST. ONGE STEWARD JOHNSTON & REENS LLC
986 Bedford Street
Stamford, Connecticut  06905-5619
Telephone: (203) 324-6155
Facsimile: (203) 327-1096

*Attorneys for Defendants Apotex Inc. and Apotex Corp.*

19