# EXHIBIT L

John E. Flaherty
William J. Heller
Jonathan M.H. Short
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444 (telephone)
(973) 624-7070 (facsimile)

Denise L. Loring
Christopher J. Harnett
Pablo D. Hendler
Michael S. Burling
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9000 (telephone)
(212) 596-9090 (facsimile)

*Attorneys for Plaintiffs AstraZeneca LP and AstraZeneca AB*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTRAZENECA LP and ASTRAZENECA AB, <br><br> Plaintiffs, <br><br> v. <br><br> BREATH LIMITED, <br><br> Defendant. | Consolidated Civil Action No. 08 CV 1512 (RMB)(AMD) |
| ASTRAZENECA LP and ASTRAZENECA AB, <br><br> Plaintiffs, <br><br> v. <br><br> APOTEX, INC. and APOTEX CORP., <br><br> Defendants. | |

**DECLARATION OF PETER SANDE**

I, Peter Sande, declare as follows:

1. I am an attorney practicing intellectual property law in Sweden. I act before Swedish courts and the Swedish Patent Office. I am also competent to practice before the European Patent Office.

2. I currently hold the title of Advokat and work at Sandart & Partners Advokatbyrå KB, where I have been a partner since 1998. I have been with the firm for more than 15 years. I am a member in good standing of the Swedish Bar Association (in Swedish, "Sveriges advokatsamfund").

3. I am the convenor of the Swedish Patent Group of the Swedish Association for Industrial Property (SFIR). I am a member of the European Patent Lawyers Association (EPLAW), Association Internationale pour la Protection de la Propriété Intellectuelle (AIPPI), as well as other intellectual property associations. In 2006, I was appointed to act as an expert in the Swedish Government Commission regarding professional secrecy.

4. In my capacity as an attorney, I have worked in the past for many corporate clients, including AstraZeneca. AstraZeneca is a current client, but my working relationship with AstraZeneca in no way affects my statements in this declaration.

5. I understand that Apotex, a defendant in this litigation, has challenged AstraZeneca's claim of attorney-client privilege as to certain documents listed by AstraZeneca on its privilege log, including documents that reflect confidential communications between AstraZeneca's in-house legal department and AstraZeneca employees or outside U.S. counsel.

6. Below, I set forth my understanding of the protections of Swedish law as they apply to in-house counsel in Sweden.

A. **Swedish Law**

7. Discovery in the English or American sense does not exist in Sweden. There are, however, rules on how a party can get hold of relevant information needed as evidence in a trial. Issues concerning documentary evidence are regulated in Chapter 38 of the Swedish Code of Judicial Procedure ("Swedish Code") (in Swedish, "Rättegångsbalken").

8. It is important to keep in mind that Sweden's legal system does not accept the broad American concept of discovery. Instead, in Sweden, the kind of documents that a party might have to produce in connection with court proceedings is restricted to documents of tangible value in terms of evidence, relating to the cause of action. Parties requesting production of documents must specify which documents are being requested and why those documents are relevant to the case.

9. Anybody holding a document that can be assumed to be of importance as evidence may be obliged to produce it. When somebody is obliged to produce a document to be used as evidence, he may be ordered by the court to do so, whether he is a party to the dispute or not.

10. There are, however, exceptions to this rule. Documents containing information subject to secrecy pursuant to certain sections of the Secrecy Act (in Swedish, "Offentlighets-och sekretesslagen") are, for example, excluded from forced disclosure. That is also the case with communications or documents reflecting legal advice, or requests for legal advice, between an Advokat and members of an in-house legal department. Further, this exclusion also applies to communications or documents containing trade secrets.

11. Chapter 38, Section 2 of the Swedish Code refers to Chapter 36, Section 6, where it is stated that a witness may refuse to give testimony to the extent such testimony should involve disclosure of a trade secret *unless there is extraordinary reason* (in Swedish, "synnerlig anledning") for examining the witness on the matter.

12. This instruction in Chapter 36 of the Swedish Code is effective for written evidence as well. Thus, documents containing trade secrets are exempted from forced disclosure unless extraordinary reason exists for their production.

    **B.** **Trade Secrets Under the Trade Secret Protection Act**

13. In the Swedish Code, "trade secret" has the same meaning as that phrase is given in the Trade Secret Protection Act (the "Act") (in Swedish, "lagen om företagshemligheter").

14. In Section 1 of the Act, a trade secret is defined as information concerning the business or industrial relations of a person conducting business or industrial activities, which that person wants to keep secret, and the disclosure of which would be likely to cause damage to him from the viewpoint of competition.

15. Any kind of information relating to the business can be qualified as a trade secret; the information can relate to technical, commercial or administrative conditions. Communications between an in-house legal department and the parent company are considered trade secrets.

16. Trade secrets in Sweden also require that the company's representatives or the person conducting the business keeps the information at issue secret. In this sense, the rule is subjective; the desire to keep information secret does not have to be justified. Information can be known to quite a few people and still be considered secret; it can have status as secret as long as only the employees who need the information in order to perform their work have access

to it. The information can also be known to persons outside the company – if, for example, the company is cooperating with another entity or if the company is obtaining advice from, *inter alia*, an attorney not employed by the company. It is crucial that the group of persons with access to the information is somehow limited and can be defined.

17. The last requirement for Swedish trade secret protection is that the protected information can cause damage, in terms of competition, if it becomes known outside the group of people that has been given access to the information. It is not necessary in individual cases to show that there would be actual damage; it is sufficient to show that the disclosure of such information *typically* would harm the company.

18. Thus, documents reflecting a request for, or the provision of, legal advice between a company and its in-house legal department, as well as with its outside attorneys, are to be considered trade secrets. These documents are therefore exempted from forced disclosure in Sweden unless there exists extraordinary reason for their production.

### C. Extraordinary Reason

19. To date, the Swedish Supreme Court has not ordered the forced disclosure of documents containing trade secrets on the grounds of extraordinary reason.

20. There are, however, cases in which the Supreme Court has *denied* forced disclosure because there was no extraordinary reason at hand. It is difficult to determine in any detail what such extraordinary reasons would include. Authorities discussing the Swedish Code do not elaborate on the matter. It is only stated in these authorities that, in certain cases (particularly criminal cases), the interest of a complete examination of the facts may be greater than the interest of protecting trade secrets.

21. When determining whether there is extraordinary reason in favor of forced disclosure, the interest of the company to keep the information secret is weighed against

the relevance of the information to the other party's case. In the cases where the Supreme Court has denied forced disclosure, it has stated that the basis for the claim of the party who sought such relief was dependent on several factors, not only on what could be proven through the documents in question. Hence, the fact that a forced disclosure of the documents would be relevant or helpful for the determination of the case is not enough for a Swedish court to order forced disclosure.

  22.  I am aware of no decision in Sweden in which a member of an in-house legal department was compelled to disclose their communications or documents by a court.

* * *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 16, 2010    _____
               Peter Sande