**EXHIBIT R**

# The privilege patchwork

Given that complex cross-jurisdictional discrepancies make the application of legal professional privilege for in-house lawyers a matter of chance, the CFI's controversial *Akzo Nobel* ruling on competition issues won't be the end of the story. PETER ASHFORD reports

Though many might disagree with it, the reasoning behind the European Court of First Instance's decision in *Akzo Nobel* – in which the court refused to extend legal professional privilege to communications with in-house lawyers in relation to competition investigations – is not surprising. It follows the decision of the European Court of Justice in *AMS Europe* [1982] that privilege extended to the work-product of "independent lawyers who are not bound to the client by a relationship of employment". Nonetheless, in light of the various positions within individual European jurisdictions and around the world in relation to in-house legal professional privilege, the issue is a long way from being resolved.

Part of the reasoning supporting the argument that in-house lawyers do not have the required independence is the fact that in some jurisdictions – for example, Belgium, Greece, Italy, France, Lithuania, Latvia, the Czech Republic, Hungary, Sweden and Austria – employed lawyers are not permitted to be members of the local bar or law society. That group of countries (in addition to Luxembourg and Finland) does not extend privilege to employed lawyers.

However, the UK, Denmark, Ireland, Portugal, Spain, Germany and the Netherlands permit bar or law society membership to employed lawyers (some subject to conditions). In England the position of the in-house lawyer is clear for, as Lord Denning said in *Alfred Crompton* [1972]: "The law relating to discovery was developed by the Chancery Courts in the first half of the 19th century. At that time nearly all legal advisors were in independent practice ... Nowadays it is very different. Many barristers and solicitors are employed as legal advisors, the whole time, by a single employer ... They are paid ... by a fixed annual salary. They are regarded by the law as in every respect in the same position as those who practise on their own account ... They and their clients have the same privileges."

## Opening the door

The same principle applies in the US, for in *United States v United Shoe Machinery Corp* [1950] the court said there were not "... sufficient differences to distinguish [in-house counsel and outside counsel] for purposes of the attorney-client privilege".

The membership of a bar or law society is not a suitable test for determining whether communications with a lawyer can be subject to privilege. As was said in *New Victoria Hospital v Ryan* [1993]: "... privilege should be strictly confined to legal advisors such as solicitors and counsel, who are professionally qualified, who are members of professional bodies, who are subject to the rules and etiquette of their professions ... This is a clearly defined and easily identifiable qualification for the attachment of privilege."

The Australian case of *Vance v McCormack* [2004] also makes it clear that it is the admission to practise that carries the disciplinary and ethical duties and responsibilities that open the door to privilege. The existence or otherwise of a current practising certificate from a professional body is not the appropriate test, not least because it could make the test vulnerable to whether or not an application for renewal of membership had been overlooked.

In international trading an employed lawyer could be in any jurisdiction perhaps reporting to another in a different jurisdiction and the dispute may be in a third jurisdiction. These differing jurisdictions and standards – even within Europe – create the potential for extremely complex questions of whether any privilege at all applies and if so which one.

## Matter of chance

The correct approach in England is again clear: it does not matter whether the lawyer is qualified there or in some other foreign jurisdiction. As was held in *Re Duncan* [1968]: "The basis of the privilege is just as apt to cover foreign legal advisors as English lawyers, provided only that the relationship of lawyer and

In reaching this conclusion the court drew on *Lawrence v Campbell* [1859] where it was said: "A question has been raised as to whether the privilege in the present case is an English or a Scots privilege; but, sitting in an English court, I can only apply the English rule as to privilege, but I think that the English rule as to privilege applies to a Scots solicitor ..." The same conclusion was reached in *International Business Machines v Phoenix International Computers* [1995]: "The nationality of the foreign lawyer is as irrelevant as his address for this purpose."

In the US, each state has the Federal Rules of Evidence provides that the federal court will apply federal law to the privilege issue if a claim is based on federal law, and state law if a claim is based on state law. Federal courts will apply the law of the state in which the communication is 'domiciled' – most such laws result in the application of the test of the most significant relationship or greatest interest in the document in issue. This will usually result in the applicable state law being either where the communication took place or where the attorney-client relationship was centred.

It is clear that ultimately whether a successful English in-house lawyer can be quite satisfied that his advice is privileged in a domestic environment but not so in a competition investigation by the European Commission.

That in itself may be no particular cause for concern. But if, say, French law – itself not recognising the privilege of an in-house lawyer – were to be the same as English in disregarding the national law under which the advice may have been given and direct that in French proceedings the advice was not privileged, the potential effect could be enormous and reach far outside competition investigations. The only safe route is the use

11