**EXHIBIT S**

ISSN 1648-9349

**International Journal of Baltic Law**
**Volume 1, No. 4 (December, 2004)**

DARIUS DAVAINIS*
Vytautas Magnus University
School of Law

# ARE EUROPEAN IN-HOUSE COUNSEL COVERED BY THE ATTORNEY-CLIENT PRIVILEGE?

## Introduction

What Is Attorney-Client Privilege?

Where a client seeks legal advice or representation from a professional legal adviser in his capacity as such, the communications made by the client for that purpose are at his instance permanently protected from disclosure by himself or by the legal adviser, except when the protection is waived[1].

The above defined attorney-client privilege has been historically considered one of the most fundamental legal principles, first and foremost connected in many legal systems with the exercise of a person's or entity's constitutional right of due process and a device of effectively asserting and defending other legal rights and privileges. As it is deeply rooted both in the United States' as well as in the other countries' legislation and caselaw, it makes sense to explore what the essence and scope of the privilege is and how it applies to different sorts of lawyer-client relationships.

The legal system of the United States has established the definition of the attorney-client privilege by federal as well as state caselaw. "The attorney-client relationship [and thus the privilege] is created when a person consulting a lawyer reasonably believes that the lawyer is willing to undertake, or consider undertaking, professional legal services on behalf of the client"[2].

---

[*] Darius Davainis. Address: Vytautas Magnus University, School of Law, Daukanto 28, Kaunas 44246, Lithuania. E-mail: Darius_Davainis@fc.vdu.lt.

[1] John H. Wigmore, Evidence in Trials at Common Law §2292, at 554 (McNaughton ed. 1961), Quotation in: Nathan M. Crystal, An Introduction to Professional Responsibility, Aspen Law & Business (1998), p. 173.

[2] Christopher B. Mueller, Laird C. Kirkpatrick, Modern Evidence: Doctrine and Practice, Little, Brown and Company (1995), p. 464.

The Articles 45 and 46 of the Lithuanian Law on Advocacy provide a number of privileges and guarantees for counsel, which, taken together, form the content of the attorney-client privilege.[3] That includes the prohibition to hinder the counsel from meeting with a client in privacy, the non-admittance into evidence of all the data of such meeting, the prohibition from calling counsel as witnesses on issues within the attorney-client relationship as well as protection of secrecy of counsel's professional documentation.

§43 a II of the German Lawyers Act provides: "The lawyer is bound by professional secrecy obligations. This duty refers to information that the lawyer became aware of in the course of the exercise of his profession. This does not apply to facts which are public or do not require secrecy according to their significance".[4]

The Scope of the Privilege

Definition of a client and preliminary discussions about representation

Having defined the content of the attorney-client privilege, or legal professional privilege[5], as used in the European context, it makes sense to first determine who is the client of the lawyer and then in which situations the privilege generally applies. "A "client" is a person, organization, or entity that receives professional legal services from a lawyer or consults a lawyer for the purposes of obtaining such services. Although originally the privilege applied only where the attorney was representing the client in litigation, today it encompasses all forms of professional legal services"[6] like providing legal advice or drafting of contracts. The privilege starts once preliminary discussions between lawyer and client about representation begin and ends after the lawyer ceases to provide or to continue representation, no matter whether an express contract existed or whether the service was provided without charge or paid by a third party.[7]

Corporation as client

Once we talk about an organization, in particular about a corporation as client of a lawyer, the question arises to which employees or other members the attorney-client privilege applies, as a corporation can only act through its representatives. It has been generally held that "unless the facts suggest otherwise, corporate lawyers will be deemed to represent the entity and not its

---

[3] LR Law on Advocacy (2004 03 18, No. IX-2066).
[4] Conseil des barreaux de l'Union Europeenne / Council of the Bars and Law Societies of the European Union CCBE, The Professional Secret, Confidentiality and Legal Professional Privilege in Europe (2003);
<http://www.ccbe.org/doc/En/update_edwards_report_en.pdf> [visited 11.05.04].
[5] The terms attorney-client privilege, lawyer-client privilege, legal professional privilege or professional privilege will be used interchangeably in this paper.
[6] See footnote 1: Christopher B. Mueller, Laird C. Kirkpatrick, p. 464.
[7] Id.

officers, directors, employees, or shareholders"[8]. It is the corporate management who usually holds the privilege on behalf of the corporation, but the privilege can extend to virtually any employee, who communicates with the corporate lawyer within the scope of his duties to obtain legal advice for the corporation and communications are treated as confidential and not disclosed to employees unrelated to the issue or to outsiders of the corporation.[9]

