**EXHIBIT T**

# The Swedish Bar Association

## Some Salient Features of
## the Legal Profession in Sweden

There is no monopoly of legal services in Sweden. Any person may practice law, offering his services to the public, without the need for an authorisation. Moreover, any person may call himself a lawyer, regardless of any law degree or any other formal education.

Litigants are not required to employ qualified legal counsel in court. Anyone may appear before any court, on any level of the court system, representing himself or another person.

Notwithstanding the liberal Swedish attitude to the free choice of counsel before the courts there is a professional Bar of lawyers in Sweden. This is the Swedish Bar Association (Sveriges advokatsamfund). The members of the Bar have an exclusive right to offer legal advice under the professional title "advokat". Some rules are applicable only to the members of the Bar. The title "advokat" is protected by law and is exclusively reserved for the members of the Bar. Notwithstanding the fact that litigants may be represented by anybody, Bar members are retained in the vast majority of court cases. In criminal cases it is very rare that other representatives than members of the Bar are appointed as defence counsel or as counsel to persons injured by tortuous acts in connection with crimes.

A particular feature characterising the Swedish Bar is that no in-house lawyers are permitted to become members of the Bar. Furthermore, members of the Bar may not be employed by someone outside the Bar or form a company with someone who is not a member (in both cases with the possibility for the Council of the Bar to grant leave). This is seen as a corner stone of professional independence; an advocate must always stand free from undue influence from sources outside the profession.

In a European perspective, the legal profession in Sweden developed late. Whilst advocates are mentioned in a statute from

1

1615 (in a set of rules of procedure of the Svea Court of Appeal) an organised Bar did not exist at that time.

The Swedish Bar Association was formed as late as in 1887. The Bar came into existence in an effort to do away with the shady reputation and the bad standards characterizing many of the legal representatives of the day. At the beginning the Bar was a voluntary association of academically trained lawyers. Its principal task from the start was to improve the administration of justice and to increase the prestige of the legal profession.[1]

When the current Swedish Code of Judicial Procedure (RB) entered into force in 1948, the Bar Association gained official recognition. The Code stipulates that there shall be a general Bar Association, the Charter of which is ratified by Government. A member of the Bar is entitled to use the professional title of advocate (advokat). Any person using that title without being so authorised commits a criminal offence.

The objects of the Bar Association are to maintain high ethical and professional standards in the legal profession; to monitor the development of the law and to ensure that the development of the law is beneficially influenced by the experience of the bar; to safeguard the general professional interests of its members; and to further unity and consensus among bar members.

## Organisation

The Bar Association can be characterized as an association under private law, bearing some characteristics of a public law body. The Bar performs some public administrative functions, also involving the exercise of public authority. Into the latter category falls the requirements for Bar membership, supervision of the professional activities of advocates and taking disciplinary measures against Bar members.

---

1. For broad outlines of the development of the legal profession in Sweden and of the Swedish Bar Association, see articles (in Swedish) by Gunnar Bomgren in Tidskrift för Sveriges advokatsamfund (TSA) 1937, p. 63, and by Holger Wiklund in TSA 1962, p. 67.

The Bar is divided into seven geographical sections, six for members practising in Sweden and one for those members who practise abroad. Each section has a local board of its own. Every advocate belongs to the section within whose area he principally conducts his business. The sections perform duties in connection with the admission procedure (see below). They also elect delegates to the Bar's supreme body, the General Assembly.

A regular meeting of the General Assembly is held once a year; the Assembly elects the Council of the Bar and the members of the Disciplinary Committee.

The Council consists of the President, the Vice President, and nine ordinary members, with nine deputy members. An ambition in electing the Council is to ensure the different regional sections and different professional practise areas are duly represented. The maximum tenure for a Council Member is six years.

The Disciplinary Committee is composed of eleven members. The Bar Association elects the Chairman, the Vice Chairman, and six of the members. The Government appoints the remaining three members as representatives of the public. The maximum term for the members appointed by the Bar is eight years.

The Bar employs approximately 25 persons. The Chief Executive Officer of the Bar is the Secretary General.

## Admission of Members

The requirements for becoming a member of the Bar Association are laid down in RB and in the Charter of the Bar Association. A person may be admitted as a member of the Bar only if he or she

1. is domiciled in Sweden or another state within the European Union or the European Economic Area or Switzerland;

2. has passed all proficiency exams required for a judge's office;

3. has completed the practical and theoretical training required for a member of the Bar;

4. is become known for his integrity; and

5. is also in other respects considered suitable to practice as a member of the Bar.

