John E. Flaherty
William J. Heller
Jonathan M.H. Short
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
(973) 622-4444 (telephone)
(973) 624-7070 (facsimile)

Denise L. Loring
Christopher J. Harnett
Pablo D. Hendler
Michael S. Burling
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York  10036
(212) 596-9000 (telephone)
(212) 596-9090 (facsimile)

*Attorneys for Plaintiffs AstraZeneca LP and AstraZeneca AB*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTRAZENECA LP and ASTRAZENECA AB, | ) |
| Plaintiffs, | ) |
| v. | ) Consolidated Civil Action No. 08 CV 1512 (RMB)(AMD) |
| BREATH LIMITED, | ) |
| Defendant. | ) |
| ASTRAZENECA LP and ASTRAZENECA AB, | ) |
| Plaintiffs, | ) |
| v. | ) |
| APOTEX, INC. and APOTEX CORP., | ) |
| Defendants. | ) |

## MEMORANDUM IN OPPOSITION TO APOTEX'S MOTION
## TO COMPEL THE PRODUCTION OF COMMUNICATIONS
## WITH IN-HOUSE COUNSEL IN SWEDEN

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................1

II. BACKGROUND .............................................................................................4

    A. Procedural History .................................................................................4

    B. The United States Patent Act – Foreign Priority
       Applications and PCT Applications ...................................................5

    C. The Priority Applications To The '834 Patent ...............................7

    D. The Withheld Documents ..................................................................8

III. ASTRAZENECA PROPERLY WITHHELD THE DOCUMENTS
     AT ISSUE .......................................................................................................10

    A. The Documents At Issue Are Privileged In Accordance With
       United States Federal Common Law Of Privilege ......................10

       1. The Documents Touch Base With The United States......................10

       2. The Documents At Issue Are Privileged Under United States
          Privilege Law ..................................................................................15

    B. The Documents At Issue Are Protected Trade Secrets Under
       Swedish Law .........................................................................................16

       1. The Swedish Trade Secret Protection Act.........................................16

       2. The Documents At Issue Meet The Requirements For A
          Trade Secret Under Swedish Law.......................................................18

    C. Apotex's Argument That AstraZeneca Should Be Compelled
       To Produce The Documents At Issue Pursuant To United States
       Discovery Rules Is Without Merit ...................................................19

IV. CONCLUSION................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
    208 F.R.D. 92 (S.D.N.Y. 2002) ........................................................................passim

*Golden Trade S.r.L. v. Lee Apparel Co.*,
    143 F.R.D. 514 (S.D.N.Y. 1992) .................................................................... 11

*In re Spalding Sports Worldwide, Inc.*,
    203 F.3d 800 (Fed. Cir. 2000) ...............................................................1, 15, 16

*Odone v. Croda Int'l PLC*,
    950 F. Supp. 10 (D.D.C. 1997) .......................................................................passim

*Sanofi-Synthelabo v. Apotex, Inc.*,
    229 F. Supp. 2d 303 (S.D.N.Y. 2004) ............................................................ 16

*Societe Nationale Industrielle Aerospataile v. U.S. Dist. Ct. for Southern Dist. of Iowa*,
    482 U.S. 525-26 (1987). (Apotex Br., 15-18.) ........................................... 20, 22

*Tulip Computers Int'l B.V., v. Dell Computer Corp.*,
    210 F.R.D. 100 (D. Del. 2002) ....................................................................... 10

*Willemijn Houdstermaatschaapij BV v. Apollo Computer*,
    707 F. Supp. 1429 (D. Del. 1989) ................................................................. 10

## STATUTES

35 U.S.C. § 119 .............................................................................................. 2, 6

35 U.S.C. § 363 ............................................................................................. 2, 6, 11

35 U.S.C. § 365 ................................................................................................ 6, 11

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(b)(5)(A) ............................................................................... 3

ii

## I.    INTRODUCTION

Plaintiffs AstraZeneca LP and AstraZeneca AB ("AstraZeneca") submit this memorandum in opposition to Apotex Inc. and Apotex Corp.'s ("Apotex's") motion to compel the production of AstraZeneca's communications with its in-house counsel in Sweden.  Apotex's motion to compel should be denied.  The documents at issue are protected under United States privilege law, or at the very least as Swedish trade secrets.  Thus, AstraZeneca's withholding of the documents is proper and is supported by both the interests of comity and the strong United States policy favoring protection of privileged communications.

The documents at issue reflect confidential communications between Mr. James Peel or his direct supervisor, Mr. Christopher Craig, both of whom were European patent attorneys at AstraZeneca's predecessor company, Astra Aktiebolag ("Astra"), and Astra employees, including the named inventors on United States Patent No. 7,524,834, one of the asserted patents in this action.  The documents relate to Mr. Peel and Mr. Craig's legal advice and requests for their advice relating to the drafting of the two priority applications to the '834 patent – a Swedish patent application and one filed under the Patent Cooperation Treaty ("PCT").  These documents are thus protected by the attorney-client privilege.  *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000).

