John E. Flaherty
William J. Heller
Jonathan M.H. Short
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444 (telephone)
(973) 624-7070 (facsimile)

Denise L. Loring
Christopher J. Harnett
Pablo D. Hendler
Michael S. Burling
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9000 (telephone)
(212) 596-9090 (facsimile)

*Attorneys for Plaintiffs AstraZeneca LP and AstraZeneca AB*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTRAZENECA LP and ASTRAZENECA AB,<br><br>              Plaintiffs,<br>  v.<br>BREATH LIMITED,<br><br>              Defendant. | Consolidated Civil Action No. 08 CV 1512 (RMB)(AMD) |
| ASTRAZENECA LP and ASTRAZENECA AB,<br><br>              Plaintiffs,<br>  v.<br>APOTEX, INC. and APOTEX CORP.,<br><br>             Defendants. | |

## DECLARATION OF CHRISTER WAHLSTRÖM

-2-

I, Christer Wahlström, declare as follows:

1.  I make this declaration in support of AstraZeneca LP's and AstraZeneca AB's ( "AstraZeneca's") opposition to Apotex, Inc.'s and Apotex Corp.'s motion to compel the production of certain documents identified on AstraZeneca's log of privileged documents.

2.  I am a registered European patent attorney employed by AstraZeneca working at AstraZeneca's offices in Sodertalje, Sweden. As a European patent attorney, I am qualified to provide legal advice regarding issues of patent law, including the preparation of patent applications.

3.  My title at AstraZeneca is Senior Director of Corporate Intellectual Property & Risk Management. My responsibilities include overseeing the preparation and prosecution of AstraZeneca patent applications in Europe and around the world. I have been a member of the Institute of Professional Representatives before the European Patent Office (EPI) since 1994, and a member of the Society of Patent Attorneys in Swedish Industry (SIPF) since 1991.

4.  Prior to my employment at AstraZeneca, I worked for AstraZeneca's predecessor company, Astra Aktiebolag ("Astra") in Sodertalje, Sweden. I began at Astra as a patent attorney in August, 1998 and initially worked in the Respiratory group. I became a Patent Manager in Astra's Cardiovascular group in December, 1998. My responsibilities at that time included overseeing Astra's patent attorneys in its Cardiovascular group.

5.  I understand that Apotex's motion to compel is directed to documents identified as Document Nos. 6, 8-13, 19-26, 30-32, 118-119, 127-133, 149-153, 173-176, 187, 194 and 248 on AstraZeneca's list of withheld documents in this litigation. I have reviewed the

documents at issue, which relate to a Swedish patent application, SE 9704186 (the "Swedish application") and an international application, PCT/SE98/02039 (the "PCT application") filed by Astra. AstraZeneca is asserting U.S. Patent No. 7,524,834 (the "'834 patent") in this lawsuit, which claims priority to the Swedish application by virtue of the PCT application. I have also reviewed the declaration of Mr. James Peel in support of AstraZeneca's opposition to Apotex's motion to compel.

6. The documents at issue include: (1) drafts of the Swedish application (Doc. Nos. 6, 8, 10, 12-13, 23 and 30-32); (2) correspondence between an in-house Astra patent attorney, Mr. James Peel and Astra employees, including the inventors listed on the '834 patent, concerning the patentability and preparation of the Swedish application (Doc. Nos. 9, 11, 19-22, 24-26, 118, and 127-132); (3) drafts of the PCT application (Doc. Nos. 173-176, 187 and 194); (4) correspondence between Mr. Peel and Astra employees, including the inventors, concerning the patentability and preparation of the PCT application (149-153 and 248). The documents also include correspondence between Mr. Peel and Astra employees, including the inventors, regarding the patentability and preparation of a provisional United States patent application that led to AstraZeneca's U.S. Patent No. 6,598,603, which is also asserted in this litigation. (Doc. Nos. 119 and 133.)

7. I am familiar with AstraZeneca's policies and procedures relating to the preparation and filing of patent applications in the United States and around the world. I am also familiar with Astra's policies and procedures in this regard by virtue of my work as a patent attorney and Patent Manager for Astra beginning in 1998. It is AstraZeneca's policy and practice (and was Astra's policy and practice) to keep confidential the work performed by its employees in preparing its patent applications. This is especially so with respect to

communications with AstraZeneca and Astra's counsel requesting or providing legal advice concerning AstraZeneca's strategies for obtaining patent protection. Like Astra, AstraZeneca considers its confidential communications with its patent attorneys reflecting legal advice and requests for legal advice to be privileged.

8. AstraZeneca is a global, research-driven, biopharmaceutical company, the business of which is the discovery, development, manufacture and sale of prescription medicines around the world. AstraZeneca invests over $4 billion in research and development each year and employs over 11,000 people in its research and development organization. In an effort to protect its significant investments in research and development, AstraZeneca seeks and obtains patents covering its innovative medicines in the United States and around the world. Obtaining patent protection for its inventions in Europe, the United States and throughout the world is a critical aspect of AstraZeneca's business.

9. AstraZeneca wants to keep secret the information contained in the documents that are the subject of Apotex's motion to compel because it reflects confidential legal advice from AstraZeneca's patent attorneys and AstraZeneca's thought processes in obtaining patent protection for its inventions. AstraZeneca considers this type of information to be more sensitive than technical trade secret information. Thus, AstraZeneca, and its predecessor, Astra, have at all times treated the types of communications in the documents at issue as highly confidential and privileged. Under AstraZeneca's policies and practices, and previously Astra's policies and practices, only a limited number of employees have access to these types of communications.

10. AstraZeneca would be harmed in a competitive sense if Apotex or its counsel were given access to the documents at issue. As an innovator pharmaceutical company,

-5-

AstraZeneca is in direct competition with generic drug companies, including Apotex, that seek to market copies of AstraZeneca's products. Moreover, AstraZeneca often finds itself in litigation with Apotex. In recent years, AstraZeneca has filed at least six patent infringement suits against Apotex. AstraZeneca expects that it will continue to face Apotex in patent infringement litigation for the foreseeable future. Providing Apotex and its counsel with documents that reveal AstraZeneca's strategy in obtaining patent protection for its products would provide Apotex with a competitive advantage in litigating against AstraZeneca.

\* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 30, 2010        *(signature)* Christer Wahlstrom