John E. Flaherty
William J. Heller
Jonathan M.H. Short
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
(973) 622-4444 (telephone)
(973) 624-7070 (facsimile)

Denise L. Loring
Christopher J. Harnett
Pablo D. Hendler
Michael S. Burling
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York  10036
(212) 596-9000 (telephone)
(212) 596-9090 (facsimile)

*Attorneys for Plaintiffs AstraZeneca LP and AstraZeneca AB*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTRAZENECA LP and ASTRAZENECA AB, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) Consolidated Civil Action No. 08 CV 1512 |
| BREATH LIMITED, | ) (RMB)(AMD) |
| | ) |
| Defendant. | ) |
| ASTRAZENECA LP and ASTRAZENECA AB, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| APOTEX, INC. and APOTEX CORP., | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF PETER SANDE

I, Peter Sande, declare as follows:

1.      I submit this declaration in support of AstraZeneca's opposition to Apotex's motion to compel the production of communications with in-house counsel in Sweden. This declaration supplements a declaration that I executed on April 16, 2010, a copy of which is attached to this declaration as Exhibit 1.

2.      As explained in my April 16 declaration, I am an attorney practicing intellectual property law in Sweden. I act before Swedish courts and the Swedish Patent Office. I am also competent to practice before the European Patent Office.

3.      I currently hold the title of Advokat and work at Sandart & Partners Advokatbyrå KB, where I have been a partner since 1998. I have been with the firm for more than 15 years. I am a member in good standing of the Swedish Bar Association (in Swedish, "Sveriges advokatsamfund").

4.      I am the convenor of the Swedish Patent Group of the Swedish Association for Industrial Property (SFIR). I am a member of the European Patent Lawyers Association (EPLAW), Association Internationale pour la Protection de la Propriété Intellectuelle (AIPPI), as well as other intellectual property associations. In 2006, I was appointed to act as an expert in the Swedish Government Commission regarding professional secrecy.

5.      In my capacity as an attorney, I have worked in the past for many corporate clients, including AstraZeneca. AstraZeneca is a current client. My working relationship with AstraZeneca in no way affects my statements in this declaration.

6.      I understand that on July 20, 2010, Apotex, Inc. and Apotex Corp. (together, "Apotex") filed a motion to compel AstraZeneca to produce certain documents listed by AstraZeneca on its privilege log, including documents that reflect confidential communications between the in-house legal department and employees of an AstraZeneca predecessor company, Astra Aktiebolag ("Astra"). I also understand that Apotex has asserted that AstraZeneca has not established that these documents meet the requirements of a trade secret under Swedish law. I have reviewed the declaration of Ms. Linda Landén, which I understand Apotex submitted in support of its motion to compel. I address pertinent portions of Ms. Landén's declaration below.

7.      As explained below, it is my opinion that the AstraZeneca documents at issue meet the requirements of a trade secret under Swedish law and, therefore, would be exempted from forced disclosure under Swedish law, unless there exists an extraordinary reason for their production.

**A.      The Nature Of AstraZeneca's Business**

8.      I have reviewed the declaration of Christer Wahlström, AstraZeneca's Senior Director of Corporate Intellectual Property & Risk Management. As Mr. Wahlström explains, AstraZeneca is a worldwide pharmaceutical company, focused on the research and development of innovative drug products. (Wahlström Decl., ¶ 8.) Obtaining patent protection for its inventions in Europe, the United States and throughout the world is a critical aspect of AstraZeneca's business. (Wahlström Decl., ¶ 8.) AstraZeneca maintains its research and development and strategies for obtaining patent protection as highly confidential. (Wahlström Decl., ¶ 9.) AstraZeneca is in direct competition with generic pharmaceutical companies, such as Apotex, the business of which is to copy drugs developed and patented by innovator drug

-3-

companies such as AstraZeneca.  Moreover, AstraZeneca and Apotex are frequent adversaries in patent infringement litigation.  (Wahlström Decl., ¶ 10.)