In-house counsel as opposed to outside counsel to a corporation

The analysis of the application of the lawyer-client privilege gets even more complicated once the distinction is drawn between outside counsel retained by a corporation and in-house counsel, lawyers or attorneys (depending on the country), employed by the corporation itself. This is where the legal situation of the privilege gets at least in some respects different as compared among the United States, the European Union countries in general, and Lithuania in particular. Here, at least a couple of issues are presented: are in-house counsel subject to the attorney-client privilege at all, and, if yes, does the application of the privilege between them and the corporation differ in comparison to when outside counsel are retained, and in what respects? This paper will explore the abovementioned issue, using the descriptive and the comparative method of analysis, focusing on the common law system of the United States, the situation in the European Union, and the specific regulation of the issue as reflected in Lithuanian legislation, for the issue is likely to increasingly come up in the corporate litigations of the country in future.

## I. Attorney-Client Privilege of In-House Counsel in Different Jurisdictions

### A. United States of America Law

The situation of the application of attorney-client privilege to in-house counsel in the United States is twofold: on the one hand, the privilege is given equal legal status with the one applied to outside counsel and generally recognized by the courts[10], on the other hand, there is a number of exceptions and contrary caselaw, so that certain issues must be taken into account.

#### 1. Providing legal services versus acting as part of management

As in-house counsel, in contrast to their outside counterparts, are also employees of a corporation, they are, as a rule, not just legal advisors, but also tend to occupy managerial positions and even serve as board members[11]. In that

---

[8] Stephen Gillers, Regulation of Lawyers: Problems of Law and Ethics, Fourth Edition (Little, Brown and Company, 1995), p. 500.
[9] U.S. Case: Upjohn v. United States, 449 U.S.383 (1981).
[10] U.S. Case: Bruce v. Christian, 113 F.R.D. 554, 560 (S.D.N.Y. 1987).
[11] Michael A. Lampert, In House Counsel and the Attorney Client Privilege, Saul, Ewing, Remick & Saul LLP (2000);
<http://library.lp.findlaw.com/articles/file/00344/003656/title/Subject/topic/Litigation%20%20Appeals_Practice%20Specialties/filename/litigationappeals_2_214> [visited 22.04.04].

14                  International Journal of Baltic Law  
                        Volume 1 No. 4 (2004, December)

capacity, they make business decisions, advise their fellow board members on business matters; and corporate employees, instead of asking for a purely legal advice, oftentimes ask for in-house counsel's expertise not on what is the legally correct thing to do, but what business decision they should actually make[12]. This is where courts are reluctant to apply the privilege[13], as they treat the communications between lawyers in their managerial capacity or business advisor capacity and the other staff of the corporation as normal business discussions, not subject to the privilege. The scope of the privilege extends only to communications made to a lawyer with intention to obtain purely legal advice. Unfortunately for the privilege, "courts have employed presumptions that legal advice was sought when outside counsel is retained, but refused to employ the same presumption with in-house counsel, thereby compelling in-house counsel to satisfy the burden of proving this element of the privilege claim"[14], namely to prove to the court, that the counsel was not providing some business advice nor engaged in other managerial activity now sought to be privileged, but that he/she has received and imparted information for the sole purpose of providing legal advice.

2. Who represents the corporate client?

Another important issue relating to the application or rejection of the privilege of in-house counsel by courts is what natural persons, acting on behalf of the corporation and consulting with its in-house counsel, are covered by the privilege, and not all of them are. There is so far no universal rule in this regard throughout the various courts of the United States. Two concepts govern the area. First one is the control group test[15], which the courts apply to conclude that only the top officials of the corporation enjoy the privilege without regard to the nature of the subject matter of the communications. The second one contains the rules articulated in the Upjohn v. United States case,[16] which allow virtually any employee to enjoy the privilege if he/she, acting within the scope of his/her duties, asks the counsel for legal advice on behalf of the corporation while being well aware that he/she provides the information to the counsel exactly for obtaining that legal advice, and both sides keep the communication secret both before and after consultation. The privilege extends to even former employees of the corporation[17], if the abovementioned (Upjohn) conditions are fulfilled.