3

As far as the requirement for practical and theoretical training is concerned, the Charter requires that the applicant has practised law in a satisfactory way for at least five years after having passed the necessary academic examinations. In that period the applicant he must have professionally assisted the general public in legal matters for at least three years, either as an employee of a Bar member or as a self-employed person. The Charter also requires that the applicant should has taken the preparatory courses in the ethics and professional techniques of the profession arranged by the Bar Association and that he has passed a Bar examination.

Two Directives apply to the admission procedure. The first of those concerns mutual recognition of diplomas[2]. Thus, a person who has completed an education required to become a Bar member in a country within the European Union, the European Economic Area, or in Switzerland and who has passed an examination in Sweden showing that he has basic knowledge of the Swedish legal system is considered to fulfil the requirements for theoretical education and practice. The University of Stockholm provides a training-course syllabus accepted as an examination of sufficient knowledge of the Swedish legal system for such an applicant.

The second relevant Directive is the Establishment Directive[3], the purpose of which is to promote the free movement of advocates within the European Union. An advocate from the EU or Switzerland permanently establishing himself in Sweden is obliged to register with the Swedish Bar Association. A registered person who has continuously practised law in Sweden for a period of at least three years shall also be deemed to fulfil the requirements concerning theoretical education and practice, provided either that the practice has primarily involved Swedish law or that

---

2. Council Directive 89/48/EEC of 21 December 1988 on a general system for the recognition of higher-education diplomas awarded on completion of professional education and training of at least three years' duration.

3. Directive 98/5/EC of the European Parliament and of the Council of 16 February 1998 to facilitate practice of the profession of lawyer on a permanent basis in a Member State other than that in which the qualification was obtained.

4

the person otherwise has acquired sufficient proficiency and experience for membership.

Special rules apply to advocates from Denmark, Finland, Iceland, or Norway, who have served as associate lawyers at a law firm in Sweden for at least three years. Those rules are very rarely used.

There are certain absolute impediments to admission as a Bar member. A person who is declared bankrupt, or who is under guardianship may not be admitted. Nor may a person be admitted if he is barred by law from acting as an advisor due to a past criminal record.

Professional judges or officers at the Courts, public prosecutors, and bailiffs may not be admitted as members. Nor may, as is mentioned above, someone employed by someone else than a member of the Bar be accepted as a member, unless the Council of the Bar Association grants an exemption.

The applicant must produce sufficient proof of his previous experience. In order for the Council to be able to assess his suitability, the applicant is required to give references to all Bar members, courts, or other authorities with whom he has had professional contact.

A decision to deny admission to the Bar must state the reasons for the decision. A negative decision can be appealed directly to the Supreme Court.

## Membership statistics and trends in the legal market

The Bar Association has grown considerably in recent years, albeit Sweden still has comparatively few advocates: among the Nordic countries, only Finland has a lower number of advocates per capita. In 1983 the Bar Association had 2,000 members. Now, twenty years later, the number of members is a little over 4,100. In addition to this figure, about 1,300 associate lawyers, not yet members of the Bar are employed in law-firms.

Approximately 18 % of the members are women. However, out of the partners of law-firms, only 8 % are women. In comparison,

among the associate lawyers, almost 47 % are women. The number of female members is expected to rise over the coming years, but will still be considerably lower than the number of men.

The growth in membership reflects the trends in legal business. The general practitioner still exists. However, business law has become increasingly important. In a recent survey among the members, almost 60 % stated that business law was their main field of work, while criminal law was stated as the main field by 36 %. Bar members specialising in family law and other areas of law, connected to individuals, are becoming increasingly sparse in number. Professional specialisation is becoming more and more common. It is thought that this trend results from market demands for a higher degree of specialised services furnished under demanding time constraints.

These developments also impact the structures of law-firms. Law-firms tend to be expand both by number of service providers and by geographical localisation. The two largest Swedish firms currently employ more than 300 lawyers each. Networking with foreign law-firms and the creation of transnational firms are becoming increasingly common.

Swedish Bar members – unlike their colleagues in other Scandinavian countries – rarely engage in mass debt collection. Sweden entertains no mandatory requirement to engage a lawyer in real estate transactions. Some members are Notaries Public, but certifying documents is not a common task for Swedish advocates. This is a result of the fact that contracts normally do not require notarisation or any other form of public involvement to become valid.

## Conduct of Advocates
## and the Disciplinary Supervision

Advocates are required to observe certain specific duties. Among the most important are the duty of loyalty to the client, the duty to observe professional independence, and the duty of confidentiality. These duties are safeguarded in different ways. The independence is e.g. protected by the prohibition for a member of the Bar

to be employed by someone outside the Bar or to form a company
with such a person. Most important however, is the general duty
for a Bar Member always to conduct his business in accordance
with the professional standards developed by the Bar – "god ad-
vokatsed".