Apotex does not challenge the privileged nature of the documents under United States law.  Indeed, Apotex has withdrawn its request for production of similar

documents, authored by the same in-house counsel, relating to the preparation and prosecution of the United States applications that led to issuance of the patents in suit.  Rather, Apotex argues that Swedish, not United States, privilege law should apply to the foreign priority applications because, according to Apotex, these applications (and the privileged documents relating to them) do not "touch base" with the United States.  Apotex is wrong.

The United States Patent Act creates a special relationship between a United States patent application and its foreign priority applications.  The Patent Act states that foreign and PCT applications "shall have the same effect" as United States applications for the purposes of determining priority.  35 U.S.C. § 119; *see also* 35 U.S.C. § 363.  The question of whether such foreign priority patent applications touch base with the United States has been squarely addressed by at least two District Courts, which have ruled in the affirmative under circumstances virtually identical to those present here.  *See Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 99 (S.D.N.Y. 2002), and *Odone v. Croda Int'l PLC*, 950 F. Supp. 10, 13-14 (D.D.C. 1997).  Apotex attempts to run from the *Odone* and *Astra Aktiebolag* cases by labeling them "atypical," but fails to cite a single case to the contrary.

Even if the Court were to find that United States privilege law does not apply to the documents at issue (it does), the documents fulfill the requirements for trade secrets under Swedish law, as explained in the accompanying declarations of Peter Sande, a Swedish lawyer, and Christer Wahlström, Senior Director of Corporate

2

Intellectual Property & Risk Management at AstraZeneca:  (i) the documents concern AstraZeneca's business activities; (ii) AstraZeneca wants to keep them secret; and (iii) disclosure of the information in the documents will cause damage to AstraZeneca.

As Mr. Wahlström explains, the documents at issue concern AstraZeneca's business activities, *i.e.*, AstraZeneca's efforts to obtain patent protection for its innovative drug products.  AstraZeneca unquestionably wants to keep these communications secret to protect its strategy in obtaining patent protection for its inventions, including the legal advice it has received from its patent attorneys.  And, AstraZeneca has taken measures to ensure that these communications remain secret.  It would be particularly harmful to AstraZeneca if its patent strategy and legal advice were disclosed to Apotex, a direct competitor and frequent adversary in patent infringement litigation, whose business is to market generic copies of innovative drug products.  Thus, the documents at issue are immune from discovery under Swedish law.

Because Apotex cannot meaningfully challenge the status of the documents as Swedish trade secrets, Apotex instead asserts that they should be produced because AstraZeneca has not moved for a protective order.  Apotex cites no authority that would have required AstraZeneca to move to protect its privileged, trade secret documents, and AstraZeneca is aware of none.  Moreover, Apotex's position is contrary to Fed. R. Civ. P. 26(b)(5)(A), which simply requires that a party withholding privileged information (i) make the claim; and (ii) describe the nature of

3

the privileged communications.  In any event, the issue is now squarely before the Court and should be decided on the merits, and not on the technicality of which party was required to file a motion.

Apotex's flawed logic is not bolstered by its reliance on a line of cases addressing foreign "blocking statutes".  Even if the Swedish Trade Secret Act could be considered a blocking statute, a proper balancing of the interests of the United States and Sweden confirms that the documents at issue should not be produced. The strong United States public interest in preserving privilege and the fact that under Swedish law the documents would be immune from discovery far outweigh any interest in permitting the discovery.  *See Astra Aktiebolag*, 208 F.R.D. at 102 (in balancing the national interests of the United States and Korea, the court found that ordering production of documents that would not be discoverable in Korea would "violate principles of comity and offend the public policy of this forum").

AstraZeneca respectfully submits that Apotex's motion to compel should be denied.

## II.    BACKGROUND

### A.    Procedural History

The parties exchanged withheld document lists on March 10, 2010.  In an April 7 letter to the Court, Apotex sought to compel the production of 92 documents identified on AstraZeneca's withheld list.  (D.I. 147 at 8, n. 36.)

4

AstraZeneca responded on April 19.  (Burling Decl. Ex. 1.)[1]  At an April 29

conference, the Court ordered Apotex to file a formal motion to compel if it intended

to press for production of the documents at issue.  (Burling Decl. Ex. 4 at 9:6-10:24.)

Apotex waited until July 20 to file its motion to compel – nearly three months after

the April 29 conference, and five months after the close of fact discovery.[2]  By its

motion, Apotex seeks to compel production of 39 of the 92 documents identified in

its April 7 letter to the Court.[3]  Apotex now concedes that the remaining 53

documents are immune from discovery because they relate to prosecution of a United

States patent application.  (Apotex Br., 4.)

### B.  The United States Patent Act – Foreign Priority Applications and PCT Applications

The United States Patent Act codifies the special relationship between

United States applications and their foreign priority and PCT applications.  The Patent

Act provides that United States patents may claim the benefit of earlier filing dates of

related foreign patent applications:

---

[1]      As used herein, "Burling Decl. Ex. __" refers to the stated exhibit of the Declaration of Michael S. Burling submitted herewith.