### B.   The AstraZeneca Documents At Issue

9.      The AstraZeneca documents that are the subject of Apotex's motion to compel are identified as Doc. Nos. 6, 8-13, 19-26, 30-32, 118-119, 127-133, 149-153, 173-176, 187, 194 and 248 on AstraZeneca's privilege log.  I have reviewed each of these documents, except Document Numbers 119 and 133.

10.      I have reviewed the declaration of Mr. James Peel, whom I understand was an in-house counsel at Astra in Sweden in the 1997-1998 timeframe.  Mr. Peel states that he was a qualified European Patent Attorney at that time.  (Peel Decl. ¶ 4.)  According to Mr. Peel, the documents at issue were authored or received by Mr. Peel or his direct supervisor, Mr. Christopher Craig.  Mr. Craig was a consultant to Astra and a qualified European Patent Attorney at the time the documents were generated.  (Peel Decl., ¶ 5.)

11.      The documents at issue concern Astra's Swedish patent application, SE/9704186 (the "Swedish application"), and an international application filed pursuant to the Patent Cooperation Treaty ("PCT"), PCT/SE98/02039 (the "PCT application").  I understand that AstraZeneca is asserting U.S. Patent No. 7,524,834 (the "834 patent") in this litigation.  The '834 patent claims priority to the Swedish application by virtue of the PCT application.

12.      The documents at issue can be separated into four general categories as follows:  (1) drafts of the SE/9704186 application prepared by Mr. Peel (Document Nos. 6, 8, 10, 12, 13, 23 and 30-32);[1] (2) correspondence between Mr. Peel and inventors and other Astra employees regarding the patentability and preparation of SE/9704186 (Document Nos. 9, 11, 19-

---

[1]       I note that Document No. 13 includes, in addition to a draft of the Swedish application, correspondence by facsimile between an inventor and an individual in Astra's patent department.

22, 24-26, 118, and 127-132); (3) drafts of the PCT/SE98/02039 application prepared by Astra's

counsel (Document Nos. 173-176, 187 and 194); and (4) correspondence between Mr. Peel and

the '834 patent inventors and other Astra employees regarding the patentability and preparation

of PCT/SE98/02039 (Document Nos. 149-153 and 248).  I understand that these documents have

at all times been treated as "confidential" by Astra and AstraZeneca, and that access to these

documents has been limited to the employees of Astra (or AstraZeneca) and its counsel.

(Wahlström Decl., ¶ 9.)

13.     The documents disclose Astra's request for and its counsel's legal

advice regarding the patentability and preparation of Astra's Swedish and PCT applications.

They reflect the strategy employed by Astra in preparing its Swedish and PCT applications,

including communications with Mr. Peel or Mr. Craig regarding the substance of Astra's

applications.

### C.     The Documents At Issue Meet The Requirements Of A Trade Secret Under The Swedish Trade Secret Protection Act

14.     In my opinion, the documents at issue meet the requirements of "trade

secrets" in accordance with the Swedish Trade Secret Protection Act.  As explained in my April

16 declaration, in Section 1 of the Swedish Trade Secret Protection Act, a trade secret is defined

as information concerning the business or industrial relations of a person conducting business or

industrial activities, which that person wants to keep secret, and the disclosure of which would

be likely to cause damage to him from the viewpoint of competition.  (Ex. 1, ¶ 14.)

### (1)     The information in the documents concerns AstraZeneca's business relations

15.     As stated above (¶ 8), AstraZeneca is in the business of researching and

developing innovative drug products.  Obtaining patent protection for these drug products is an

integral part AstraZeneca's business.  AstraZeneca's in-house counsel's work and legal advice

-5-

regarding the preparation of its patent applications, such as the Swedish and PCT applications at issue here, therefore, concern AstraZeneca's business relations. (See Wahlström Decl., ¶ 8.) Because the documents at issue contain confidential legal advice and counsel's work product relating to the Swedish and PCT applications, in my opinion, the information reflected in the documents qualifies as business or industrial activities under the Act.