---

[12] Lee Applebaum, A Matter of Privileges: In-House Attorney-Client and Work Product Claims Face Challenges, Fineman Krekstein & Harris, P.C.(2004);
http://www.finemanbach.com/publications/privileges.cfm> [visited 22.04.04].
[13] U.S. Case: F.C. Cycles International, Inc. v. FILA Sport, 184 F.R.D. 64 (D. Md. 1998).
[14] Paul R. Rice, In-House Counsel: Equal Members Of The Bar (April, 2000);
http://www.acprivilege.com/articles/lawreview3.html> [visited 10.05.04].
[15] U.S. Case: Reed v. Baxter, 134 F.3d 351, 359 (6th Cir. 1978).
[16] U.S. Case: Upjohn Co. v. United States, 449 U.S. 383 (1981).
[17] U.S Case: Camden v. Maryland, 910 F.Supp. 1115 (D. Md. 1996).

### 3. In-house counsel conducting internal investigations

Companies oftentimes assign their in-house lawyers to conduct the so-called internal investigations, when their employees complain of being sexually harassed or discriminated on various grounds. This is another easy way for in-house counsel to lose the protection of the attorney-client privilege in respect to communications made during the investigation. The courts in the United States apply the implied waiver doctrine, which says that the counsel waives the privilege, if he/she plays an extensive role in the investigation, particularly beyond giving legal advice to the corporation as to the investigation, or if the company relies on the adequate investigation defense in subsequent litigation[18]. However, there are cases[19] where the courts upheld the privilege, because either defendants were not relying on the adequate investigation defense altogether, or they played just a secondary role in conducting the investigation by providing purely legal advice and/or preparing legal documents in preparation for the anticipated litigation. There is thus no bright line between when courts allow the privilege in case of internal investigations; this is decided on case-by-case basis.[20]

### 4. Course of conduct to preserve the privilege

Legal commentators recommend a variety of ways for in-house counsel to maximize the probability that the courts will uphold the privilege when challenged. As courts, from jurisdiction to jurisdiction, are very much divided as to the narrowness of the application of the privilege for in-house counsel, there are some basic guidelines which corporations and their in-house lawyers should consider.

First and foremost, it is important both for the side requesting advice and the one providing it to clearly distinguish between communications about business matters – opinions about a particular business decision and request/provision of legal advice[21]. Both awareness of this is important, to keep the documented business discussions with in-house lawyers to a minimum, and proper management of written memoranda and correspondence, to make sure it contains labels PRIVILEGED or CONFIDENTIAL[22], "REQUEST FOR FACTS SO THAT LEGAL ADVICE CAN BE GIVEN [or] "..."FOR THE PURPOSE OF RECEIVING LEGAL ADVICE"[23]. Secondly, lawyers should assure that the information which is intended to be privileged is not circulated among the employees not directly working or connected with the legal issue in question, in order to escape the finding by the courts of waiver of the privilege. It is also useful to explore the views of the court of a

---

[18] Barbara L. Johnson, In-House Investigations: Does the Attorney-Client Privilege Apply?, American Bar Association (2000);
http://www.bna.com/bnabooks/ababna/eeo/2000/eeoblj2.pdf [visited 09.05.04].
[19] U.S. Cases: Scurto v. Commonwealth Edison Company, No. 97-C-7508, 1999 U.S. Dist. LEXIS 513, at *1 (N.D. Ill. Jan. 11, 1999); Ryall v. Appleton Electric Company, 153 F.R.D. 660 (D. Colo. 1994).
[20] See footnote 17.
[21] IceMiller Legal and Business Advisors, Protecting the Attorney-Client Privilege and In-House Counsel, Ice Miller's Electronic Newsletter, (10.31.2003);
http://www.icemiller.com/enewsletter/Oct03/privilege.htm [visited 10.05.04].
[22] Id.
[23] See footnote 10.

Case 1:08-cv-01512-RMB-AMD   Document 211-22   Filed 07/20/10   Page 7 of 15 PageID: 6985

particular jurisdiction on the privilege in advance and to prepare and keep all corporate documentation connected with the lawyer's work in such a manner as to be the clearest proof possible that the in-house attorney was just performing purely legal functions[24].

B. European Union Law

1. Law of member states

The situation of the attorney-client privilege for in-house counsel, or legal professional privilege or "secret professionnel", as it is called in Europe, is far more controversial on the European level, than it is in the United States. As the privilege is regulated both on national level of Member States, and on the EU level, the rules conflict. The recognition of the professional privilege for in-house counsel on national level depend on a number of issues, and most countries, but not all, recognize the privilege either as a matter of law, or in practice[25]. In England, in-house counsel enjoy the same lawyer-client privilege as outside counsel[26] by case law; in Germany, only those in-house lawyers, who are admitted to the Bar, enjoy the privilege, and only for documents in their custody, which does not guarantee the privilege for in-house counsel, as the documents they possess are usually on the premises of the company, so also in the company's custody. There is no case law on the issue; in practice, however, authorities respect in-house lawyer's advice as privileged[27]. The practice in Ireland is also to respect the privilege equally for in-house counsel as for their outside counterparts, but there is no case law as well[28]. The situation is similar in Greece, Spain, Portugal, Denmark, Netherlands[29] and non-EU-member Norway[30].