Professional ethics are not defined by statutory provision. The
ethical standards are instead defined by the decisions of the Disci-
plinary Committee of the Bar and by the Council of the Bar by in
special pronouncements on matters of principle.

There is, however, a written set of rules, derived from the
sources mentioned above, containing a number of standards that
an advocate must observe in his practice. These rules were first
published in 1968 and the current version is from 1984. They con-
tain ethical rules of conduct in relation to clients, courts, counter-
parts etc. They also lay down basic rules regarding members' of-
fice organisations. Of particular importance are the rather strict
rules on conflict of interest and confidentiality.

The Council and the Disciplinary Committee are empowered
with the task to supervise Bar members and to ensure that they
satisfy the professional duties of an advocate.

The different sanctions available are: reminder, warning, warn-
ing combined with a fine, and disbarment. A member, who in his
practice intentionally commits a wrong or otherwise acts dishon-
estly, may be expelled from the Bar. If the circumstances of the
case so warrant, the Committee may instead chose to issue a
warning. A member of the Bar who in any other respect neglects
his professional responsibilities may be given a warning or a re-
minder. In such cases, and if the circumstances are extraordinarily
serious, he may be expelled from the Bar. A warning may be
combined with fine of not less than one thousand crowns and no
more than fifty thousand crowns. If it is considered sufficient, the
Disciplinary Committee, instead of issuing a reminder, may issue
a statement to the effect that his act or omission was wrongful or
otherwise inappropriate.

A decision by the Disciplinary Committee is not subject to ap-
peal by the complainant. A disbarred member may appeal directly
to the Supreme Court. Other sanctions are not possible to appeal.

7

    The Chancellor of Justice also has supervisory powers with regards to advocates. He may request that disciplinary measures be implemented by the Disciplinary Committee against a negligent member, or by the Council in respect of members who no longer fulfils the formal requirements for membership. The Chancellor of Justice may also appeal decisions by the Disciplinary Committee to the Supreme Court.

## Other activities of the Bar

*Legislative influence*

A mandatory part of the Swedish legislative process is the Government inviting comments on draft bills from various bodies in society. The Bar Association is frequently so invited. In response thereto the Bar annually submits comments on some 100 legislative proposals. The Swedish entry into the European Union has increased both the speed in the legislative process and in the number of drafts. The Bar Association considers it especially important to monitor issues relating to the Rule of Law, the respect for human rights, the observance of due process and technical quality of the legislation.

*Information*

The Bar Association publishes a magazine, "Tidskriften Advokaten". It is published 9 times annually and is distributed to all members and their associates, to the courts, to the prosecutors' offices etc. The magazine is also partly available at the Bar Association's web site.

    The web site, www.advokatsamfundet.se, contains information on various issues of interest to the public and the members of the Bar. One of the major features is the possibility for the public to access the Directory of Members.

*Training*

The Bar Association arranges approximately 45 courses per year within the Bar Exam scheme. In addition to that, courses in vari-

ous legal fields are given about 20 times each year. The courses
are open to members of the Bar and their associates.

*International relations*

The Bar Association entertains a broad co-operation with the Bar
Associations of the Nordic countries. The Secretary Generals of
the Bar Associations of Denmark, Finland, Iceland, Norway, and
Sweden meet on a regularly basis and once a year a meeting is
held with the participation of the Presidents and Vice Presidents.

The Bar Association is deeply involved in the work of the
CCBE (Conseil des Barreaux de l'Union Européenne). All the na-
tional Bars and law societies of the European Union and the
European Economic Area are members of the CCBE. In addition,
bars and law societies from a number of other European States are
observer members of the CCBE. This means, in effect, that the
CCBE through the European bars and law societies represents the
interests of more than 500,000 European lawyers. The CCBE,
among other things, monitor the legislative development in the
European Union.

Another important organisation on a European level is
ESSEBA (English Speaking Secretaries of European Bar Associa-
tions), which regularly meet to discuss issues of mutual interest.

The Swedish Bar Association took active part in the formation
of ILAC, International Legal Assistance Consortium, and is repre-
sented on the Board of ILAC. ILAC's purpose is to facilitate and
assist domestic and international efforts to improve the efficacy
and credibility of legal institutions, focusing on situations of con-
flict.

Apart from what is mentioned above, the Bar Association is
also represented in other international bodies, such as the Interna-
tional Bar Association.

9

## Contact details

Sveriges advokatsamfund/Swedish Bar Association
Box 27321
SE-102 54 Stockholm
Sweden

Phone +46 8 459 03 00
Fax +46 8 660 07 79

www.advokatsamfundet.se
E-mail: info@advokatsamfundet.se

10