[2]      Apotex attempts to blame its delay in bringing this motion on AstraZeneca's May 21 production of foreign labeling documents.  (Apotex Br., 1.)  AstraZeneca's May 21 production, however, is unrelated to the documents at issue in Apotex's motion and in no way justifies Apotex's delay in bringing its motion.

[3]      Apotex also seeks "similar" communications to the 39 identified documents. (Apotex Br., 1-2, 4, 19.)  AstraZeneca cannot address Apotex's catch-all category unless and until Apotex identifies specific documents on AstraZeneca's withheld list. In any event, to the extent they exist, these so-called "similar" communications would be immune from discovery for the reasons set forth below.

> *Benefit of earlier filing date; right of priority.*
>
> (a) An application for patent for an invention filed in this country by any person who has, or whose legal representative or assigns have, previously regularly filed an application for a patent for the **same invention in a foreign country** which affords similar privileges in the case of applications filed in the United States or to citizens of the United States, or in a WTO member country, shall have the **same effect as the same application would have if filed in this country on the date on which the application for patent for the same invention was first filed in such foreign country**. . . .

35 U.S.C. § 119 (emphasis added).

The PCT provides procedures by which applicants may seek patent protection for an invention in multiple countries by filing a single "international" patent application that designates the countries in which protection is sought. The Patent Act also includes provisions regarding the effect of applications filed under the PCT. For example, 35 U.S.C. § 363 provides that a PCT application designating the United States (like AstraZeneca's PCT application at issue here) shall have the effect of a national application filed in the United States Patent and Trademark Office:

> *International application designating the United States:  Effect.*
>
> An international application designating the United States shall have the effect, from its international filing date under article 11 of the [PCT], **of a national application for patent regularly filed in the Patent and Trademark Office** except as otherwise provided in section 102(e) of this title.
>
> Moreover, with regard to claiming priority to a foreign patent application, 35 U.S.C. § 365 provides:
>
> *Right of priority; benefit of the filing date of a prior application.*

(a) In accordance with the conditions and requirements of subsections (a) through (d) of section 119 of this title, a national application shall be entitled to the right of priority based on a prior filed international application which designated at least one country other than the United States.

(b) In accordance with the conditions and requirements of section 119 (a) of this title and the [PCT] and the Regulations, an international application designating the United States shall be entitled to the right of priority based on a prior foreign application, or a prior international application designating at least one country other than the United States.[4]

## C.    The Priority Applications To The '834 Patent

AstraZeneca's '834 patent in suit claims the benefit of two applications, Swedish application SE 19704186, filed November 14, 1997, and PCT application PCT/SE98/02039, filed November 11, 1998.  The Swedish and PCT applications are directed to the same inventions as those disclosed and claimed in the '834 patent.  The specification of the '834 patent is identical to the PCT application and issued from an application that may be traced back to the PCT application.

The Swedish and PCT applications are both referenced on the face of the '834 patent:

### Related U.S. Application Data

(63)  Continuation of application No. 09/230,781, filed as ***application No. PCT/SE98/02039*** on November 11, 1998, now Pat. No. 6,392,036

---

[4]      The United States Manual of Patent Examining Procedure also includes provisions directed to claiming priority to a foreign application through a PCT application.  (*See* Burling Decl., Exs. 6-9.)  Additional information on PCT applications can be found at http://www.uspto.gov/web/offices/pac/mpep/documents/1800_1801.htm#sect1801.

(30)          **Foreign Application Priority Data**

Nov. 14, 1997     *(SE)* .................................... *9704186*

(Burling Decl. Ex. 5 at 1 (emphasis added); *see also*, Burling Decl. Ex. 1 at col. 1, lines

7-13.)

### D.    The Withheld Documents

The documents that are the subject of Apotex's motion relate to either

the Swedish application[5] or the PCT application.[6]  The documents reflect

communications between Mr. James Peel or Mr. Christopher Craig and Astra's

employees, including the named inventors on the '834 patent.  Mr. Peel was a

qualified European patent attorney who worked at Astra's offices in Södertälje,

Sweden, from August 1996 through March 1998.  Mr. Peel was responsible for

drafting the Swedish application.  He worked under the direct supervision of Mr.

Craig, who was also a qualified European patent attorney working for Astra.  Mr.

Craig supervised Mr. Peel's preparation of the Swedish application and assumed Mr.

Peel's responsibilities for preparing the PCT application after Mr. Peel's employment

with Astra ended in March 1998.  (Peel Decl., ¶¶ 4-9.)

At the time that the Swedish and PCT applications were prepared, it was

Astra's practice (and it is AstraZeneca's practice today) to file patent applications in

multiple countries to obtain protection for its inventions around the world.  (Peel

_____

[5]      Document Nos. 6, 8-13, 19-26, 30-32, 118, and 127-132.

[6]      Document Nos. 149-153, 173-176, 187, 194, and 248.