> **(2)    AstraZeneca wants to keep the information in the documents at issue secret**

16.     As explained by Mr. Wahlström (¶ 9), AstraZeneca wants to keep confidential the information contained in the documents at issue. The documents contain information reflecting Astra's request for legal advice and its counsel's provision of legal advice regarding the patentability and preparation of Astra's Swedish and PCT applications. This legal advice from counsel shows how Astra's counsel advised it to describe its invention and reflects Astra's strategies in preparing and revising its patent applications and obtaining patent protection. (Wahlström Decl. ¶¶ 9-10.)

17.     AstraZeneca would want to keep this information secret because, as discussed below (¶¶ 19-22), it would permit Apotex, a direct competitor and generic drug company to gain access to AstraZeneca's thought processes and strategies in obtaining patent protection for its drug products. According to Mr. Wahlström, Astra (and now AstraZeneca) has at all times maintained information relating to the determination of patentability and preparation of its patent applications as "confidential" and has limited access to the information to its employees and counsel (Wahlström Decl., ¶ 9.)

18.     Thus, in my opinion, the information contained in the documents at issue meets the second requirement of the Swedish Trade Secret Protection Act as AstraZeneca would want to keep it secret.

   (3)    **AstraZeneca would be harmed in a competitive sense if this information were disclosed to Apotex or its counsel**

19.    As I explained in my April 16 declaration (Ex. 1, ¶¶ 16-17), disclosure of protected information to third parties can cause damage, in terms of competition, if it becomes known outside the group of people that has been given access to the information.  It is not necessary under Swedish law to show in individual cases that there would be actual damage; it is sufficient to show that the disclosure of such information *typically* would harm the company.  Ms. Landén does not dispute my understanding of this element of the Act.

20.    AstraZeneca would be harmed if the type of information disclosed in the documents, *i.e.*, attorney advice reflecting a determination of patentability, preparation of patent applications and AstraZeneca's strategies for obtaining patent protection, were disclosed to a competitor or its counsel, particularly a competitor against which AstraZeneca frequently litigates.  (Wahlström Decl. ¶ 10.)  For example, a generic competitor of AstraZeneca, such as Apotex , would gain a competitive advantage if it or its counsel were to know AstraZeneca's strategies for obtaining patent protection.  (Wahlström Decl. ¶ 10.)

21.    I understand that Apotex has taken the position that AstraZeneca's trade secrets should nonetheless be produced because Apotex contends that the information could be protected if disclosed pursuant to the Discovery Confidentiality Order ("Protective Order") entered in this case.  In my opinion, such disclosure pursuant to the Protective Order would not protect the information contained in the documents at issue, which reflects AstraZeneca's confidential attorney advice and legal strategy relating to its efforts to obtain patent protection for its innovative drug products.  This type of information is considered to be more sensitive than technical trade secret information.  (Wahlström Decl., ¶ 9.)

22.     Thus, in my opinion, the documents at issue meet the definition of a trade secret under the Swedish Trade Secret Protection Act and a Swedish court would not compel their disclosure absent a showing of an "extraordinary reason."

### D.     Swedish Trade Secret Law Requires Extraordinary Reason For Forced Disclosure Of Trade Secrets

23.     As I explain in my April 16 declaration, a Swedish court will not force the disclosure of a trade secret unless there is shown to be an "extraordinary reason" for disclosure.  In accordance with Swedish procedural law, the burden of proving that an "extraordinary reason" in favor of disclosure rests with the party seeking disclosure of trade secrets.  The party seeking disclosure must (i) claim that there is an extraordinary reason in favor of disclosure; and (ii) invoke facts that demonstrate such reasons.

24.     The Trade Secret Protection Act has been in force for 20 years (since July 1, 1990).  Since the Act has been in effect, the Swedish Supreme Court has not ordered the forced disclosure of documents containing trade secrets.  It has, however, *denied* forced disclosure for failure to demonstrate an extraordinary reason.