In other countries, like Austria, France, Italy and Sweden, in-house counsel documents are generally not covered by the professional privilege[31]. In France, the privilege just applies to members of the bar, and in-house counsel is not among them[32]. The situation is similar in Belgium, although there is a proposal before the Parliament to extend the privilege also to in-house lawyers.

---

[24] See footnote 20.
[25] Legal Privilege Before National Competition Authorities (European Company Lawyers Association, 2003);
<http://www.ecla.org/pages/national_competition.html> [visited 12.05.04].
[26] U.K. Case: Alfred Cromptons Amusement Machines v. Customs & Excise Commissioners 1972, 2, QS, 102 (C.A.).
[27] See footnote 24.
[28] Id.
[29] In-House Counsel Legal Privilege Needed With Modernization Of EC Competition Law (European Company Lawyers Association, 2003);
<http://www.ecla.org/pages/mod-comp-law.html> [visited 12.05.04].
[30] See footnote 24.
[31] See footnote 28.
[32] See footnote 3, pp.7-8.

2. EU supranational law

On the level of EU supranational legislation and case law, however, the situation is far more controversial. In contrast to common law legal systems and to those of most EU member states, the lawyer-client privilege for in-house counsel is not recognized in EU case law, namely since the famous and allegedly out-dated decision of the European Court of Justice (ECJ) in the 1982 case AM&S v. Commission[33], where the Court interpreted Article 14(3) of Council Regulation 17/62 as barring the application of lawyer-client privilege to the counsel bound to the client by a relationship of employment:

> "The national laws of the member states protect, in similar circumstances, the confidentiality of written communications between lawyer and client provided that, on the one hand, such communications are made for the purposes and in the interests of the client's rights of defence and, on the other hand, they emanate from independent lawyers, that is to say, lawyers who are not bound to the client by a relationship of employment. Viewed in that context regulation no 17 must be interpreted as protecting, in its turn, the confidentiality of written communications between lawyer and client subject to those two conditions, and thus incorporating such elements of that protection as are common to the laws of the member states."[34]

So, by this decision the ECJ expressly denied the lawyer-client privilege for in-house counsel, treating them as being too dependent on their employer to be honest in all cases.

This caselaw has not been changed since, despite heavy policy arguments of its outdatedness and senselessness, of its infringing character on the principle of every person and entity to be able to consult a lawyer of one's choice, of the possibility to grant the privilege to those in-house lawyers who are either members of the Bar, or otherwise subject to some codes of ethics and to disciplinary procedures[35]. It is noteworthy, that the problem of in-house counsel privilege on the EU level most sharply occurs in the context of anti-trust investigations by the European Commission, which has been granted broad investigative powers to order the production of documents containing in-house lawyer-client communications. At the same time, in a recent ECJ case[36] the Commission was allowed to refuse the disclosure of its own documents to its in-house counsel for various policy reasons[37].

---

[33] European Court of Justice Case: AM&S v. Commission, Case 155/79, [1982] E.C.R. 1575, [1982] 2 C.M.L.R. 264.
[34] Id.
[35] Jonathan Faull, In-house lawyers and legal professional privilege: a problem revisited, (Brussels, 1997);
<europa.eu.int/comm/competition/speeches/ text/sp1997_049_en.doc> [visited 12.05.04].
[36] European Court of Justice Case: Interporc Im- und Export GmbH v Commission of the European Communities, Case C-41/00 P. [2003] E.C.R. Page I-02125.
[37] The Case For In-House Legal Privilege In EC Law, (European Company Lawyers Association, 2003);
<http://www.ecla.org/pages/the_case.html> [visited 12.05.04].

Case 1:08-cv-01512-RMB-AMD Document 211-22 Filed 07/20/10 Page 9 of 15 PageID: 6987

A promising change, all in all, has been made towards the reinstatement of the privilege for in-house lawyers on the EU level by the Interim Order of the President of the Court of First Instance[38], recognizing a need for unification of the confidentiality standards for all lawyers, in one way (e.g. admittance to the Bar) or another subject to professional ethics and disciplinary proceedings. The Court agreed with the arguments of many lobbyists that, first, there is no reason to refuse the privilege to in-house lawyers subject to strict rules of professional conduct; second, ties of employment to the client do not necessarily mean lack of independence in the cooperation with the courts in the administration of justice; third, the Court expressed the opinion that even "documents prepared by management for an internal competition compliance review may be privileged if drafted for the sole purpose of obtaining legal advice"[39]; and finally, the principle of the possibility of consulting the lawyer of one's choice was recognized, manifesting itself in the satisfaction of the expectation of every client, that his communications to the lawyer for obtaining legal advice remain secret. The Court, however, refused to resolve the issue of reinstatement of the privilege for in-house counsel in the interim proceedings, so the resolution of the issue remains unanswered.