Decl., ¶ 6; Wahlström Decl. ¶ 8.)  At the time he prepared the Swedish application, Mr. Peel understood that Astra would subsequently file a United States patent application directed to the inventions disclosed and claimed in the Swedish application.  (Peel Decl., ¶ 7.)  And, Astra's PCT application designated the United States as a country in which it would pursue the PCT application as a national application.  (Peel Decl., ¶ 7.)

The documents at issue reflect communications concerning legal advice on the patentability of and AstraZeneca's legal strategy in preparing the Swedish and PCT applications, including:

1. drafts of the Swedish application prepared by Mr. Peel (Doc. Nos. 6, 8, 10, 12, 13, 23 and 30-32);[7,8]

2. correspondence between Mr. Peel and the '834 patent inventors and other Astra employees regarding patentability and preparation of the Swedish application (Doc. Nos. 9, 11, 19-22, 24-26, 118 and 127-132);

3. drafts of the PCT application prepared by Mr. Peel or Mr. Craig (Doc. Nos. 173-176, 187, and 194);[9] and

4. correspondence between Mr. Peel and the '834 patent inventors and other Astra employees regarding the draft PCT application

_____

[7]     In addition to a draft Swedish patent application prepared by Mr. Peel, Doc. No. 13 includes two non-privileged facsimile communications between one of the inventors of the '834 patent and a member of Astra's legal department.  AstraZeneca is producing these facsimiles to defendants.

[8]     Doc. Nos. 30 and 32 are identical to the Swedish application as filed. AstraZeneca therefore is producing these documents to defendants.

[9]     The draft PCT applications include the initials of Mr. Peel ("JPP") and Mr. Craig ("CCR") on their face.  (Peel Decl., ¶ 9.)

and patentability of the inventions disclosed and claimed in the
application (Doc. Nos. 149-153 and, 248).[10]

(*See* Peel Decl., ¶ 11; Sande Decl., ¶ 12.)

The documents at issue contain highly sensitive, confidential

information.  This information concerns AstraZeneca's business activities, *i.e.*,

AstraZeneca's legal advice and strategies for obtaining patent protection for its

innovative drug products.  (Wahlström Decl., ¶¶ 8-10.)[11]

## III.   ASTRAZENECA PROPERLY WITHHELD THE DOCUMENTS AT ISSUE

### A.   The Documents At Issue Are Privileged In Accordance With United States Federal Common Law Of Privilege

#### 1.   The Documents Touch Base With The United States

It is well-settled that privileged communications "touching base" with

the United States are governed by United States privilege law.  *See, e.g., Astra*

*Aktiebolag*, 208 F.R.D. at 98 (S.D.N.Y. 2002); *Tulip Computers Int'l B.V., v. Dell Computer*

*Corp.*, 210 F.R.D. 100, 104 (D. Del. 2002); *Willemijn Houdstermaatschaapij BV v. Apollo*

---

[10]    Doc. No. 248 is incorrectly listed as having a date of "11/3/1998" on
AstraZeneca's privilege log.  The correct date of this document is March 11, 1998.
(Peel Decl. p. 5, n. 2.)

[11]    Apotex also seeks production of Doc. Nos. 119 and 133, which were not
specifically addressed in AstraZeneca's April 19 letter to the Court.  (*See* Apotex Br., 4,
n.2.)  Doc. Nos. 119 and 133 relate to communications regarding the provisional
United States patent application to AstraZeneca's U.S. Patent No. 6,598,603, another
patent AstraZeneca is asserting in this litigation.  (Wahlström Decl., ¶ 6.)  These
documents, therefore, relate to the United States prosecution of '603 patent and, like
the 53 documents Apotex is no longer seeking (*see supra*, 5), are properly withheld,
even under Apotex's reasoning.

ME1 10487773v.1

*Computer*, 707 F. Supp. 1429, 1445 (D. Del. 1989); *see also Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 520 (S.D.N.Y. 1992) (listing cases).  Apotex agrees:

> When determining whether U.S. or foreign privilege law applies to communications between foreign patent attorneys and their clients, courts typically apply the "touching base" test in conjunction with public policy considerations of the American forum.  Under this test, communications that relate to activity in a foreign country are governed by that country's privilege law, while communications that "touch base" with the United States are controlled by United States privilege law.

(Apotex Br., 6 (citations omitted).)

The issue of whether a foreign priority application touches base with the United States was addressed in *Odone v. Croda Int.'l PLC*, 950 F. Supp. 10 (D.D.C. 1997).  The *Odone* Court held that United States attorney-client privilege law applied to communications between the defendant and its British patent agent concerning the filing of a British priority application and a PCT application.  *Id.* at 13.  Relying on the relevant provisions of the United States Patent Act regarding foreign priority applications (35 U.S.C. §§ 363 and 365(b)), the court found that it would be "nonsensical" to hold otherwise.  *Odone*, 950 F. Supp. at 13.