25.     Ms. Landén acknowledges this, stating "[t]here are a few cases in which the Swedish Supreme Court has denied disclosure of documents containing trade secrets because no extraordinary reason was considered to be at hand." (Landén Decl. ¶ 20.) Ms. Landén states, however, that in the cases in which the Swedish Supreme Court has denied disclosure, "the documents' significance as evidence in these cases was considered to be limited.  However, this illustrates that a company's interest of keeping information secret may indeed be set aside if the document is deemed to have importance as evidence." However, Ms. Landén provides no basis for why AstraZeneca's interests in keeping its confidential information secret in this case should be set aside, and I am aware on none.

26.     As I stated in my April 16 declaration, when determining whether there is an extraordinary reason in favor of forced disclosure, the interest of the company in keeping the information secret is weighed against the relevance of the information to the other party's case. In the cases where the Supreme Court has denied forced disclosure, it has stated that the basis for the claim of the party that sought such relief was dependent on several factors, not only on what could be proven through the documents in question. Hence, the fact that a forced disclosure of the documents would be relevant or helpful for the determination of the case is not enough for a Swedish court to order forced disclosure of trade secret information. For example, in a copyright infringement case from the Swedish Supreme Court on 18 July 1986 (See Aktiebolaget Hags Mekaniska v. Aktiebolaget Svenska Cykelställfabriken, case no SÖ 417 (As reported in NJA, 1986, pp. 398-402 (Burling Decl. Ex. 2)), a plaintiff sought to force disclosure.[2] The Swedish Supreme Court held that it was necessary to make an assessment of the likelihood that the party seeking disclosure would be successful in the case on the merits, and added that relatively strict requirements in this respect must be applied when the parties are competitors. (See Burling Decl. Ex. 2 at 401.) The Supreme Court found that the importance of protecting the secret information outweighed its relevance to the case. To this day, the case is relied upon as authority by counsel in Sweden.

27.     I am aware of no decision in Sweden in which a member of an in-house legal department was compelled to disclose his or her communications or documents by a court.

---

[2]     As used herein, "Burling Decl. Ex. ___" refers to the stated exhibit to the Declaration of Michael S. Burling, which I understand is being submitted herewith.

**D.    The Documents At Issue Are Confidential Trade Secrets In Their Entirety**

28.    Ms. Landén states in paragraph 15 of her declaration that "[a]n assessment must be made not only for each document, but also for each piece of information -- meaning that part of a document may be considered a trade secret while other parts are not." In my opinion, the documents at issue are protected trade secrets in their entirety because they contain confidential information that cannot be separated from other information in the documents. My opinion in this regard is supported by the analysis of a Swedish Court of Appeals, as well as other legal doctrine.

29.    The difficulties of separating confidential information from non-confidential information were discussed in a June 18, 1996 decision of a Swedish Court of Appeals. (Nya Boxholm Produktion AB v. Sven Erkers och AB Boxholms Trärör, Göta Court of Appeal, case no. T 427/95 (the "Boxholm Case", Burling Decl. Ex. 3).) The question to be decided in the Boxholm Case was whether or not a significant amount of documentation, including drawings, price curves, diagrams and calculations constituted trade secrets. The Court of Appeal stated the following:

> Nya Boxholm has . . . submitted that all the material included in the so called wood pipe archive constitute one unit -- a source of information -- which meets the requirements in order to be included in the protectable field. [This] approach is too far-reaching. *A piece of information which, at an assessment in the particular case, is not considered confidential, may indeed, if it has been inseparably documented together with a piece of confidential information, in some cases enjoy protection under the Trade Secret Protection Act.* (Ex. 3 at 2-3, emphasis added.)

30.    The Court of Appeals in the Boxholm case further stated that a determination must be made as to whether confidential information can be separated from non-confidential information without disclosing the confidential part of the information. (Burling Decl. Ex. 3, p. 3.) The Boxholm case was further appealed to the Swedish Supreme Court, but

-10-

the Supreme Court declined to review the decision of the Court of Appeals.  The findings in the Boxholm case remain relevant also today.