C. Republic of Lithuania Law

In Lithuania, the courts have not yet specifically addressed the precise issue of the application of the lawyer-client privilege for in-house counsel. The three major documents governing it are the LR Code of Civil Procedure, the LR Code of Penal Procedure, and the LR Law on Litigation of Administrative Cases. Specifically, their chapters on evidence touch the issue. The status of the privilege seems to be different depending on the type of litigation and the status of the corporate party in the litigation.

1. Civil litigation

Art. 189 Sec. 2 Subs. 1 of the LR Code of Civil Procedure grants the lawyer-client privilege to all representatives of parties in civil litigation and to the defenders in penal litigation (while this Code governs only civil litigation) by prohibiting the examination of said representatives as witnesses on the facts and circumstances that they became aware of in the course of exercising their professional duties[40]. Such a language obviously pertains not only to litigation, but also to legal consulting. Attorneys admitted to the Bar as well as their assistants are not allowed to be employed as in-house lawyers[41], they may just advise or represent a corporate party acting independently as outside counsel, so the issue of in-house counsel privilege is just relevant to lawyers without Bar admittance,

---

[38] European Court of First Instance Case: Interim Order of 30/10/2003, Akzo Nobel Chemicals Ltd and Akcros Chemicals Ltd v Commission of the European Communities, Joined cases T-125/03 R and T-253/03 R. [2003] E.C.R. Page 00000.
[39] Interim Order Given in Akzo Case, (European Company Lawyers Association, 2003); <http://www.ecla.org/pages/akzo_nobel.html> [visited 12.05.04].
[40] LR Code of Civil Procedure (2002 02 28, Nr. IX-743).
[41] LR Law on Advocacy (2004 03 18, IX-2066), Articles 21, 43.

who are usually employed as corporation lawyers. Such lawyers without Bar admittance and, interestingly, even non-lawyers, employed by corporations, can represent corporate parties in civil litigation (non-lawyers just in the courts of first instance)[42], and the privilege seems to equally apply to all categories of such representatives. Moreover (what would probably be totally incompatible with the practice in common law countries), some other categories of non-legal experts like accountants, auditors and tax advisors, can represent a corporate party in civil litigation together with the main representing employee of the party (not even necessarily a lawyer, if the representation occurs in a court of first instance), and the Code seems to equally grant the privilege to them[43]. Art. 199 Sec. 3 of the Code also extends the privilege to the documents, which could reveal the facts that the corporate party's legal representative became aware of in the course of exercise of his/her duties, and thus such documents cannot be ordered by the courts to be produced as evidence. This is in comparison to common law countries' legal practice, an unusually broad scope of the privilege, uninhibited either by "attorney wearing business advisor hat" rule or by waiver in case of disclosure to uninvolved employees or by absence (in the case of Lithuanian non-lawyer representatives) of any ethical or disciplinary commitments.

2. Penal litigation

In the penal procedure (as LR Penal Code provides for criminal liability of entities[44]) only Bar-admitted attorneys and (with limitations) their assistants can defend[45] an accused entity (most of the time a corporation); and Bar-admitted attorneys are not allowed to practice as in-house lawyers by the implicit language of Art. 21 and the explicit prohibition in Art. 43 of the LR Law on Advocacy[46], so here the problem of in-house lawyer-client privilege does not exist. The victim (also a corporation) of a crime or a civil plaintiff or civil defendant in a penal case (as Articles 109 and 113 of the LR Code of Penal Procedure allow a civil suit to be filed in a penal case and be resolved in and according to penal proceedings) can, however, also be represented by other lawyers, not just bar-admitted attorneys. This means, that in-house lawyers of the corporation may represent a corporation in penal proceedings if the corporation is not an accused party. The privilege would probably not be granted to them, as in penal proceedings, as opposed to civil proceedings, only defenders, and thus, only bar-admitted attorneys can enjoy the privilege.