Similarly, in *Astra Aktiebolag*, the court held that documents relating to Astra's PCT and Swedish priority applications touch base with the United States:

> Documents 334, 521, 526, 527, 543, 578, 578-1, 580, 580-1, 587, 588, and 623 are [(1)] communications between or among Astra employees and in-house counsel or (2) communications between Astra employees, including lawyers, and Astra's U.S. counsel. These documents relate to one of Astra's U.S. patent applications **or its PCT and Swedish priority applications.**

11

\*        \*        \*

> The court finds that the following documents "touch base" with
> the United States:  334, 521, 526, 527 . . . 543, 578, 578-1, 580,
> 580-1, 587, 588, and 623.

*Astra Aktiebolag*, 208 F.R.D. at 96, 99 (emphasis added).

Apotex attempts to minimize the significance of *Odone* and *Astra Aktiebolag* by dismissing them as "atypical."  (Apotex Br., 7-10.)  Yet, Apotex cites no case to the contrary.  Instead, Apotex points to a host of inapposite cases, none of which addresses communications regarding foreign or PCT priority applications for an asserted United States patent.  (Apotex Br., 6-7, 10.)  Rather, these cases merely hold that communications that relate ***solely*** to a foreign application or patent do not touch base with the United States.

Apotex's efforts to distinguish the *Odone* and *Astra Aktiebolag* cases on their facts are likewise misguided.  Rather than come to grips with the clear holdings of these cases, Apotex focuses on portions of these cases that are not relevant to the issue at hand.  In this regard, Apotex cites to the *Odone* Court's discussion of policy considerations – *i.e.*, that application of the more restrictive British privilege law would result in providing foreign litigants with an unfair advantage over their United States counterparts.  (Apotex Br., 8.)  This additional rationale for the court's decision does not change the fact that the *Odone* Court found that communications with foreign patent agents regarding foreign priority and PCT applications touch base with the United States.  Having so found, the court expressly held that it was obliged to

12

apply United States privilege law: "Having found the communications touch base with the United States, this Court **must** apply U.S. law to determine if the documents were properly withheld pursuant to the common law attorney-client privilege." *Odone*, 950 F. Supp. at 14 (emphasis added)(citation omitted).

Similarly, Apotex points to a portion of the *Astra Aktiebolag* decision addressing documents that **did not** relate to foreign priority applications to a United States patent.  (Apotex Br., 9.)  Even this portion of the decision supports AstraZeneca, not Apotex.  There, the court applied Korean substantive law and United States procedural law.  The court noted that application of Korean privilege law, which did not recognize any attorney-client privilege, would require production of many documents protected from disclosure under United States privilege law, and also noted that the documents would not have been discoverable under Korean discovery rules.  *Astra Aktiebolag*, 208 F.R.D. at 102.[12]  The court concluded that the interests of both Korea and the United States were served by denial of the motion to compel.  (*See infra*, 22-23.)

Apotex's point of distinction between Korean discovery practices from those in Sweden (Apotex Br., 9) is a distinction without a difference.  The fact remains that, as with the Korean documents in the *Astra Aktiebolag* case, the documents at issue here are protected under United States privilege law and, as

---

[12]   Apotex's reliance on the *Astra Aktiebolag* Court's application of German law to other documents that it held did not touch base with the United States in yet another portion of the decision is similarly off point.  (Apotex Br., 9.)

explained below, would also be immune from discovery under Swedish trade secret law. Thus, the same principles applied by the *Astra Aktiebolag* Court apply here.

Finally, Apotex's argument that the documents at issue do not touch base with the United States because they relate to "the future event of using a Swedish application to claim a priority date for a later U.S. filing" is without merit. (Apotex Br., 7.) The fact that foreign priority applications would necessarily involve the "future event" of a subsequent United States application did not prevent the *Odone* and *Astra Aktiebolag* Courts from finding that documents relating to the foreign applications touched base with the United States.[13] Moreover, as Mr. Peel explains, at the time that the Swedish and PCT applications were filed, Astra intended to file a United States patent application that would claim priority to these applications. And, the PCT application designated the United States as a country in which Astra would pursue a national application claiming priority to the Swedish application. (Peel Decl., ¶ 7.) This is not surprising, given that at the time that the Swedish application was filed, Astra was seeking FDA approval to market in the United States PULMICORT RESPULES®, which is covered by the Swedish and PCT application claims.

---

[13]    Indeed, the communications at issue in *Odone* related to the inventorship of the British priority application. *Odone*, 950 F. Supp. at 11. The court noted that "it [was] upon this British patent that the *later* US application . . . [claimed] priority pursuant to the International Patent Cooperation Treaty." *Id.* at 13.

14

### 2. The Documents At Issue Are Privileged Under United States Privilege Law

It is well settled that Federal Circuit privilege law applies to communications involving issues of substantive patent law. *See In re Spalding*, 203 F.3d at 803. These include issues relating to an invention submitted for consideration for possible patent protection – *e.g.* a determination of patentability and the preparation of draft patent applications. *See id.* at 803-06.

Under the Federal Circuit standard, "'[t]he preparation and prosecution of patent applications for others constitutes the practice of law.'" *Id.* at 806 (quoting *Sperry v. Florida*, 373 U.S. 379, 383 (1963)).[14] In *Spalding*, the Court held that an invention record prepared and submitted primarily for the purpose of obtaining legal advice on patentability was privileged in its entirety. *Spalding*, 203 F.3d at 803.