        31.     In my opinion, the confidential attorney advice contained in the documents at issue cannot be separated from any other information in the documents.  This is because the draft patent applications prepared by counsel and the correspondence containing legal advice on patentability and preparation of the applications reflect in their entirety Astra and its counsels' thought process and strategy in obtaining patent protection for Astra's drug product. For example, Astra and its counsels' decision to change the language of or otherwise modify the applications at issue would be reflected in a document in its entirety -- irrespective of the language of the document itself -- such that AstraZeneca could not separate the confidential legal advice and strategy from any other information in the documents.  As explained in the case law referred to in ¶¶ 28-30 above, in my opinion, these documents, part of Astra's patent files, should be considered confidential in their entirety.

*     *     *

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 27, 2010

Peter Sande

-11-

Exhibit 1

John E. Flaherty
William J. Heller
Jonathan M.H. Short
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
(973) 622-4444 (telephone)
(973) 624-7070 (facsimile)

Denise L. Loring
Christopher J. Harnett
Pablo D. Hendler
Michael S. Burling
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York  10036
(212) 596-9000 (telephone)
(212) 596-9090 (facsimile)

*Attorneys for Plaintiffs AstraZeneca LP and AstraZeneca AB*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTRAZENECA LP and ASTRAZENECA AB,<br><br>Plaintiffs,<br><br>v.<br><br>BREATH LIMITED,<br><br>Defendant. | Consolidated Civil Action No. 08 CV 1512 (RMB)(AMD) |
| ASTRAZENECA LP and ASTRAZENECA AB,<br><br>Plaintiffs,<br><br>v.<br><br>APOTEX, INC. and APOTEX CORP.,<br><br>Defendants. | |

## DECLARATION OF PETER SANDE

I, Peter Sande, declare as follows:

1.      I am an attorney practicing intellectual property law in Sweden.  I act before Swedish courts and the Swedish Patent Office.  I am also competent to practice before the European Patent Office.

2.      I currently hold the title of Advokat and work at Sandart & Partners Advokatbyrå KB, where I have been a partner since 1998.  I have been with the firm for more than 15 years.  I am a member in good standing of the Swedish Bar Association (in Swedish, "Sveriges advokatsamfund").

3.      I am the convenor of the Swedish Patent Group of the Swedish Association for Industrial Property (SFIR).  I am a member of the European Patent Lawyers Association (EPLAW), Association Internationale pour la Protection de la Propriété Intellectuelle (AIPPI), as well as other intellectual property associations.  In 2006, I was appointed to act as an expert in the Swedish Government Commission regarding professional secrecy.

4.      In my capacity as an attorney, I have worked in the past for many corporate clients, including AstraZeneca.  AstraZeneca is a current client, but my working relationship with AstraZeneca in no way affects my statements in this declaration.

5.      I understand that Apotex, a defendant in this litigation, has challenged AstraZeneca's claim of attorney-client privilege as to certain documents listed by AstraZeneca on its privilege log, including documents that reflect confidential communications between AstraZeneca's in-house legal department and AstraZeneca employees or outside U.S. counsel.

6.     Below, I set forth my understanding of the protections of Swedish law as they apply to in-house counsel in Sweden.

### A.     Swedish Law

7.     Discovery in the English or American sense does not exist in Sweden. There are, however, rules on how a party can get hold of relevant information needed as evidence in a trial. Issues concerning documentary evidence are regulated in Chapter 38 of the Swedish Code of Judicial Procedure ("Swedish Code") (in Swedish, "Rättegångsbalken").

8.     It is important to keep in mind that Sweden's legal system does not accept the broad American concept of discovery. Instead, in Sweden, the kind of documents that a party might have to produce in connection with court proceedings is restricted to documents of tangible value in terms of evidence, relating to the cause of action. Parties requesting production of documents must specify which documents are being requested and why those documents are relevant to the case.