3. Administrative litigation

Rules of evidence in the administrative litigation procedure look similar to those in civil litigation. Art. 60 Sec. 3 Subs. 1 of the LR Law on Proceedings in Administrative Cases effectively repeats the same rule as indicated in Art. 189 Sec. 2 Subs. 1 of the LR Code of Civil Procedure, namely that all representatives of the

---

[42] See footnote 39, Art. 55, Sec. 1 and 2.
[43] Id., Art 55, Sec. 3.
[44] LR Penal Code (2000 09 26, VIII-1968), Art. 20.
[45] LR Code of Penal Procedure (2002 03 14, IX-785), Art. 47.
[46] LR Law on Advocacy (2004 03 18, IX-2066).

Case 1:08-cv-01512-RMB-AMD   Document 211-22   Filed 07/20/10   Page 11 of 15 PageID: 6989

International Journal of Baltic Law
20                               Volume 1 No. 4 (2004, December)

parties in civil litigation and defenders in penal litigation may not be examined as witnesses[47] (interestingly, LR Code of Civil Procedure mentions defenders in penal litigation although the Code does not govern penal litigation; and the LR Law on Proceedings in Administrative Cases mentions civil and penal proceedings, which it does not govern: by civil this Law probably means administrative). Accordingly, in oral examination of witnesses in-house lawyers of corporate parties seem to enjoy the lawyer-client privilege, the Law does, however, not mention, in contrast to the LR Code of Civil Procedure, any protection to documented evidence, so the status of the privilege in case the court decides to order production of written documents of in-house counsel into evidence is unclear. One can only guess what courts would decide. On the one hand, the courts could protect the privilege as to documents by analogy to Civil Procedure, but, on the other hand, as the LR Code of Civil Procedure specifically mentions the protection of documents and the LR Law on Proceedings in Administrative Cases does not, the result could be quite opposite.

**Conclusion**

Based on the legal situation of whether in-house counsel are covered by the attorney-client privilege in different legal systems, as described above, no one-sided conclusion may be made. The issue is governed at least slightly differently from country to country, but several major concepts exist.

The common law countries, in particular the United States, as reflected in this research, and England, as briefly indicated, generally recognize the privilege for all counsel, whether in-house or outside. It probably rests on the general principle, that each person should be able to effectively consult a lawyer of his/her choice and be able to keep the communications confidential and thus prevent the early damage of his/her rights. Moreover, the recognition of the privilege for legal counsel independently of their status is enabled by mandatory membership in the Bar of all practicing lawyers and thus their commitment to the Bar's ethical rules and subjection to disciplinary proceedings. Similar regulation of the issue can be found in several continental European countries.

Common law countries, however, limit the scope of the lawyer-client privilege for in-house counsel subject to certain conditions. In the United States, only purely legal consultations with such lawyers are privileged. Communications, going into and out of the in-house lawyer's office, concerning managerial matters, business decisions are not privileged, and the lawyer loses the privilege while acting in his business advisor capacity. A number of other rules exist: an in-house lawyer may be deemed by the courts to have waived the privilege if he/she discloses the communications regarding (be it) purely legal advice, but to the range of employees not working or not entitled to work with the legal issue in question, let alone to outsiders. A privilege may also be lost when a lawyer conducts internal investigations of facts, and then the corporation relies, in a civil litigation concerning discrimination claims, on the adequacy of the investigation. Courts may employ even more criteria to decide whether to apply the privilege.

---

[47] LR Law on Proceedings in Administrative Cases (2000 09 19, VIII-1927).

Therefore, in-house counsel are advised to be careful and document thoroughly all written communications regarding legal advice or drafting of legal papers, to as clearly as possible indicate in writing the confidentiality of the information intended to be privileged, to not in fact disclose that information to anyone not directly working with the information, and thus gather as much written evidence as possible about the intention to keep those communications confidential from the beginning to the end. It is also important to see, that no business advice, or any managerial act is included into the privileged information, while otherwise the privilege could be completely denied by the courts. In-house counsel are even advised to drop their titles of designation as corporate managers, board members etc.

Just few EU member states do not recognize the lawyer-client privilege for in-house counsel at all, while others just recognize it for those in-house lawyers who are members of the Bar. The legal situation in many continental European countries is indefinite. There is little or no case law, and the authorities have respected the privilege for in-house counsel even in the instances where it is not granted by legislation. While in countries like France the privilege for in-house counsel is not recognized based on the fact, that in-house lawyers are not admitted to the Bar, the motives are quite different on the supranational level of the European Union, where the European Court of Justice has long ago denied the privilege for in-house counsel based on their alleged lack of independence due to the ties of employment to their client, and has not expressly changed this highly debated and controversial precedent ever since.