The documents at issue meet the privilege standard set forth in *Spalding*. They reflect communications between AstraZeneca and its qualified European patent attorneys, Messrs. James Peel and Christopher Craig. The documents reflect confidential communications made for the purpose of obtaining legal advice, including Messrs. Peel and Craig's preparation of the Swedish and PCT applications, and communications with inventors and other AstraZeneca employees regarding a

---

[14]     *See also Vernitron Med. Prods. Inc. v. Baxter Labs., Inc.*, 186 U.S.P.Q. 324, 325-26 (D.N.J. 1975) ("The substance of the function [of preparing patent applications], rather than the label given to the individual registered with the Patent Office, controls the [privilege] determination here."); *Golden Trade S.r.L*,143 F.R.D. at 519; *Renfield Corp. v. E. Remy Martin & Co., S.A.*, 98 F.R.D. 442, 444 (D. Del. 1982) ("[T]he [privilege] requirement is a functional one of whether the individual is competent to render legal advice and is permitted by law to do so.").

determination of patentability and preparation of the applications.  *Id.* at 805-06, *see also Astra Aktiebolag,* 208 F.R.D. at 105; *Sanofi-Synthelabo v. Apotex, Inc.*, 229 F. Supp. 2d 303, 307-08 (S.D.N.Y. 2004).

### B.     The Documents At Issue Are Protected Trade Secrets Under Swedish Law

Alternatively, even if United States privilege law does not apply to the documents at issue (it does), the documents would still be immune from discovery because they are protected trade secrets under Swedish Law.  As set forth below, and explained in the accompanying declarations of Peter Sande and  Christer Wahlström, the documents meet the requirements for trade secrets under Swedish law because they concern AstraZeneca's business activities, AstraZeneca wants to keep this information secret, and disclosure of this type of information would be harmful to AstraZeneca's competitive interests.

### 1.     The Swedish Trade Secret Protection Act

Mr. Sande explains in his declaration that the Swedish Trade Secret Protection Act defines a trade secret as "information concerning the business or industrial relations of a person conducting business or industrial activities, which that person wants to keep secret, and the disclosure of which would be likely to cause damage to him from the viewpoint of competition."  (Sande Decl., ¶ 14.)  With respect to the last requirement, Mr. Sande explains that "[i]t is not necessary in individual cases to show that there would be actual damage; it is sufficient to show

16

that the disclosure of such information *typically* would harm the company." (Sande Decl., ¶ 19.)

Mr. Sande further explains that under Swedish law, communications or documents containing trade secrets are excluded from discovery unless it can be shown that there is an "extraordinary reason" for their disclosure. (Sande Decl., ¶ 23.) To date, the Swedish Supreme Court has not ordered the forced disclosure of any documents containing trade secrets on the grounds of extraordinary reason. The Swedish Supreme Court has, however, denied forced disclosure of trade secrets because there was no extraordinary reason for their disclosure. (Sande Decl., ¶ 24.)

In support of its motion, Apotex has submitted the declaration of Ms. Linda Landén. Ms. Landén's definition of a trade secret under the Act is in accord with Mr. Sande's definition. (Landén Decl., ¶ 14.) Apotex and Ms. Landén also agree that trade secrets are not discoverable under Swedish law absent an "extraordinary reason" for their disclosure. (Apotex Br., 12-13; Landén Decl., ¶ 19.) Ms. Landén also agrees that "[t]here are a few cases in which the Swedish Supreme Court has denied disclosure of the documents containing trade secrets because no extraordinary reason was considered to be at hand," but cites no case in which discovery was compelled because of a finding of extraordinary reasons. (Landén Decl., ¶ 20.)

17

2.      **The Documents At Issue Meet The Requirements For A Trade Secret Under Swedish Law**

The documents at issue meet the requirements for trade secret protection in Sweden, as Mr. Sande explains in his declaration.  (Sande Decl. ¶¶ 14-22.)  First, the communications constitute information regarding business activities, *i.e.*, AstraZeneca's preparation of the Swedish and PCT applications directed to innovative technology discovered and developed by AstraZeneca.  Developing and protecting such technology is the bedrock of AstraZeneca's business activities. (Wahlström Decl., ¶¶ 8-10; Sande Decl. ¶ 15.)

Second, it cannot be disputed that AstraZeneca wants to keep the documents at issue secret.  The documents disclose legal advice, and AstraZeneca's requests for that advice, provided by AstraZeneca's patent attorneys regarding patentability and their legal strategy in preparing the Swedish and PCT applications. The documents, therefore, reflect AstraZeneca's strategies for obtaining patent protection for its inventions.  This is the very type of information that companies, in particular innovative pharmaceutical companies, maintain in confidence.  At all times, AstraZeneca has taken measures to keep confidential communications with its patent attorneys regarding, for example, the preparation of patent applications.  (Wahlström Decl., ¶ 9; Sande Decl. ¶¶ 16-18.)