9.     Anybody holding a document that can be assumed to be of importance as evidence may be obliged to produce it. When somebody is obliged to produce a document to be used as evidence, he may be ordered by the court to do so, whether he is a party to the dispute or not.

10.     There are, however, exceptions to this rule. Documents containing information subject to secrecy pursuant to certain sections of the Secrecy Act (in Swedish, "Offentlighets-och sekretesslagen") are, for example, excluded from forced disclosure. That is also the case with communications or documents reflecting legal advice, or requests for legal advice, between an Advokat and members of an in-house legal department. Further, this exclusion also applies to communications or documents containing trade secrets.

-3-

11.     Chapter 38, Section 2 of the Swedish Code refers to Chapter 36, Section 6, where it is stated that a witness may refuse to give testimony to the extent such testimony should involve disclosure of a trade secret *unless there is extraordinary reason* (in Swedish, "synnerlig anledning") for examining the witness on the matter.

12.     This instruction in Chapter 36 of the Swedish Code is effective for written evidence as well.  Thus, documents containing trade secrets are exempted from forced disclosure unless extraordinary reason exists for their production.

**B.     Trade Secrets Under the Trade Secret Protection Act**

13.     In the Swedish Code, "trade secret" has the same meaning as that phrase is given in the Trade Secret Protection Act (the "Act") (in Swedish, "lagen om företagshemligheter").

14.     In Section 1 of the Act, a trade secret is defined as information concerning the business or industrial relations of a person conducting business or industrial activities, which that person wants to keep secret, and the disclosure of which would be likely to cause damage to him from the viewpoint of competition.

15.     Any kind of information relating to the business can be qualified as a trade secret; the information can relate to technical, commercial or administrative conditions. Communications between an in-house legal department and the parent company are considered trade secrets.

16.     Trade secrets in Sweden also require that the company's representatives or the person conducting the business keeps the information at issue secret.  In this sense, the rule is subjective; the desire to keep information secret does not have to be justified.  Information can be known to quite a few people and still be considered secret; it can have status as secret as long as only the employees who need the information in order to perform their work have access

-4-

to it. The information can also be known to persons outside the company – if, for example, the company is cooperating with another entity or if the company is obtaining advice from, *inter alia*, an attorney not employed by the company. It is crucial that the group of persons with access to the information is somehow limited and can be defined.

17.     The last requirement for Swedish trade secret protection is that the protected information can cause damage, in terms of competition, if it becomes known outside the group of people that has been given access to the information. It is not necessary in individual cases to show that there would be actual damage; it is sufficient to show that the disclosure of such information *typically* would harm the company.

18.     Thus, documents reflecting a request for, or the provision of, legal advice between a company and its in-house legal department, as well as with its outside attorneys, are to be considered trade secrets. These documents are therefore exempted from forced disclosure in Sweden unless there exists extraordinary reason for their production.

### C.     Extraordinary Reason

19.     To date, the Swedish Supreme Court has not ordered the forced disclosure of documents containing trade secrets on the grounds of extraordinary reason.

20.     There are, however, cases in which the Supreme Court has *denied* forced disclosure because there was no extraordinary reason at hand. It is difficult to determine in any detail what such extraordinary reasons would include. Authorities discussing the Swedish Code do not elaborate on the matter. It is only stated in these authorities that, in certain cases (particularly criminal cases), the interest of a complete examination of the facts may be greater than the interest of protecting trade secrets.

21.     When determining whether there is extraordinary reason in favor of forced disclosure, the interest of the company to keep the information secret is weighed against

the relevance of the information to the other party's case.  In the cases where the Supreme Court has denied forced disclosure, it has stated that the basis for the claim of the party who sought such relief was dependent on several factors, not only on what could be proven through the documents in question.  Hence, the fact that a forced disclosure of the documents would be relevant or helpful for the determination of the case is not enough for a Swedish court to order forced disclosure.

22.     I am aware of no decision in Sweden in which a member of an in-house legal department was compelled to disclose their communications or documents by a court.

*     *     *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 16, 2010          _____

                                          Peter Sande