In Lithuanian national law, the issue is regulated rather implicitly. There is no case law on the privilege for in-house counsel. The statutes on procedure govern the practical application of the lawyer-client privilege, and no express distinction is made between in-house and outside counsel. It is, however, possible to discern the status of the in-house lawyer-client privilege from the implicit language of various provisions on evidence, and the privilege seems to be applied very broadly not only to in-house counsel, but also to some categories of other employees of the corporation, acting with certain restrictions in legal counsel's capacity while not even possessing legal education. On the other hand, gaps exist as to the protection of documented evidence by the privilege in administrative litigation and as to the application of the privilege to the in-house counsel of an aggrieved corporate party in penal litigation or a corporate party participating in the penal litigation as civil plaintiff or civil defendant. The court might use analogies to the LR Code of Civil Procedure, which is the most unambiguous on the issue, but the outcome of the cases of practical application or denial of the privilege by the courts if and when in-house counsel privilege is challenged, remains unclear, until the legislative provisions are amended to be more detailed and comprehensive.

After the abovementioned areas of the issue of attorney-client privilege for in-house counsel have been discussed, much room still remains for further research on this topic. It would be interesting to discover the approach to the application of the privilege in certain groups of countries not discussed here, like Latin American, South-East Asian and former Soviet Union states, and even maybe the Middle East. A useful comparison might in particular be drawn to the domestic legislation of the new EU member states like Poland, Czech Republic, Slovenia and the Baltic states.

22 International Journal of Baltic Law
Volume 1 No. 4 (2004, December)

Due curiosity arises as to how, if ever, the European Court of Justice or the European Court of First Instance will take into account legal practice of the new member states in finally reinstating the privilege on the European Union level and what scope and conditions of the privilege it will choose.

### Abstract in English

**Darius Davainis**
**ARE IN-HOUSE COUNSEL COVERED BY THE ATTORNEY-CLIENT PRIVILEGE?**

Author compares and analyses the position and the limits of application of the attorney-client priviledge to the in-house counsel in various legal systems. Specifically, the investigation covers the law of the United States, the law of some member states of the European Union (including Lithuania) and the law of the European Union itself.

The investigation shows that the institution of the attorney-client priviledge is applied to the in-house counsels differently in various jurisdictions and that there are no objective universal criteria to define its application. One group of countries – the US, England and other common law countries, also some countries of Continental Europe, generally recognize this institution and apply it to all categories of lawyers, including in-house counsels, although they impose on them various rules that define and limit the application of this institution. It probably rests on the general principle, that each person should be able to effectively consult a lawyer of his/her choice and be able to keep the communications confidential and thus prevent the early damage of his/her rights. Moreover, the recognition of the privilege for legal counsel independently of their status is enabled by mandatory membership in the Bar of all practicing lawyers and thus their commitment to the Bar's ethical rules and subjection to disciplinary proceedings. Other countries of the European Union recognize the institution of the attorney-client priviledge only for those in-house lawyers who are members of the Bar. Some countries, as France, Austria, Sweden or Germany, do not recognize this institution at all or are specific in this respect.

Author states that, generally, the legal situation in this area in many continental European countries is indefinite. There is little or no case law, and the authorities have respected the privilege for in-house counsel even in the instances where it is not granted by legislation. The same applies to Lithuania, although here some notes may be made in respect to the legislation. The regulation of Lithuanian civil procedure provides for the almost limitless application of the institution of the attorney-client priviledge. The regulation of the criminal procedure does not protect this priviledge in respect to the in-house counsels, representing the legal entity. The rules of the administrative procedure reflect the approach where this institution is apllied only for the testimony, but not documented evidence.

## Abstract in Lithuanian

**Darius Davainis**
AR ĮMONĖS TEISININKUI TAIKOMA TEISININKO-KLIENTO PASLAPTIS?

Pastaraisiais metais suaktyvėjus diskusijoms Europos Sąjungos valstybėse narėse apie profesinės teisininko-kliento paslapties taikymą įmonių teisininkams tiek nacionalinėje, tiek viršnacionalinėje Sąjungos teisėje, tapo aktualu pažvelgti, kaip ši paslaptis reglamentuojama įvairiose teisės sistemose, surasti bei palyginti kriterijus, kuriais vadovaujantis įvairių valstybių įstatymuose šis institutas įtvirtintas arba kaip jis taikomas teismų. Šiame straipsnyje, naudojant aprašomąjį ir lyginamąjį metodus, siekiama ištirti šio teisinio instituto padėtį kelių žymesnių valstybių jurisdikcijose, apibrėžti jo taikymo ribas ir pagrindines išimtis. Tyrimui pasirinkta Jungtinių Amerikos Valstijų, kai kurių Europos Sąjungos šalių narių bei Europos Sąjungos viršnacionalinė teisė, o taip pat Lietuvos Respublikos teisė.