Third, disclosure of the documents at issue would harm AstraZeneca. Apotex is a generic drug manufacturer and a direct competitor of AstraZeneca.  Its business is to market copies of AstraZeneca's innovative drug products and it

18

frequently challenges the validity and infringement of AstraZeneca patents in litigation.  (Wahlström Decl. ¶ 10; Sande Decl. ¶ 20.)  Thus, disclosure of AstraZeneca and its legal counsel's thought processes, advice and strategies in obtaining patent protection would harm AstraZeneca in a competitive sense.

Finally, Apotex has not provided any extraordinary reason why disclosure of AstraZeneca's confidential communications with counsel should be compelled, and AstraZeneca is aware of none.  To the contrary, Apotex has obtained extensive discovery from AstraZeneca, including five days of inventor deposition testimony and the deposition testimony from the outside lawyer who prosecuted the applications leading to the '834 patent in the United States.  Moreover, AstraZeneca provided detailed responses to interrogatories seeking facts relating to the inventions of AstraZeneca's asserted '834 patent.  Apotex has made no claim that the AstraZeneca witnesses were improperly instructed not to testify on the grounds of attorney-client privilege, or that AstraZeneca's interrogatory answers were inadequate.  Apotex sets forth no basis – nor can it – for why it needs additional discovery on these subjects.

### C.  Apotex's Argument That AstraZeneca Should Be Compelled To Produce The Documents At Issue Pursuant To United States Discovery Rules Is Without Merit

Apotex next relies on a line of cases that stands for the general proposition that foreign "blocking statutes," *i.e.*, foreign penal statutes that broadly proscribe providing discovery in the foreign jurisdiction other than through the

19

Hague Convention do not deprive a United States court of the power to order a party subject to its jurisdiction to produce evidence, even though the production may violate a foreign blocking statue. *E.g., Societe Nationale Industrielle Aerospataile v. U.S. Dist. Ct. for Southern Dist. of Iowa*, 482 U.S. 525-26, nn.4, 6 (1987). (Apotex Br., 15-18.) As an initial matter, Apotex's attempt to analogize the all-encompassing foreign "blocking statutes" at issue in *Societe Nationale* to this case is far-fetched. There is no general Swedish "blocking statute" at issue here. Rather, the Swedish Trade Secret Protection Act is a narrowly-tailored statute that protects trade secrets from discovery. Compelling production of these documents would inevitably offend Sweden's sovereign interest in protecting Swedish trade secrets.

In any event, even if the Swedish Trade Secret Protection Act were treated as a blocking statue, Apotex has misapplied the multi-factor balancing test and applied by the *Societe Nationale* Court to determine choice of law. (Apotex Br., 16-17.) Apotex states that the fifth factor – "the balance of national interests and hardship" – is the "most important factor." (Apotex Br., 17.) However, contrary to Apotex's assertion, a proper balancing of national interests favors protecting the documents at issue here.

Apotex acknowledges that "Sweden may have a legitimate interest in preventing disclosure of trade secrets for the protection of its companies," but downplays the significance of Sweden's interest. The significance of Sweden's interest in protecting Swedish companies' trade secrets, codified in the Swedish Trade Secret

Protection Act, should not be understated. This is demonstrated by the fact that Sweden has passed legislation directed to protecting trade secrets, and Swedish courts have enforced this legislation. (Sande Decl., ¶¶ 24-27.)

Moreover, Apotex ignores the United States' interest in preserving and protecting the attorney-client privilege – the most sacrosanct of privileges under federal common law. Indeed, Apotex has acknowledged the importance of the attorney-client privilege in the United States, stating that "the attorney-client privilege is the 'oldest of the privileges for confidential communications known to the common law'" and "'it generally is acknowledged that the attorney-client privilege is so sacred and so compellingly important that the courts must, within their limits, guard it jealously.'" (D.I. 111, 4-5 (citations omitted).) As demonstrated above, under United States privilege law the documents at issue are unquestionably immune from discovery. Even Apotex acknowledges that these documents are properly withheld if they touch base with the United States. This interest alone compels denial of Apotex's motion. (*See supra*, 15-16.)

Thus, Apotex's argument that United States courts have a "greater interest in affording defendants that have been sued in its courts . . . the full opportunity to defend themselves" (Apotex Br., 17) is premised on an incomplete assessment of the national interests of both the United States and Sweden. This is particularly so in view of the substantial discovery obtained by Apotex in this litigation. (*See supra*, 19.) There is no basis for Apotex's assertion that it would not be

21

able to "fully defend itself" without the privileged, trade secret information in these documents. (*See* Apotex Br., 17.) Contrary to Apotex's assertion, the balance of national interests favors protection of these documents, not production.