Atlikus tyrimą, paaiškėjo, kad profesinės teisininko-kliento paslapties institutas įmonių teisininkams įvairiose jurisdikcijose yra taikomas skirtingai, ir nėra universalių objektyvių kriterijų apibrėžti jo taikymui. Viena grupė šalių – JAV, Anglija bei kitos bendrosios teisės šalys, o taip pat kai kurios kontinentinės Europos šalys iš esmės pripažįsta ir taiko šį institutą visoms savo teisininkų kategorijoms, taip pat ir įmonėse dirbantiems teisininkams, nors ir nustatydamos visą eilę taisyklių, apibrėžiančių ir ribojančių instituto taikymą. Šių šalių praktika paprastai remiasi tuo, kad visi teisininkai priklauso šalies advokatūrai, yra prisiekę laikytis advokatų etikos kodekso reikalavimų, o už nusižengimus įstatymams bei tokiems etikos kodeksams jiems gali būti taikomos sankcijos. Todėl laikoma, kad tai yra pakankama teisininkų (iš esmės advokatų) nepriklausomumo garantija. Pagrindinės sąlygos, kurioms įvykus, teismai šiose šalyse atsisako taikyti profesinę teisininko-kliento paslaptį įmonių teisininkams, yra teisininko ne teisinis, o vadybinis darbas, arba nepakankami įrodymai, jog įmonė ir jos teisininkas iš pat pradžių atsirandant konsultavimo santykiams siekė išsaugoti šią paslaptį, arba su teisininku konsultavosi neturintis tam įgaliojimų įmonės darbuotojas. Kitose Europos Sąjungos šalyse ne visi įmonių teisininkai yra advokatai, todėl profesinės teisininko-kliento paslapties institutas taikomas tik įmonių teisininkams-advokatams. Dar kitos šalys institutą taiko visiems teisininkams be išimties, o, sakysim, Prancūzija ar Austrija (t.p. Švedija) jo nepripažįsta. Prancūzijos specifika pasižymi tuo, kad šioje šalyje įmonių teisininkai nėra advokatai, tuo tarpu profesinės teisininko-kliento paslapties institutas taikomas tik advokatams. Vokietijos praktika yra kiek kitokia – čia šis institutas taip pat galioja tik teisininkams-advokatams, bet advokatai gali dirbti įmonių teisininkais. Įdomu tai, kad institutas čia taikomas tik teisininko, o ne įmonės vadovybės žinioje esantiems įrodymams. Abejojama, ar teisininko biure įmonėje esantys įrodymai nebūtų laikomi taip pat esantys ir įmonės vadovybės žinioje, todėl nesudarantys profesinės teisininko paslapties.

Apskritai, šio instituto statusas daugelyje Europos Sąjungos šalių narių nėra aiškus, nes teismai nėra apie jį pasisakę, o valdžios institucijos gerbia šį institutą net tada, kai jo taikymas įmonių teisininkams nėra numatytas arba nevienareikšmiškai nurodomas įstatymuose.

24  International Journal of Baltic Law
Volume 1 No. 4 (2004, December)

Aukščiau minėtą profesinės teisininko-kliento paslapties instituto taikymo įmonių teisininkams statusą galima šiek tiek lyginti su Lietuvos praktika, nes čia teismai taip pat nėra nubrėžę aiškių jo taikymo ribų ir sąlygų, o iš įstatymų nuostatų šio instituto taikymą galima numatyti būsiant skirtingą, priklausomai nuo to, kas atstovauja šalims ir kokiame procese. Civiliniame procese institutas taikomas plačiai ir praktiškai neribotai. Baudžiamasis procesas profesinės teisininko-kliento paslapties nesaugo įmonių teisininkams, atstovaujantiems nukentėjusį juridinį asmenį bei juridinį asmenį-civilinį ieškovą ar juridinį asmenį-civilinį atsakovą. Iš administracinių bylų teisenos proceso nuostatų galima daryti išvadą, jog čia institutas galioja liudijimui, bet ne rašytiniams įrodymams. Taigi, nuostatos įstatymuose, reglamentuojančiuose šį institutą, dar turės būti tobulinamos, arba aiškiai apibrėžti profesinės teisininko-kliento paslapties taikymą įmonių teisininkams turės LR Aukščiausiasis Teismas savo teisminėje praktikoje.