The *Astra Aktiebolag* Court, which cites the *Societe Nationale* case, conducted just such a balancing of national interests. In *Astra Aktiebolag*, the court applied Korean substantive law and United States procedural law to certain Korean documents that it found did not touch base with the United States. The Court noted the liberal discovery policy embodied in the Federal Rules of Civil Procedure, but nevertheless denied defendant's motion to compel production of the documents:

> Accordingly, this court agrees with Andrx that discovery of the Korean documents is governed by the Federal Rules of Civil Procedure. It does not agree, however, that the absence of Korean attorney-client privilege and work product provisions requires this court to order the wholesale production of all of the Korean documents in their entirety. **To do so would violate principles of comity and would offend the public policy of this forum.** The fact is that vastly different discovery practices, which permit only minimal discovery, are applicable to civil suits conducted in Korea. Indeed, none of the documents at issue here would be discoverable in a Korean civil suit. Under these circumstances, where virtually no disclosure is contemplated, it is hardly surprising that Korea has not developed a substantive law relating to attorney-client privilege and work product that is co-extensive with our own law. . . . **[T]o apply Korean privilege law, or the lack thereof, in a vacuum – without taking account of the very limited discovery provided in Korean civil cases – would offend the very principles of comity that choice-of-law rules were intended to protect.**

*Astra Aktiebolag*, 208 F.R.D. at 102 (emphasis added).

22

The *Astra Aktiebolag* Court also took account of the United States policy of protecting privileged communications:

> Further, ordering discovery without any protection also offends the public policy of this forum, which promotes full discovery but, at the same time, prevents disclosure of privileged documents. **If the court were to rule without taking Korea's discovery practices into account, the court would be required to order complete disclosure of all of the Korean documents, many of which would be protected under either the attorney-client privilege or work product doctrine as applied in this jurisdiction.**

*Id.* at 102 (emphasis added). As in the *Astra Aktiebolag* case, compelling the production of the documents at issue here would offend principles of comity and the public policy of this forum because (1) the documents at issue would be protected from disclosure under United States privilege law and (2) the documents at issue are protected from disclosure under Swedish trade secret law.

Apotex's argument that the Court should compel production of the documents because AstraZeneca has not applied for a protective order is likewise misplaced. (Apotex Br., 12-14.) There is no requirement under Swedish law (or the Federal Rules of Civil Procedure) for AstraZeneca to file a motion for a protective order. AstraZeneca properly identified the privileged documents at issue on its withheld documents list. Nothing more was required.

Finally, Apotex argues that producing these documents would not cause any damage or hardship to AstraZeneca. (Apotex Br., 18.) This ignores that disclosure of the privileged, trade secret communications in the documents would

undermine the very interests sought to be protected by the attorney-client privilege and Swedish trade secret law.  Apotex's argument that the existence of a discovery confidentiality order in this case would somehow tip the balance in favor of production (Apotex Br., 18) is not well taken.  Apotex ignores the nature of the documents at issue, suggesting that they should be treated like ordinary, technical trade secret information.  The documents at issue here are not, however, run-of-the-mill technical information.  Rather, as discussed above, they disclose the legal advice of AstraZeneca's attorneys.  No United States litigant would expect that the advice of its attorneys could be protected by a discovery confidentiality order, especially when these documents would be produced to a party it regularly faces as an adversary in court.

## IV.   CONCLUSION

For all of the foregoing reasons, Apotex's motion to compel should be denied.

24

Respectfully submitted,

Dated:  August 30, 2010

*Of Counsel*

Denise L. Loring
Christopher J. Harnett
Pablo D. Hendler
Michael S. Burling
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9000 (telephone)
(212) 596-9090 (facsimile)

By:   s/John E. Flaherty
        John E. Flaherty
        William J. Heller
        Jonathan M.H. Short
        McCARTER & ENGLISH, LLP
        Four Gateway Center
        100 Mulberry Street
        Newark, New Jersey 07102-4096
        (973) 622-4444 (telephone)
        (973) 624-7070 (facsimile)

        *Attorneys for Plaintiffs*
        *AstraZeneca LP and AstraZeneca AB*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2010, I caused a copy of the foregoing papers to be served via

ECF and e-mail upon the following:

William A. Rakoczy
Paul J. Molino
Deanne M. Mazzochi
Amy D. Brody
Tara M. Raghavan
RAKOCZY MOLINO MAZZOCHI
SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, Illinois 60654
(312) 222-6301 (telephone)
(312) 222-6321 (facsimile)

Arnold B. Calmann
SAIBER LLC
One Gateway Center, 13th Floor
Newark, New Jersey 07102
(973) 622-3333 (telephone)
(973) 622-3349 (facsimile)

*Attorneys for Defendant*
*Breath Limited*

Richard J. Basile
David W. Aldrich
Roy D. Gross
ST. ONGE STEWARD JOHNSTON
& REENS LLC
986 Bedford Street
Stamford, Connecticut 06905
(203) 324-6155 (telephone)
(203) 327-1096 (facsimile)

Eric I. Abraham
HILL WALLACK LLP
202 Carnegie Center
CN 5226
Princeton, New Jersey 08543
(609) 924-0808 (telephone)
(609) 452-1888 (facsimile)

*Attorneys for Defendants*
*Apotex, Inc. and Apotex Corp.*

By: <u>s/John E. Flaherty    </u>
        John E. Flaherty

26