1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
2    _____
     ASTRAZENECA LP and ASTRAZENECA
3    AB,

4              Plaintiffs,
          vs.                            CIVIL ACTION
5                                        NO. 09-4115 (RMB/AMD)
     BREATH LIMITED,
6
               Defendant.
7    _____
     ASTRAZENECA LP and ASTRAZENECA
8    AB,

9              Plaintiffs,

10        vs.                            CIVIL ACTION
                                         NO. 08-1512 (RMB/AMD)
11   APOTEX, INC. And APOTEX CORP.,

12             Defendant.
     _____
13   ASTRAZENECA LP and ASTRAZENECA
     AB,
14
               Plaintiffs,
15
          vs.                            CIVIL ACTION
16                                       NO. 10-5785 (RMB/AMD)
     SANDOZ, INC.,
17
               Defendant.
18   _____

19                            UNITED STATES COURTHOUSE
                              ONE JOHN F. GERRY PLAZA
20                            4TH AND COOPER STREETS
                              CAMDEN, NEW JERSEY 08101
21                            (856) 968-4986
                              MONDAY, MAY 23, 2011
22
     B E F O R E:            ANN MARIE DONIO,
23                    UNITED STATES MAGISTRATE JUDGE

24
                              LISA MARCUS
25                            CERTIFICATE # 1492
                              OFFICIAL U. S. REPORTER

*United States District Court*
*Camden, New Jersey*

```
 1     A P P E A R A N C E S:

 2

 3        McCARTER & ENGLISH
          BY:  JOHN E. FLAHERTY, ESQUIRE
 4        Four Gateway Center
          100 Mulberry Street
 5        Newark, New Jersey  07102
          (973) 622-4444
 6        ATTORNEYS FOR PLAINTIFF

 7        ROPES & GRAY
          BY:  DENISE L. LORING, ESQUIRE
 8             PABLO D. HENDLER, ESQUIRE
          1211 Avenue of the Americas
 9        New York, New York  10036
          (212) 596-9000
10        ATTORNEYS FOR PLAINTIFF

11        HILL & WALLACK
          BY:  CHRISTINA LYNN SAVERIANO, ESQUIRE
12        202 Carnegie Center
          Princeton, New Jersey  08543
13        (609) 734-6395
          ATTORNEYS FOR DEFENDANT APOTEX
14
          ST. ONGE, STEWARD, JOHNSTON & REENS
15        BY:  DAVID ALDRICH, ESQUIRE
          986 Bedford Street
16        Stamford, Connecticut  06905-5619
          (203) 324-6155
17        ATTORNEYS FOR DEFENDANT APOTEX

18        DUANE MORRIS
          BY:  SHEILA RAFTERY WIGGINS, ESQUIRE
19        744 Broad Street, Suite 1200
          Newark, New Jersey  07102
20        (973) 424-2000
          ATTORNEYS FOR DEFENDANT SANDOZ
21
          BRINKS, HOFER, GILSON & LIONE
22        BY:  ROBERT G. PLUTA, ESQUIRE
          NBC Tower, Suite 3600
23        455 North Cityfront Plaza Drive
          Chicago, IL 60611-5599
24        312.321.4200
          ATTORNEYS FOR DEFENDANT SANDOZ
25
```

1

    A P P E A R A N C E S: (CONTINUED)
2

3       SAIBER, LLC
        BY:  KATHERINE ESCANLAR, ESQUIRE
4       One Gateway Center, 10th Floor
        Newark, New Jersey  07102-5311
5       (973) 622-3333
        ATTORNEYS FOR DEFENDANT BREATH LIMITED
6
        RAKOCZY, MOLINO, MAZZOCHI & SIWIK
7       BY:  HEINZ J. SALMEN, ESQUIRE
        6 West Hubbard Street, Suite 500
8       Chicago, Illinois  60610
        (312) 222-6301
9       ATTORNEYS FOR DEFENDANT BREATH LIMITED

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          DEPUTY CLERK:  All rise.

 2          THE COURT:  Please be seated.

 3      Good afternoon, everyone.  We're here for argument in

 4  connection with a motion for reconsideration filed in case

 5  number 08-1512.  May I have the appearances for the record,

 6  please.

 7          MR. FLAHERTY:  Good afternoon, your Honor.  My name

 8  is John Flaherty from McCarter & English, I'm here for the

 9  plaintiffs AstraZeneca.  With me today is Judy Yun from

10  AstraZeneca, and Denise Loring from Ropes & Gray, Pablo

11  Hendler also from Ropes & Gray.  We have a summer associate

12  from Ropes & Gray with us, Adam Steinmetz.

13          THE COURT:  All right.  Thank you.  Welcome.

14          MS. LORING:  Good afternoon.

15          THE COURT:  Good afternoon.

16      And for defendants, starting with Apotex.

17          MS. SAVERIANO:  Christina Saveriano from Hill &

18  Wallack, your Honor, for defendant Apotex.  Along with me is

19  David Aldrich from St. Onge, Steward, Johnston & Reens.

20          THE COURT:  Thank you.

21          MR. ALDRICH:  Good afternoon, your Honor.

22          THE COURT:  Good afternoon.

23      Defendant Sandoz.

24          MS. WIGGINS:  Good afternoon.  I'm Sheila Wiggins

25  from Duane Morris, and with me is Robert Pluta.
```

1       MR. PLUTA:  Good afternoon, your Honor.

2       THE COURT:  Good afternoon.

3     And for Breath Limited.

4       MS. ESCANLAR:  Good afternoon, your Honor.  I'm

5   Katherine Escanlar, Saiber, LLC, for defendant Breath.  And

6   along with me is our co-counsel Heinz Salmen from Rakoczy,

7   Molino, Mazzochi & Siwik from Chicago.

8       MR. SALMEN:  Good afternoon, your Honor.

9       THE COURT:  Good afternoon.

10    Are we ready to proceed with the argument?

11      MS. LORING:  Yes, your Honor.

12      THE COURT:  Who will be arguing on behalf of

13  AstraZeneca?

14      MS. LORING:  Yes, your Honor, Denise Loring.

15      THE COURT:  All right.  Ms. Loring, I reviewed your

16  submissions and I'll hear your argument now.

17      MS. LORING:  Thank you, your Honor.

18    Your Honor, we respectfully request reconsideration on

19  your Honor's Order on three basic grounds.

20    The first is we respectfully submit that the Court

21  overlooked key factual and legal issues in deciding that

22  priority application to U.S. patents do not touch base with

23  the United States because the U.S. interest is incidental as

24  opposed to substantial.

25    Our second point is that respectfully that the Court

1    overlooked key facts and legal issues in finding that

2    AstraZeneca had not met its burden of proof in proving injury

3    under Swedish trade secret law.

4           And then the third point is that in applying the

5    balancing test of the restatement, which weighs the interest

6    of the United States versus the interest of Sweden, the Court

7    overlooked fact and law regarding the very strong United

8    States interest in protecting attorney advice and did not give

9    adequate credence to the Swedish law in protecting trade

10   secrets.

11          And so if your Honor would like to hear, I'm prepared

12   to go through all three of those points.

13            THE COURT:  All right.  I'll hear your argument.

14            MS. LORING:  With respect to the first point, whether

15   or not patent applications, priority applications to U.S.

16   applications touch base with the United States, we submit that

17   the United States does indeed have a predominant interest in

18   those applications for the following reasons.

19          First of all, it is a very fact specific inquiry.  And,

20   in this case, as we pointed out in our papers, the work that

21   led to the invention of the '834 patent was as part of the

22   development of AstraZeneca's product Budesonide in the United

23   States.  The invention came about because --

24            THE COURT:  I'm going to cough all through these

25   proceedings.  Keep going.

1          MS. LORING:  Would you like some water, your Honor?

2          THE COURT:  No, thank you.

3          MS. LORING:  The invention came about because of the

4    U.S. FDA requirement that the Budesonide in the United States

5    be sterile.  Budesonide had been sold outside the United

6    States in nonsterile form.  And in making that invention,

7    researchers in Sweden and in the United States came up with

8    methods and sterile products.  And Cheryl L'arrivee-Elkin, who

9    is a U.S. citizen, lives in Massachusetts, is an inventor on

10   the '834 patent and was intimately involved in developing the

11   product and in its reduction to practice, reducing the

12   practice of the '834 invention and also provided, if you look

13   at the withheld log, provided input into the preparation of

14   the application.  There are many documents on the withheld log

15   that relate to Ms. Elkins giving input to the European patent

16   agents who were preparing the applications.

17          The other point, your Honor, is there is a distinction

18   in the case law or the case law that your Honor cited and that

19   Apotex cited often talks about prosecution of foreign

20   applications being strictly governed by foreign law.  However,

21   there is a difference between prosecution of an application

22   once it is filed and preparation of that application.  When

23   you prepare a priority application, especially when you know,

24   as AstraZeneca did in this case, that they would be filing

25   that application in the United States, at the time the

1   application is prepared, you must think about U.S. law and

2   meeting the U.S. requirements for valid patents.  In fact,

3   when you designate the United States in a PCT application,

4   that designation is made at the time that the PCT application

5   is filed.  And so Apotex's argument, which your Honor adopted,

6   that the filing of a U.S. application occurred later is true

7   chronologically, but when the application was prepared, the

8   lawyers and the inventors and other personnel who were seeking

9   legal advice very much had in mind the U.S. -- the fact that

10  this would be filed in the United States.

11        And that's distinguishable from the discussions in

12  cases like *VLT Corp.* and *Golden Trade* where they talk about

13  prosecution in foreign countries.  Because at that point in

14  time, of course, the focus is then on the foreign law because

15  you're arguing with the patent offices in the foreign

16  countries about patentability under foreign law.  Very

17  different circumstance from actually preparing the patent

18  application.

19        Your Honor, we submit that our situation is very close

20  to the situation in *Odone* because again in that case the U.S.

21  interest as articulated by the court, was the involvement of

22  U.S. citizens.  In that case it was whether or not a U.S.

23  citizen would be named as an inventor on a UK application.  In

24  this case, it's the fact that a U.S. citizen was involved in

25  the making of the invention and the preparation of the patent

1    applications that led -- that were the priority applications

2    for the U.S. application.

3         The other thing about the *Odone* case, your Honor, that

4    we would respectfully submit the Court overlooked, is that the

5    issues of comity there cut against applying foreign law and in

6    favor of applying U.S. law because there was a conflict

7    between the privilege law in the United States and the

8    privilege law of the UK.  In the UK, British patent agents

9    were entitled to privilege.  The way the *Odone* court read the

10   law, those British patent agents would not be protected in the

11   United States.  And so the court felt that, in balancing those

12   interests, the U.S. interest in free discovery dominated the

13   British interest in patent agent privilege.

14        In our case the reverse is true, your Honor.  And in

15   fact the U.S. interest in protecting privilege is aligned with

16   the Swedish interest in protecting its trade secrets.  In

17   fact, several courts have recognized that alignment even when

18   applying foreign law.  In the *Astra* case, the court found, in

19   considering the Korean documents at issue there, which the

20   court did under Korean law, the court found that the U.S.

21   interest in protecting privileged communications outweighed

22   the U.S. interest in free discovery in that case.

23        Also, in the *Golden Trade* case that Apotex cited and I

24   believe your Honor cited, the court found that the interest,

25   applying, again, foreign law, the interest in protecting

1    patent agent privilege was consistent with the U.S. interest

2    of protecting attorney advice.  Same thing with the *VLT Corp.*

3    Decision.  And so the *Odone* court is -- the *Odone* decision is

4    directly on point with respect to the situation that we have

5    before your Honor.

6         Similarly, the *Astra* decision is supportive of not

7    compelling production.  And, your Honor, we would like to

8    raise the letter that we sent to you last week in which we

9    were able to locate two of the documents that had been at

10    issue in that case.  And as we showed from the privilege log

11    and the declaration of an *Astra* individual, those documents

12    were indeed relating to a Swedish PCT application and foreign

13    counterparts to a U.S. patent and did not relate directly to

14    the U.S. patent and did not involve U.S. lawyers, and the

15    judge in that case found that they touched base with the

16    United States.  And we believe, your Honor, that that supports

17    our reading of the case and bring it to your Honor's attention

18    to clarify the situation.

19         THE COURT:  You would agree that the Court's not

20    bound by *Odone* or the *Astra* case?

21         MS. LORING:  Absolutely, your Honor.  But in this

22    situation where we were unable to find any case in this

23    district that directly addresses this issue, we believe, and

24    in fact courts in New Jersey have supported looking to the

25    decisions of other districts.  I'll raise for your Honor

```
 1   United States vs. Sensient Colors, at 649 F. Supp. 2d 309, in

 2   which -- excuse me, your Honor.  Judge Rodriguez in this court

 3   acknowledged that it would be appropriate to and not improper

 4   for the magistrate judge in this case to have relied on

 5   persuasive authority from other districts when there was

 6   nothing directly on point in this district.

 7            THE COURT:  But you would agree the Court's not bound

 8   by either of those decisions.

 9            MS. LORING:  I beg your pardon.

10            THE COURT:  You would agree the Court is not bound by

11   either of those decisions.

12            MS. LORING:  No, your Honor, the Court is not bound.

13   Nor is the Court bound by any of six decisions that Apotex

14   pointed to because none of those is in New Jersey either.

15            THE COURT:  So how would you address Apotex's

16   argument that you can't meet the standard for reconsideration

17   by arguing that the Court erred in applying law that the

18   Court's not bound to apply?  I think that's one of the

19   arguments of Apotex.

20            MS. LORING:  Well, your Honor, our argument is more

21   that the Court overlooked the factual and legal situations in

22   those cases and distinguished those cases in ways, based on

23   Apotex's submissions, in ways that we submit were erroneous.

24   And, therefore, we believe it's a proper basis for

25   reconsideration to point out to your Honor the new information
```

1    in the case of Astra, and also the fact that your Honor's

2    distinguishing of Odone is actually -- we are actually aligned

3    with Odone rather than different from it as your Honor held in

4    your decision.

5            THE COURT:  Okay.  You can continue.

6            MS. LORING:  In terms of the six cases that Apotex

7    cites for the proposition that this happens all the time, that

8    district courts or that courts do not consider a foreign

9    priority application as touching base with the United States,

10   we think again that your Honor overlooked a number of points

11   with respect to those cases.

12           First of all, none of those cases considered whether or

13   not -- I'm sorry.  None of those cases disclosed whether or

14   not any of the withheld documents at issue were in fact draft

15   foreign priority applications or PCT priority applications.

16   And, in fact, when you look at the *Golden Trade* case, which

17   Apotex cited to your Honor, by Apotex's own admission the

18   priority application in that case was an Italian application

19   and the court dealt with documents that were withheld under

20   Norweigian, German and Israeli law, there was no discussion

21   whatsoever of Italian law or Italian priority applications.

22   And so that case clearly does not relate to foreign priority

23   applications, and it points out the problem with relying on

24   these cases that did not conduct an analysis of whether or not

25   foreign priority applications or PCT applications touched base

1   with the United States.  Indeed, the *SKB v. Apotex* case

2   acknowledged that some courts provide or perform a touching

3   base analysis but that court itself declined to do so.  And

4   *Eisai v. Dr. Reddy's* also did not conduct a touching base

5   analysis.

6           And so, your Honor, we submit that cases like the *Astra*

7   case and the *Odone* case, because they specifically addressed

8   the question of privilege in the context of foreign priority

9   applications and found that they touched base with the United

10  States are far more persuasive than the six cases that Apotex

11  cited.

12          Your Honor, I'm ready to move on to Swedish trade

13  secret law unless you have further questions on the touching

14  base.

15          THE COURT:  I only have the specific question are you

16  no longer asserting that a PCT application is a U.S.

17  application?

18          MS. LORING:  Well, your Honor, we believe it is.

19          THE COURT:  Do you have any authority for that

20  statement?

21          MS. LORING:  Your Honor, I have no case law that

22  holds that it is.  But I think -- and I guess the most

23  persuasive argument that I can make is the way that the PCT

24  application is described on the face of the '834 patent as

25  they relate to a U.S. application.  However, I think that --

```
 1            THE COURT:  How about the treaty itself?  Is there

 2    any language that suggests that making an application in a

 3    receiving office pursuant to the PCT makes the application a

 4    U.S. application?

 5            MS. LORING:  I think, your Honor, the more important

 6    point -- and I do not, your Honor.

 7            THE COURT:  Okay.

 8            MS. LORING:  I think the more important point is not

 9    the categorizing of PCT as a U.S. application or not a U.S.

10    application, I think the more important point is the timing

11    issue of the relevance of a PCT application to the United

12    States when the U.S. is a designated company.  And that

13    relevance is clear when you consider the fact that at the time

14    that the application was filed, and I mentioned this a moment

15    ago, at the time the application is filed the U.S. is

16    designated.  And so clearly when the application is filed, not

17    at some later date when the application is activated in the

18    U.S., but at the time of filing there's a clear indication

19    that U.S. law will need to be complied with because the U.S.

20    is designated.  And James Peel in his declaration stated that

21    at the time he prepared to PCT application and the Swedish

22    foreign priority application, he knew these applications would

23    be filed in the United States.  And under the specific facts

24    in our case, the invention being at least partially made in

25    this country along with Swedish inventors, and the fact of the
```

1  U.S. citizen communicating back and forth with Mr. Peel and

2  with her fellow inventors very much involved the United States

3  and made the United States the predominant interest.  This was

4  a drug that was being developed for the U.S. market.  The

5  other countries where Budesonide was on the market did not

6  require a sterile product.  The invention sprung out of U.S.

7  requirement for a sterile product.

8          THE COURT:  Well, you have in your brief a statement,

9  "there can be no dispute that under Section 363, AZ's PCT

10  application is a U.S. application."  That's quoting Page 4 of

11  the motion.

12          MS. LORING:  Yes, your Honor.  And we --

13          THE COURT:  And Apotex, of course, says there's a

14  dispute because Apotex says in their opposition "that PCT

15  application is most certainly not a U.S. application."  Page 9

16  of the opposition brief.

17          So my specific question is, putting aside any effect of

18  the timing, is it Astrazeneca's position that the filing of

19  the PCT application and the designation, if that in fact is

20  what is designated on the PCT application, the United States,

21  constitutes a U.S. application as opposed to an international

22  application filed under the PCT?

23          MS. LORING:  Well, it certainly is an international

24  application filed under the PCT, your Honor.  But the way we

25  read 35, U.S.C., Section 363, which says an international

1   application designating the United States shall have the

2   effect from its international filing date under Article 11 of

3   the PCT of a national application for patent regularly filed

4   in the United States Patent and Trademark Office.  So what

5   Section 363 is saying when you file, as of the filing date of

6   the PCT application, it has the effect of a U.S. application,

7   and that's what we mean when we say it is a U.S. application.

8   And that is borne out by the fact that the '834 patent on its

9   face identifies the PCT as a related U.S. application.  It

10  doesn't say foreign priority.  If you look, if I can find a

11  copy of the, and I will, of the '834 patent -- bear with me

12  one moment, your Honor.  There are two categories, foreign

13  application priority data, which is number 30 on the face of

14  the patent, and it identifies there the Swedish application,

15  and then number 63 on the face of the patent just above that

16  there's a heading related to U.S. application data and it

17  cites the PCT application.  And so the PCT application is

18  distinguished from the Swedish application on the face of the

19  '834 patent as a related U.S. application as compared to a

20  foreign application, i.e., the Swedish application.  And that

21  is the basis for our statement, your Honor.

22          THE COURT:  All right.  Do you have any dispute with

23  Astrazeneca's argument that the PCT application was actually

24  filed, was not filed in the United States, the receiving

25  office was Sweden?

 1          MS. LORING:  It was filed in the receiving office for

 2  Sweden.  And the way you tell that, your Honor, is the PCT

 3  number, it's PCT/SE, which indicates the receiving office.

 4          THE COURT:  So you don't dispute that?

 5          MS. LORING:  No dispute.

 6          THE COURT:  Okay.  Anything further?  Any further

 7  argument you have on the motion?  Go ahead.  Continue.

 8          MS. LORING:  On the Swedish?

 9          THE COURT:  On any point you wish the Court to

10  consider.

11          MS. LORING:  Thank you, your Honor.

12      In terms of the application of the Swedish trade secret

13  law, your Honor found that the documents at issue did not

14  touch base with the United States so then turned to

15  application of Swedish law, and your Honor then applied the

16  Swedish law and analyzed the requirements for Swedish law.

17  But at the same time your Honor applied a burden of proof

18  pursuant to Rule 26(c) of showing serious harm in order to

19  prove that these documents are trade secrets of AstraZeneca.

20      And, your Honor, we respectfully submit that that was

21  the wrong standard to apply because it basically substituted

22  the burden of proof applied in Swedish courts for a higher

23  standard applied under Rule 26(c).  If your Honor were to

24  conduct an analysis under Swedish law, then the Swedish burden

25  ought to apply.  And there is no dispute from Apotex that that

1   standard is that typically these types of documents would

2   cause harm.  And so we submit that the standard was not the

3   correct standard.

4        But moving on from there, even assuming that the higher

5   standard applied, we respectfully submit that the Court

6   overlooked certain evidence and facts that indicate that

7   AstraZeneca did indeed meet its burden.  The Order states that

8   your Honor found that we did not meet the burden, but the

9   Court did not conduct any analysis of the factual submissions

10  that AstraZeneca made and legal submissions, including the

11  declaration of Dr. Sande, the Swedish advocate, who pointed

12  out that the subject matter of these communications, which is

13  legal advice, attorney advice and analysis, is considered

14  extraordinarily confidential and in fact more important than

15  technical trade secret information, and for that reason a

16  protective order would not be sufficient to protect

17  AstraZeneca's injuries.

18       In fact, as Apotex has argued to your Honor in the

19  context of AstraZeneca's motion to compel, attorney advice and

20  attorney/client privilege is sacred and compellingly

21  important.  This was recognized by other courts, your Honor,

22  as I pointed out before, the Astra court, the *Golden Trade*

23  court, and the *VLT Corp.* court.

24       In addition, although your Honor recited the need for

25  Apotex to show a compelling reason to require production under

1    Swedish law for these documents, Apotex did not provide a

2    compelling reason and your Honor did not identify any

3    compelling reason.  And so we submit that we did in fact show

4    that these documents constitute trade secrets, that we would

5    be injured by their disclosure because of the compelling

6    interests in frank discourse between a client and his or her

7    lawyer, which would result in significant serious harm if

8    those confidences were breached and the documents were

9    compelled to be disclosed.

10             THE COURT:  Thank you.  Anything further?

11             MS. LORING:  Yes.

12             THE COURT:  Okay.

13             MS. LORING:  The balancing under the restatement,

14   your Honor.  We respectfully submit that the Court overlooked

15   the compelling interest of the United States in protecting

16   attorney/client privilege.  And again, I refer to Page 102 of

17   the *Astra* decision where the court there in applying Korean

18   law found that the U.S. interest in protecting privilege

19   outweighed the interest of free discovery.

20         Also, the court downplayed the Swedish interest in

21   protecting trade secrets by referring to the fact that the

22   Swedish trade secret law does not absolutely ban production of

23   trade secrets.  But this overlooked the fact that, as

24   Dr. Sande said, the court has never compelled production of

25   trade secret information, as far as he was aware, for

1    compelling reason.  And so although there is no absolute ban

2    under Swedish law, the Swedish courts clearly take that --

3    have a very strong interest because they have never permitted

4    disclosure of trade secrets.

5         And, your Honor, we submit you have to look at the

6    Swedish law in total.  Apotex referred in its reply brief to a

7    Swedish policy of not protecting attorney/client privilege

8    with in-house lawyers.  We submit that's the wrong analysis,

9    because although there isn't a specific privilege,

10   attorney/client privilege for in-house lawyers, there is trade

11   secret protection.  And you cannot, as the *Astra* court said,

12   look at the privilege law in a vacuum, you have to look at

13   whether in Sweden these documents would see the light of day.

14   And they wouldn't.  They wouldn't in Sweden and they wouldn't

15   in the United States.  There's no real dispute that if these

16   documents touched base with the U.S., if they involved a U.S.

17   application, they'd be protected.

18        So we submit you need to look at the nature of the

19   communication, the fact that regardless of whether or not the

20   documents touch base with the United States, they are and

21   relate to attorney advice and that's a compelling -- there is

22   a compelling U.S. interest in protecting that.

23            THE COURT:  Anything further?

24            MS. LORING:  Nothing further, your Honor.

25            THE COURT:  All right.  Who will do the argument for

1    Apotex?

2          MR. ALDRICH:  David Aldrich, your Honor.

3          THE COURT:  Mr. Aldrich, I'll hear your argument now.

4          MR. ALDRICH:  Your Honor, first, if it's okay, I'd

5    like to first quickly address the last minute filing of

6    AstraZeneca.

7          THE COURT:  Yes.  Your position with respect to the

8    filing?

9          MR. ALDRICH:  I object to it for various reasons.

10   The first reason is that we believe it's improper for them to

11   be making this submission this late.  Not only is all the

12   briefing -- was all the briefing complete, but this is a

13   motion for reconsideration, and all the briefing on the motion

14   for reconsideration was complete.  And these are documents

15   that are within their own custody.  And it's, you know, the

16   rule -- it's a motion for reconsideration and the rules

17   explicitly don't allow reply briefs without court approval.

18   So they've submitted this letter, it's an unauthorized reply

19   brief and it's very late in the game to be doing it after

20   motion for consideration briefing is complete submitting their

21   own documents a couple of days before this hearing.

22          It's also improper because, again, this was a motion

23   for reconsideration, so it's not even relevant because, as

24   your Honor already addressed a few minutes ago, these

25   documents go to the supposedly correct interpretation of one

1    case from another district, which is not a proper basis for

2    filing a motion for reconsideration.  The Court is not bound

3    by that law regardless of what it says, so it's not an -- the

4    Court did not commit an error of law whether it followed that

5    case or not, it's not proper for a motion for reconsideration.

6         Third, even if we look at it substantively, it doesn't

7    show anything.  What they've submitted is a couple of -- they

8    submitted a couple entries on a privilege log, which are very

9    vague and it says the documents go towards -- those documents

10   relate to, I forget the exact language, but I think it says

11   PCT for foreign counterparts or something similar to that.

12   That's very vague and none of us have any idea what those

13   documents actually say.  I would certainly want to see those

14   documents before anybody tried to rely on them, to use them as

15   an indication that this case from New York means something

16   different than what it says on its face.  You know, I take --

17   we take issue, obviously, with some of the representations

18   that AstraZeneca has made about what PCT's are and their

19   relationship to U.S. filings.  So I would certainly want to

20   see specifics if those documents were even going to be

21   considered.

22        And, you know, finally, at the end of the day, even if

23   those documents did conflict with what that case decision says

24   and those documents do say or that -- I mean, AstraZeneca

25   hasn't actually said this, I don't think, but they're implying

1   that the documents only relate to PCT applications.  And, if

2   that's the case, that still doesn't prove anything.  All that

3   does is, you know, with all due respect to the, I think it was

4   the Southern District of New York, all that does is show that

5   the Southern District of New York misread those two documents

6   because that's not what the Southern District of New York's

7   decision said.  The Southern District of New York's decision,

8   when it said certain documents could be maintained on the

9   basis of attorney/client privilege, was that those documents

10   either were with U.S. counsel or they related to a U.S.

11   application.

12        So, at the end of the day, even if the submission was

13   proper and, you know, we did look at the documents, we did

14   consider them, and they do say what AstraZeneca suggests,

15   doesn't prove anything at the end of the day anyway.  You

16   know, that case law says what it says on its face.

17        Unless your Honor would like to discuss that submission

18   anymore, I'll move on to the substantive topics.

19        THE COURT:  You can move on.

20        MR. ALDRICH:  Okay.  Thank you, your Honor.

21        The first issue that Mrs. Loring was just addressing

22   were the PCT filings.  And Mrs. Loring made two arguments.

23   The first was that she mentioned it was fact specific and was

24   analyzing about the development of the product that gave rise

25   to this, to that patent application.

1      This case is not about AstraZeneca's product, it's

2  about their patents or their patent, U.S. patent and Apotex's

3  product that allegedly infringes that patent.  So where

4  research relating to their product may have taken place is not

5  relevant to our analysis of these documents.  These documents

6  supposedly relate to filings and prosecution of their patents.

7  That PCT application -- and, incidentally, we don't seem to be

8  arguing -- I don't want it to get lost that, you know, we

9  don't seem to be arguing anymore about the communications

10  about the foreign Swedish document, I believe they've

11  capitulated on that at this point.

12      MS. LORING:  No, your Honor.

13      MR. ALDRICH:  Okay.  Okay.  I don't know what their

14  arguments are then for the foreign application.

15      But for the PCT application itself, we're talking about

16  filing and, quote, unquote, prosecution of the PCT

17  applications, to the extent there is any, there isn't much of

18  one.  But that, you know, that application was filed in

19  Sweden.  Swedish patent office was designated as the

20  international search authority.  You know, when you file a PCT

21  application, there's a prior art search is done.  That was

22  done by the Swedish patent office.  I don't know -- I don't

23  know if any of the parties submitted, we didn't get into this

24  much detail, I don't know if either party submitted a PCT

25  application, but I do have a copy of it if your Honor wants to

 1    look at it.  And you can see all this from the application, it

 2    was filed in Swedish, the research authority was the Swedish

 3    patent office, everything that took place with respect to that

 4    application took place in Sweden.

 5            And Mrs. Loring also made a distinction between

 6    preparation and the prosecution of that application.  And the

 7    preparation -- I'm sorry if I'm not paraphrasing for the Court

 8    completely accurately, but my understanding of the argument is

 9    that the preparation -- when that preparation was done, it was

10    taken into account all the different countries and it

11    designated the U.S.

12            The PCT application is an international filing.  It

13    designates many countries.  It's 120 something.  It designates

14    all the countries basically.  And, you know, if we're going

15    to -- if we're going to say, well, when somebody was thinking

16    about preparing the Swedish priority application or this PCT

17    application that was filed in Sweden, that they were also

18    thinking of the U.S., they also then were designated and

19    thinking of 120 other some odd countries.  And whose law do we

20    apply then at that point?  You know, that's the fallacy of

21    this argument, that a PCT is a U.S. application.  It's not,

22    it's its own independent.  If you're going to call it a U.S.

23    application, you need to also call it a Japanese application,

24    a Swedish application, a German application.

25            THE COURT:  Tell me why, why you make that argument?

1    Why, if the U.S. is designated on the PCT application, are you

2    saying other countries are also designated?

3         MR. ALDRICH:  Yes, I think it's like 122 other

4    countries.

5         THE COURT:  On that same PCT application.

6         MR. ALDRICH:  On the same PCT application.  It's

7    standard procedure, you designate basically all the countries

8    that you can.

9         THE COURT:  That's all under the PCT?

10        MR. ALDRICH:  That's all under the PCT.  Under the

11   PCT laws, correct.  The PCT -- maybe this bears a little more

12   explanation.

13        The PCT is a completely separate filing that is filed

14   in a receiving office, in this case the Swedish receiving

15   office.  Now, if you want to then enter national stage in a

16   particular country, the U.S., Japan, wherever, if you wanted

17   to start prosecution of an application in the U.S., it is

18   completely a new filing.  There are actually two different

19   ways you can do it, but one is called a bypass continuation

20   where you file a continuation application off of the PCT, the

21   other is called entering national stage from the PCT.  But,

22   for all intents and purposes -- there's certain strategic

23   reasons why you might prefer to do one over the other.  But,

24   for all intents and purposes, they're very similar, they're

25   both separate filings.  When you're entering national stage

1  off a PCT, it's a new filing where you, you know, you submit a

2  copy of the PCT application, a new PCT form, new paperwork,

3  you file a declaration, new power of attorney, which is

4  significant, you need a new power of attorney because in order

5  to begin prosecution in the U.S., you need a U.S. practitioner

6  unless the inventors are going to prosecute themselves.

7          THE COURT:  We are not at that stage in this case, we

8  are not talking about them entering the national stage.  The

9  PCT application at issue was the PCT international application

10 filed with the Swedish patent office.

11         MR. ALDRICH:  Right.

12         THE COURT:  Not the second prong, which you just

13 indicated.

14         MR. ALDRICH:  Right.

15         THE COURT:  You said later on it can move.

16         MR. ALDRICH:  Later on, which is what they did later

17 on.

18         THE COURT:  But those weren't the documents that are

19 at issue in this case now.

20         MR. ALDRICH:  That's correct, that's not.  And

21 there's many privileged documents on the privilege log related

22 to the '834 patent and their other patents, we are not

23 pursuing those.  We have never pursued -- as soon as we

24 understood any documents, I think there's well over 1,000

25 documents on the privilege log, as soon as we understood any

1    documents related to U.S. prosecution, we have not pursued

2    them.  We've only pursued the documents that relate to these

3    completely separate filings for the PCT and the foreign

4    application.

5         And one other thing I should point out, again I don't

6    want to get too complicated here with patent filings, but the

7    one thing they keep pointing to was on the cover page of the

8    patent, it says related U.S. applications and there's a

9    different section that says priority applications, the reason

10   it has that is because there's a big difference between what

11   we call the earliest effective U.S. filing date, basically

12   there's a difference between a filing date and a priority

13   date.  It makes a difference in what can be -- how far back

14   you can go in terms of what can be asserted as prior art.

15   Okay?  So a PCT, and that's what this Section 363 of the

16   patent statute is about, a PCT counts as a U.S. filing date,

17   and that's why or I presume that's why on the face of the

18   patents it's listed as a related U.S. application not as a

19   priority.

20        THE COURT:  Just so this record is clear, both you

21   and Ms. Loring began by referencing the face page of the

22   patent and it's in numerous submissions, can we just put a

23   Docket Number on there, please?

24        MS. LORING:  Yes, your Honor.  There's a copy of the

25   U.S. application in one of the declarations that we submitted,

1   a Burling declaration, and the Docket Number is 219-1.

2          THE COURT:  Page 1 of documented 219?

3          MS. LORING:  It's page 61 of 111 pages filed

4   August 30, 2010.

5          THE COURT:  Right.  So that the record is clear,

6   that's the document you're also referring to, Mr. Aldrich?

7          MR. ALDRICH:  Yes, your Honor.

8          THE COURT:  All right.  So that the record is clear.

9      You can continue.

10          MR. ALDRICH:  So that's essentially the difference

11  there.  The benefit of a PCT is that you actually get to use

12  that as a U.S. filing date and not just as a prior art date,

13  which is a little less valuable.

14      You know, I don't know how much to get into the case

15  law that Ms. Loring was discussing, we've discussed this in

16  the briefing before.  Odone, you know, it was an isolated case

17  that had -- you know, it made a comment with no analysis.

18  And, at the end of the day, the predominant interest that the

19  court found in that case was the U.S. discovery rules and

20  producing -- making sure that the documents were produced.

21  This one case, and it was unusual, at the end of the day the

22  court did -- this one case, it was an unusual case, and at the

23  end of the day the U.S. interest in producing the documents

24  was the predominant interest.  This is all in prior briefing

25  but Ms. Loring again addressed, you know, the portion of the

1   *Astra* decision and it related to Korean documents.

2          THE COURT:  Mr. Aldrich, I'm just going to ask you to

3   keep your voice up, if you could.  The microphone is right

4   there.

5          MR. ALDRICH:  Sure.  I'm sorry.

6      Ms. Loring addressed the portion of the *Astra* decision

7   that related to not producing certain Korean documents.  You

8   have to look at the country's laws as a whole.  We've already

9   dealt with this in the briefing and the Court has already

10  considered this, I think, but just as a refresher, the Korean

11  instance was completely different.  The Korean documents,

12  there was no privilege law.  You couldn't invoke the privilege

13  law in Korean because there wasn't one because they had

14  extremely tight rules relating to producing documents.  That's

15  why you, quote, unquote, couldn't look at it in a vacuum

16  because there was no Korean law -- no Korean privilege law to

17  apply.  They don't need one because they're not producing

18  documents, period.  Sweden is different.  Sweden has privilege

19  law, and specifically it protects in-house and they have a

20  specific -- I mean -- sorry.  It protects communications with

21  outside counsel and they have a specific policy of not

22  protecting the communications with in-house counsel because

23  in-house counsel can be subject to undue influence.  Now, the

24  U.S. may have a different philosophy on that, but that's how

25  it works in Sweden and that's what their expectations are

1   there and that's what their policy is because they want to

2   protect against undue influence to in-house counsel.

3        As far as our cases, we said this in our brief, that's

4   correct that the cases don't explicitly -- the five or

5   six cases we cited, they don't explicitly say these

6   prosecution documents that we're looking at in a foreign

7   country are the priority documents.  I mean, each of those

8   cases -- there was a U.S. case, it had priority to an

9   application in a particular country, the communications at

10   issue related to patent prosecution documents in that

11   particular country, I think with one exception that

12   Mrs. Loring pointed out, but all the other cases that was the

13   case.  So for AstraZeneca to say we can't make assumptions on

14   the basis that, you know, those communications are related to

15   patent prosecution in that same particular foreign country

16   could actually relate to patent prosecution of some other

17   matter that was somehow related to the case, I think is a

18   little -- well, it's a little silly, frankly, to say those

19   cases suggest anything else.

20        Unless your Honor has any more questions about the PCT

21   filings and case law, I'll move on to the Swedish trade secret

22   argument.

23        THE COURT:  You can move on with your argument.

24        MR. ALDRICH:  Okay.  Thank you, your Honor.

25        I guess the first one is that the Court held

1   AstraZeneca to the wrong standard of showing harm.  And that's

2   not how we read the Opinion.  I'm not going to presume to tell

3   the Court what it meant in that Opinion.  But it seems to us

4   that AstraZeneca is continuing to miss the fact that they need

5   to ask for a motion for protective order if they want to

6   withhold documents that aren't covered by the attorney/client

7   privilege.  We mentioned this previously.  Your Honor

8   mentioned this in the Order.

9        It's their obligation to move for a protective order

10  under the federal rules and meet the standard for a showing of

11  good cause.  Whether they're relying on some foreign law or

12  something else, they need to meet the standard of good cause.

13  And it doesn't matter -- I don't -- you know, we don't care

14  what we call that harm, whether it's a specific harm in this

15  case or harm that would typically occur in these types of

16  cases, the point is they didn't make the showing.  They need

17  to make a clear showing of what that harm would be, what that

18  harm is or would be, and they didn't articulate that.  They

19  didn't clearly articulate that.  They still didn't do that

20  today.  They haven't clearly identified -- they haven't made a

21  clear showing about what the supposed harm is, they just say

22  it would be.

23       And I guess then the second half of the Swedish

24  trade -- the application of Swedish trade secret law that

25  AstraZeneca has addressed is this, I guess it was the fifth

1   or -- fourth or fifth restatement factor that the Court

2   allegedly analyzed improperly.  You know, and there's -- you

3   know, there's two parts of this.  AstraZeneca has said it

4   conflicts with U.S. attorney/client privilege law.  As your

5   Honor has already explained in your Honor's Order,

6   attorney/client privilege law is not relevant.  The

7   attorney/client privilege law, that was the first half of

8   this, we analyzed that.  The attorney/client privilege law

9   doesn't apply, Swedish privilege law does.  And when you look

10  at Swedish privilege law, I was just talking about it a minute

11  ago, Swedish privilege -- in Sweden they have a specific

12  policy of not shielding communications with in-house counsel.

13  It's Sweden's interest that governs here when we're looking at

14  attorney/client privilege, and Sweden's law conflicts with

15  what AstraZeneca is trying to do.

16          THE COURT:  Well, what about Ms. Loring's argument

17  that they don't have to have attorney/client privilege because

18  everything is protected under the trade secret?

19          MR. ALDRICH:  Well, there's a couple things.  The

20  first is that, as this Court already said in its Order, as

21  with all of these issues, the Court already addressed this in

22  its Order and explained that it's not that Sweden doesn't have

23  an interest but it's outweighed by the U.S.'s interests in

24  applying liberal discovery rules, which, you know, is the

25  predominant interest that the *Odone* court found.  This is a

1   U.S. litigation, filed in U.S. court, it's governed by U.S.

2   rules, U.S. has a predominant interest in applying its

3   discovery rules liberally.

4        The second thing is that even Sweden's interest is --

5   to argue that Sweden has a strong interest in this is -- that

6   I think is a tough argument for AstraZeneca for two reasons.

7   First of all, this is not even -- Sweden's statute is not even

8   a blocking statute.  Under Sweden law, they're allowed to

9   produce -- you know, documents can be produced and the court

10  can also order the documents produced in certain

11  circumstances, and are certainly free to do so, they're not

12  being -- they're not going to run into a conflict with this

13  court ordering them to produce them but Swedish law is telling

14  them they can.  Even in those cases where you have blocking

15  statutes, there's an analysis to be performed.  But this is

16  not that, they're certainly free to produce them.

17       And it's also -- I think it's a somewhat dubious

18  argument to say that, you know, that Sweden has a very strong

19  interest in protecting these type of communications under

20  their trade secret law, when they specifically have a policy

21  of excluding these types of communications from their

22  attorney/client privilege law.  I just find that to be an odd

23  argument that they have a privilege law and they apply it to

24  outside counsel, they have a policy of not applying it to

25  in-house counsel, yet -- but under the trade secret law, they

1    allegedly have this strong interest in protecting in-house

2    communications under the trade secret law.  I think that

3    argument's a little disingenuous.

4            THE COURT:  Thank you.  Anything further?

5            MR. ALDRICH:  Thank you, your Honor that's it.

6            THE COURT:  Any rebuttal argument?

7            MS. LORING:  Yes, your Honor.

8        First of all, with respect to the letter we submitted

9    last week --

10           THE COURT:  You would agree there was no leave of

11   Court that permitted such a filing right?

12           MS. LORING:  I'm sorry, your Honor?

13           THE COURT:  No leave of Court was granted to permit

14   such a filing, you would agree with that, right?

15           MS. LORING:  That the Court did not --

16           THE COURT:  Let me try it again.  No leave of Court

17   was granted to permit that filing, you would agree with that?

18           MS. LORING:  That is correct, your Honor.  We filed

19   it as a letter because it was new evidence that we thought

20   might be useful to the Court.

21           THE COURT:  When you say new evidence --

22           MS. LORING:  New evidence because we didn't have

23   those documents until after receiving Apotex's opposition to

24   our motion for reconsideration.  We looked for the documents

25   when we received your Honor's Order.  Before that, we

1   believed, and still believe, that the *Astra* case on its

2   face -- and we've set out our analysis on Page 8 of our motion

3   for reconsideration, I won't go through it again, your Honor.

4   We believe that on its face Judge Jones said exactly what we

5   believe was the case, that there were documents in the *Astra*

6   submission that were communications between *Astra* employees

7   and in-house counsel that were properly withheld because --

8   were properly found to touch base with the United States

9   because they related to U.S. priority applications not U.S.

10  applications and not U.S. litigation, that's the way we read

11  that case and we expected your Honor would read it the same

12  way.  When your Honor did not, we said let's see if we can

13  find these documents.  We were unable to find them.  This was

14  a situation where the counsel for *Astra* had moved firms and

15  the documents, I gather, were somehow lost in the shuffle and

16  we could not find them.  Then when we received Apotex's

17  response to our motion for reconsideration, we went back and

18  said please try to find these documents, and they found them

19  and we provided them to your Honor.

20          THE COURT:  You provided privilege logs.

21          MS. LORING:  By the way, your Honor, we did offer

22  them for *in camera* inspection and we offer them now for

23  *in camera* inspection.  I take issue with Mr. Aldrich's comment

24  that we implied that they did not relate to the U.S.

25  application.  I believe we stated quite clearly that they did

1  not relate to the U.S. application.  You can tell that by

2  looking at the dates on the privilege log, which precede the

3  filing of the PCT priority application and the declaration of

4  the *Astra* employee or former *Astra* employee describing those

5  documents.  Mr. Aldrich may not look at them because they're

6  privileged but your Honor may if you are -- if you have a mind

7  to do that.

8        THE COURT:  I'm going to review the objections by

9  Apotex and also the arguments and if I determine that it's

10 necessary for me to review, we'll advise counsel.  But at this

11 time I'm not prepared to have you hand them up, I'm not

12 prepared to accept the late filing or the filing by letter

13 without leave of Court to include documents in a related

14 matter, not a related matter, in a separate litigation to

15 inform the Court of what another judge said or decided in

16 another opinion.  Basically you want me to look at evidence

17 from another case.

18       MS. LORING:  Well, your Honor --

19       THE COURT:  I mean, you would agree it's not relevant

20 to this case.

21       MS. LORING:  Well, it is relevant to this case, your

22 Honor, I submit, because it supports our reading of that

23 decision.

24       THE COURT:  Well, you have the ability to obtain the

25 document because it happened to be the same client, but you

1    don't -- you're not submitting all the *in camera* documents

2    that were reviewed by the other courts in all the cases cited.

3    You have to agree it's evidence from another case or

4    submission in another case.  I can't even say it was evidence,

5    it's a submission in another case.

6            MS. LORING:  It's a submission in this case.

7            THE COURT:  Not in this case here.

8            MS. LORING:  No, it was a submission in the *Astra*

9    case.

10           And, your Honor, let me just take a moment to walk

11   through the *Astra* decision because we believe that what Judge

12   Jones found was that these documents, which do not relate to a

13   U.S. application, touch base with the United States based on

14   the plain reading of the decision, your Honor.  And we

15   supplied those documents only in the belief that it would

16   clarify for your Honor what this case said.

17           THE COURT:  All right.  I understand your position.

18   If I decide that I want to take a look at the documents, we

19   will advise you, but I don't need you to hand them up at this

20   time.

21           MS. LORING:  Okay.  Thank you, your Honor.

22           In terms of the touching base inquiry, Mr. Aldrich

23   stated that the decision is not about the product, it's about

24   the patent and that the documents at issue relate to the

25   filing and prosecution of a patent application.  Well, I think

1    those -- I disagree strongly with both of those comments.

2        First of all, whether or not something touches base is

3    a very factual inquiry.  And if you look at all of the cases

4    cited by all of the parties, the courts look into the

5    documents themselves, who generated them, what the role of

6    that person was, whether there was legal advice involved,

7    whether or not there was a U.S. interest implicated.  And so

8    the fact that the invention was at least in part made in this

9    country through a U.S. inventor in conjunction with Swedish

10   inventors is very much the point, your Honor.  And this is

11   very much about not the product but the basis for the

12   invention in the '834 patent.

13        He also said -- he also erred when he said that the

14   documents relate to filing and prosecution.  They do not.

15   They relate to the preparation of draft patent applications.

16   And that's very clear not only from our descriptions in the

17   brief but from the privilege log.  There are draft patent

18   applications.  There are communications between the Astra

19   inventors and the in-house lawyers about those draft patent

20   applications both with respect to the Swedish application and

21   with respect to the PCT application.  Those documents are

22   neither about the filing nor are they about the prosecution of

23   either of those applications.  Those documents we did not

24   withhold.

25        THE COURT:  Can you say that again?

 1              MS. LORING:  We did not withhold.

 2              THE COURT:  The whole argument you just made about --

 3              MS. LORING:  I said the documents we withheld are

 4    neither about the filing or the prosecution of the Swedish or

 5    PCT application, they are about the preparation of the PCT and

 6    Swedish application.

 7              THE COURT:  Well, can you distinguish what you mean

 8    between preparation --

 9              MS. LORING:  And prosecution?

10              THE COURT:  You just said -- I want to make sure I

11    get your argument correct.  You're arguing that the withheld

12    documents based on the privilege log has a general

13    description, nature of the document, you're saying the

14    documents that are withheld do not relate to the filing and

15    preparation --

16              MS. LORING:  Filing and prosecution.

17              THE COURT:  Filing and prosecution of the Swedish

18    patent, Swedish application or the PCT application, but they

19    relate to the preparation.

20              MS. LORING:  Yes, your Honor.

21              THE COURT:  Tell me the difference.

22              MS. LORING:  Why that's relevant?

23              THE COURT:  Exactly.

24              MS. LORING:  That's relevant because prosecution in

25    Sweden may very well not relate to the touch base with the

1  United States, it might under certain circumstances but it may

2  not because there you're involved with issues of Swedish law,

3  whether a patent application meets the requirements of Swedish

4  law, whether the claims are proper in light of the prior art

5  under Swedish law.  But when you're preparing a patent

6  application and you have in your mind, as did James Peel and

7  the folks at Astra that he will be filing this application in

8  the United States, and this argument goes to the Swedish

9  application as well as the PCT application, then there is a

10 U.S. interest involved because you have in mind U.S. law

11 because those priority applications become part of the U.S.

12 file history, they are relevant for claim construction, they

13 are relevant for priority dates, they're relevant for all

14 sorts of reasons, and therefore there is a tremendous

15 distinction between preparation of a priority application and

16 prosecution in a foreign country of that application.  And

17 that's a distinction that Apotex would like to blur and we

18 think that that led you astray, your Honor, respectfully.

19          THE COURT:  Do you acknowledge what Mr. Aldrich said,

20 which is on the PCT application the United States is not the

21 only country designated?

22          MS. LORING:  That is true.  I doubt very much, and I

23 don't believe that Mr. Aldrich meant to imply that AstraZeneca

24 filed in 122 counties, but I don't have the PCT application in

25 front of me.

1          THE COURT:  No, his comment was it's an international

2    application, it's not just designated in the U.S., it's

3    designated in a whole number of countries.

4          I think that was your point, Mr. Aldrich.

5          MR. ALDRICH:  That's correct, not that they filed in

6    122 -- I think 122 countries were designated.

7          THE COURT:  So to suggest that because the U.S. is

8    designated, I think the argument was AstraZeneca can easily

9    argue it's a German patent or it's a Japanese patent because

10   it's designating those countries as well.  Is that your

11   argument?

12         MR. ALDRICH:  That was our argument.

13         MS. LORING:  I think if you look at a PCT application

14   in a vacuum, as Apotex is doing in order to make that

15   argument, you might draw that conclusion.  I think again you

16   need to look at all of the facts and the fact that not only

17   was this application designated as part of the U.S. from the

18   beginning, that James Peel had it in his head to file in the

19   United States from the beginning because the invention was

20   made for the U.S. market, that the PCT designated at the time

21   of filing, all of those things taken together, not teased

22   apart separately, indicate the strong U.S. interest.  That the

23   United States is the largest pharmaceutical market in the

24   world and therefore highly important to AstraZeneca as

25   Christer Wahlstrom stated in his declaration.

1    The Swedish receiving office -- the whole notion -- and

2  I don't prosecute patent applications, but my understanding of

3  the PCT is that you filed in a receiving office but that could

4  be any office in the -- it could be the United States, it

5  could be Sweden.  The fact that it was filed in Sweden as

6  opposed to the U.S., does not change the fact that under

7  Section 363, as of that filing date, it is a U.S. application.

8  They could just as well have filed in the U.S. receiving

9  office and to the same effect.

10    The other thing that --

11    THE COURT:  Where in 363 does it say filing -- it

12  used the word international application.

13    MS. LORING:  It is an international application.

14    THE COURT:  It says if you designate the U.S., you'll

15  have the effect concerning its international filing date.

16  Where does it say, I think what you want me to read in part

17  from the statute is the following, "an international

18  application designating the United States constitutes a United

19  States application," that's how you want me to read 363.  I

20  don't see that language in there, I see it talks about filing

21  dates.

22    MS. LORING:  Your Honor, I actually read it like

23  that.  But at the end of the day I think it doesn't matter for

24  all of the reasons I articulated, it's the connection in the

25  real world facts that's important.

1    But one thing I do want to address before I get off

2    that point, when Mr. Aldrich talked about the difference

3    between a priority application and a priority date and

4    effective date, that's totally irrelevant, your Honor.  What I

5    was focusing on was not the priority date versus the effective

6    date, what I was focusing on was the characterization of the

7    Swedish application as foreign and the U.S. application -- and

8    the PCT application as a U.S. application.  You could have

9    filed a U.S. priority application -- I guess you can't file a

10   U.S. priority application.  But if you file -- the point of

11   what I was saying was it's got nothing to do with the priority

12   date or effective date, it's the characterization of the

13   application as either foreign or U.S.

14        THE COURT:  Well, there's a third category that you

15   keep skipping called international.

16        MS. LORING:  I'm sorry, your Honor.

17        THE COURT:  There's a third category of applications;

18   there's a U.S. application, there's a foreign application, and

19   then there's an international application.

20        MS. LORING:  There is.  But the PCT application,

21   which is an international application, is identified on the

22   face of the patent as a U.S. application, that's the point.

23        THE COURT:  Identified by AstraZeneca.

24        MS. LORING:  No.  No.  No.  No.  By the U.S. patent

25   office.

```
 1            THE COURT:  This is the document we've already had

 2   some discussion?

 3            MS. LORING:  The '834 patent.

 4            THE COURT:  The docket number 161.

 5            MS. LORING:  Yes, your Honor.

 6            THE COURT:  Okay.  I understand your argument.

 7       You would agree, though, that there's absolutely no

 8   case law that you have discovered and submitted to the Court

 9   that says designating the United States on an international

10   application constitutes making that international application

11   a U.S. application for all purposes?

12            MS. LORING:  Your Honor, I have found no such case.

13   But to be honest with you, I don't see any reason for a case

14   because Section 363 is clear.

15       But passing that, I really think, your Honor, that the

16   point is the facts, the relationship of that --

17            THE COURT:  The real world connection.

18            MS. LORING:  The real world connection, the Swedish

19   application and the PCT application.

20       Moving on to the Odone case, Apotex continues to call

21   that an isolated case, an outlier, and to be honest with you I

22   have no idea where they get that from.  It is one of two cases

23   that either party has been able to find that has analyzed this

24   issue.  There are not 100 cases on one side and Odone on the

25   other side.  There are Odone and Astra and nothing else.  And,
```

1   your Honor, to say that there was no analysis in that case, we

2   quoted from the case in our brief on Page 6 where the court

3   there said -- went through the facts and analyzed the

4   relationship between those applications and the United States

5   and said "It would be nonsense for this court to find that the

6   documents at issue do not touch base with the United States."

7   And then they talk about the fact that there was a U.S.

8   inventorship question.  And then they say, "Finally the

9   defendant acknowledges that it is upon this British patent,"

10  that was at issue in the documents, "that the later U.S.

11  application, the patent in suit is claiming priority pursuant

12  to the international Patent Cooperation Treaty, PCT, and is

13  seeking protection under a letter patent from the United

14  States Patent and Trademark Office."  In so finding, the court

15  cited 35, U.S.C., Section 363.  This did not come out of our

16  dreams, this came out of *Odone*.  And the *Astra* court, in

17  finding that those documents in our letter touched base with

18  the United States, cited *Odone* and said -- characterized *Odone*

19  as holding that, I can't find the quote right now, but

20  something to the effect of not only the United States'

21  documents touched base with the United States.  So the court

22  in finding that the documents at issue touched base with the

23  United States, cites *Odone* and says finding that

24  communications involving not only United States patents but

25  also the foreign priority applications of U.S. patents touched

1   base with the United States.  And that's at Page 99 of the

2   *Astra* case.

3          THE COURT:  Okay.

4          MS. LORING:  Back to the Apotex six cases, I

5   reiterate what I said before.  The *Golden Trade* case is a

6   lesson for not being able to draw conclusions about what those

7   cases stand for.  And if you read those cases, your Honor,

8   carefully, as I'm sure you have, you will see that several of

9   them, the *Golden Trade* case in particular, but others of them

10  also talk about prosecution as opposed to preparation.  And so

11  again those cases don't specifically state -- not only do they

12  not specifically state that the U.S. priority application was

13  at issue in the withheld documents, they don't describe the

14  documents, your Honor.  How can we draw conclusions contrary

15  to the clear holdings in *Astra* and *Odone* when those cases

16  don't describe the documents at issue.

17         In terms of the Swedish law, Mr. Aldrich said we didn't

18  make a showing of harm.  To the contrary, we did.

19         THE COURT:  Let me ask you to address one point.

20         MS. LORING:  Sure.

21         THE COURT:  You're asserting Swedish trade secret law

22  protects the documents.  Now put aside any attorney privilege

23  issue, if that's the case, isn't it your burden to file a

24  motion for protective order in a U.S. litigation that's

25  governed by the federal rules if you are hoping to withhold

1    otherwise relevant documents on a basis other than

2    attorney/client privilege?

3         MS. LORING:  Well, your Honor, I have a hard time

4    separating the attorney/client privilege issue.  We listed

5    those documents on our privilege log because we believed they

6    were privileged.

7         THE COURT:  But put aside that.  See if you can

8    answer the specific question.  In a U.S. litigation governed

9    by the Federal Rules of Civil Procedure and, obviously,

10   Federal Rule 26, and the discovery request calls for documents

11   and there's a reason why the documents can't be produced

12   because of a trade secret issue, isn't it the burden of a

13   party to make a motion for a protective order under Rule 26?

14        MS. LORING:  The basis of the trade secret is

15   attorney advice.  And so we didn't -- we don't view that as

16   requiring a motion for a protective order.  The problem with

17   that, regardless of how it got before your Honor, the problem

18   with applying a protective order standard is it eviscerates

19   the Swedish law because it substitutes what burden would take

20   place in Sweden with a protective order burden here.

21        THE COURT:  Let's assume it's just a trade secret for

22   some other reason not a trade secret governed by a Swedish

23   law, wouldn't the general -- generally if you're not going to

24   produce relevant discovery, you need to seek a protective

25   order?

1          MS. LORING:  If it were a technical trade secret,

2     then under U.S. law we would be filing a motion for protective

3     order.

4          THE COURT:  Of course this case is governed by the

5     Federal Rules of Civil Procedure, you would agree, right?

6          MS. LORING:  Yes.

7          THE COURT:  Do you have any case law that supports

8     your position that AstraZeneca is excused from Rule 26 because

9     the basis of its assertion of the trade secret is because it's

10    attorney advice?

11         MS. LORING:  I do not have any cases to that effect,

12    your Honor.

13         THE COURT:  All right.

14         MS. LORING:  At the end of the day we submit,

15    regardless of the standard that applies, we have met that

16    burden.  And that is clear from the Sande declaration that

17    talks about, and Wahlstrom declaration that talks about the

18    importance of attorney/client privilege and from the case law,

19    the *Astra* case, the *Golden Trade* case, and the *VLT Corp.* case

20    that all recognize the alignment of foreign law and U.S. law

21    in protecting attorney advice.  And the damage -- the Apotex's

22    characterization of the compelling importance and sacredness

23    of attorney advice, the notion articulated by the Supreme

24    Court of wanting to encourage frank discussions among lawyers

25    and their clients, and all of that shows clearly in this

1   country a protective order is not sufficient to protect

2   privileged attorney advice.  And the fact that the documents,

3   assuming that the documents don't touch base with the United

4   States, doesn't change the attorney advice present in those

5   documents, doesn't alter the nature of those documents.  If

6   you substituted Swedish PCT for U.S. application, those

7   documents would be protected under U.S. law.

8          So that's the harm in disclosure of our attorney advice

9   from a European patent lawyer to the inventors would never be

10  required to be disclosed in the United States, and that's the

11  damage that, the harm to AstraZeneca if they had to be

12  produced.

13          THE COURT:  Okay.  Thank you.

14          MS. LORING:  Thank you, your Honor.

15          THE COURT:  Any sur-reply?

16          MR. ALDRICH:  Just a couple things briefly, your

17  Honor.

18          Ms. Loring a couple of times mentioned about the

19  sacredness of the attorney/client privilege, and we argue that

20  ourselves in letter briefing, and that's true and both

21  countries agree about that, both countries hold that the

22  attorney/client privilege should be protected.  The two

23  countries have a different opinion about whether that should

24  be extended to in-house counsel.  And it's not unreasonable

25  that it's an issue that U.S. case law went through at one

1    time, and it's not unreasonable that Swedish law has a

2    different opinion about whether that privilege should be

3    extended to in-house counsel.  They have a clearly expressed

4    policy of why they don't think it should be extended to

5    in-house counsel, they think in-house counsel may be subject

6    to undue influence.

7         Really quick points.  Again, there still seems to be

8    some confusion about what the face of the patent shows.  The

9    face of the patent has a lot of basic information, included in

10   that are a number of relevant dates, shows the family history,

11   you can have multi continuation applications, priority

12   applications --

13        THE COURT:  Can I ask you to speak a little slower

14   and louder?

15        MR. ALDRICH:  I'm sorry.

16        So the face of the patent has a lot of basic

17   information about the patent, a lot of basic historical

18   information about the patent and related applications, you can

19   have multiple continuing applications, priority applications,

20   so it gives those relevant dates so all the information is

21   available.  And the two different sections, Ms. Loring keeps

22   pointing to the one that says related U.S. applications and

23   that lists the PCT and that is because the PCT counts as a

24   U.S. filing date, but that's it.  It's not a U.S. application

25   in any way but that date counts as the U.S. filing date just

1    as it would count as a filing date in many other countries.

2         THE COURT:  Can you address Ms. Loring's argument

3    that, putting aside whether the PCT is a U.S. application,

4    what the Court should really focus on is connection in the

5    real world facts and that the inventor was in the United

6    States?

7         MR. ALDRICH:  Yes, your Honor.

8         There was three inventors on this patent, one was the

9    U.S., two were in Sweden.  You know, this is -- this is a

10   Swedish company that's in Sweden.  These communications took

11   place there.  Two of the inventors were there.  The first two

12   applications, the Swedish application and the PCT application,

13   were filed there.  The international prior art search was

14   conducted there.  Is there some connection with the U.S.?  I

15   mean, they ultimately filed a U.S. application, you can say

16   that's a connection.  But it's, as your Honor explained,

17   incidental connection.  You can have that type of connection

18   in many different countries.  All right?  Ms. Loring keeps

19   talking about how they -- when they drafted these

20   applications, they had in mind that they were filing in the

21   U.S.  I'm sure they had in mind that they would file in many

22   countries.  You know, having in mind that, you know, there

23   might be some future application in a particular country,

24   doesn't render it -- I'm not articulating this well.

25        But, you know, the trouble we're having with this is

1   whose law do you apply then?  I don't remember what countries

2   AstraZeneca ultimately filed in, but I'm sure they were

3   expecting to file in many countries at the time they prepared

4   this application.  And that fact alone, if you're going to use

5   that to say that falls under the particular country's

6   attorney/client privilege law, then who -- which country's law

7   do we apply.  That's too tenuous of a connection.

8              THE COURT:  Okay.  Anything further?

9              MR. ALDRICH:  The only other thing I want to mention

10  really quick, your Honor, was Ms. Loring was making a

11  distinction between preparing draft application versus

12  prosecution.  It's a matter of semantics.  I mean, I consider

13  that all prosecution.  You draft the patent application to

14  submit to the patent office.  You submit it.  They send you an

15  office action.  Then you draft a response to that office

16  action and submit it.  They usually will submit another office

17  action -- you know, these are all things that you prepare and

18  submit to the patent office, that's part of the prosecution.

19  This is splitting hairs to say that the preparation of the

20  application is a different category of some sort.  They were

21  preparing a draft application to submit in Sweden.  And then

22  they were preparing a draft application -- a draft

23  international patent application that they then filed in

24  Sweden and that the Swedish patent office was designated to

25  deal with it.

1          So that's all I have, your Honor, unless you have any

2     questions.

3          THE COURT:  Thank you.

4          Anything further, Ms. Loring?

5          MS. LORING:  One small point, your Honor, to address

6     Mr. Aldrich's comment about Astra being a Swedish -- having an

7     inventor in the United States.  Actually, Astra at that time

8     had facilities all over the United States, including the

9     Waltham, Massachusetts, the site where Budesonide was to be

10    manufactured.  The site where Budesonide was -- the

11    manufacturing process was developed by, among others, Cheryl

12    L'arrivee-Elkin, the inventor.  And so it wasn't that she just

13    happened to live here, it was that the facility was here.  The

14    examples in the patent flow directly out of Cheryl

15    L'arrivee-Elkin work done in the United States.  The question

16    of what -- well, I can't disclose that, that's confidential.

17    But the discussions of what to put in the patent application

18    based on U.S. regulations are part of those communications.

19    And so she was providing input, as you can see from the priv

20    log, into how the application was going to be shaped in the

21    context of U.S. rules and regulations.  This is the real world

22    connection between the United States, the making of the

23    invention, and those patent applications.

24         THE COURT:  Thank you.

25         Anything further?

1          MR. ALDRICH:  Nothing further, your Honor.

2          THE COURT:  Anything further?

3          MS. LORING:  No, your Honor.

4          THE COURT:  I'm going to close the arguments at this

5    time.  I'm going to review the arguments and I'm going to

6    reserve my decision and hope to be able to issue an Opinion

7    shortly.

8          Is there anything else we need to address today in this

9    case from a status point of view?

10          MR. HENDLER:  Yes, your Honor.

11          Your Honor, you had previously extended the stay on

12    your Order until, I believe, the close of business today or at

13    least the end of the day today.  And in view of the arguments,

14    we're inclined to ask that you extend the stay until your

15    Honor has issued your ruling.

16          THE COURT:  Any objection?

17          MR. ALDRICH:  I guess we don't object until we get

18    your ruling, your Honor.  If I -- there is one thing I would

19    like to add, though, with respect to the stay.  When we last

20    had -- we had the telephone conference hearing with your

21    Honor, one --

22          THE COURT:  You'll have to remind me which one in

23    this case.  You mean the most recent?

24          MR. ALDRICH:  The most recent one.

25          THE COURT:  Okay.

1          MR. ALDRICH:  Where your Honor looked at the standard
2    for a stay and then analyzed the various issues.  And your
3    Honor had posed a question at that time if Apotex agreed
4    that the harm to AstraZeneca not extending the stay would be
5    that the privilege would be waived once they overturned it.
6    And I was on the phone at that time, your Honor, and I
7    answered I didn't know the answer to that question whether it
8    would or would not be waived.  Subsequently we looked up the
9    answer to that question.  It's clearly established that
10   judicially compelled disclosure does not constitute a waiver.
11   So this, I think, significantly affects the analysis of that
12   prong.  There would not be any permanent damage to AstraZeneca
13   by not indefinitely continuing the stay.  That if it turned
14   out that there was a ruling and that ruling was later
15   incorrect, those documents could be returned and not be usable
16   against them in the case just like they had produced
17   privileged documents that they requested back.
18          And, you know, in the meantime I understand that your
19   Honor doesn't want to do this -- doesn't want to lift the stay
20   today, but I'm worried about it getting extended indefinitely
21   as this issue continues to be appealed.
22          THE COURT:  Why don't I, if it's agreeable to both
23   counsel, grant the request to continue the stay pending
24   decision by the Court.  And then depending on how I rule, the
25   parties will have to make whatever applications they need to

1   make.  Is that acceptable?

2              MR. HENDLER:  Yes, your Honor.

3              MR. ALDRICH:  Just for clarity, your Honor, it will

4   be extended until the day your Honor rules?

5              THE COURT:  Well, let's play out two scenarios.

6   Either I deny the motion -- three scenarios.  I deny the

7   motion for consideration and put in the Order a period of time

8   for the production.  In which case then AstraZeneca, if they

9   appeal, appeal and they'll have a motion for a stay and you'll

10  have to oppose it.

11       I could grant the motion for reconsideration and still

12  require the documents to be produced, which again leads to the

13  scenario.  I would put a date and time for the production, it

14  wouldn't be immediate, it probably would be ten days.  And if

15  at that time AstraZeneca wanted to make an application to stay

16  to Order pending appeal, they would have to make that

17  application and you would oppose it.

18       The third option, I'm not putting them in any

19  particular order, is I grant the motion for reconsider -- I

20  consider changing my mind based on the application, in which

21  case there's nothing to stay because there would be no Order.

22       That's how I see it playing out.  Would the parties

23  agree those are the three alternatives?

24              MR. HENDLER:  I'm not sure about the second

25  alternative, it's not clear to me, but I think that would

1    certainly capture the world of alternatives.

2           THE COURT:  Another one is you didn't make the

3    showing to reconsider and I don't reconsider.

4           MR. HENDLER:  Oh, I'm sorry.  I thought you said you

5    would grant the reconsideration.

6           THE COURT:  I'm not sure what order I did it.

7           MR. HENDLER:  Okay.

8           THE COURT:  Let me say it again.

9        Either I grant the motion for reconsideration,

10   reconsider and again compel documents to be produced, I deny

11   the motion for reconsideration and compel the documents to be

12   produced, or I grant the motion for reconsideration and then

13   deny the producing of the documents.

14          MR. HENDLER:  I'm sorry, your Honor, I understand

15   now.

16          THE COURT:  So I will continue the stay but I will

17   put in the Order it's without prejudice to either parties'

18   argument to assert that the stay should continue or be

19   dissolved -- it's going to be automatically dissolved if I

20   deny the reconsideration or I further compel the documents.

21   So, Mr. Aldrich, I'll note for the record today you don't

22   object but I presume that I'll note for the record you want to

23   preserve your arguments and you don't agree to a stay

24   indefinitely.

25          MR. ALDRICH:  Correct, your Honor.

1          THE COURT:  And I'm going to grant the stay pending

2   my ruling.  And I will address in my ruling what happens with

3   respect to the documents once I decide to application.  Is

4   that acceptable?

5          MR. ALDRICH:  Yes, your Honor.  I would ask, I'm not

6   sure of the timing in terms of filing the stay.  I would ask,

7   if possible, being optimistic and saying if the Court does

8   deny the motion for reconsideration, when the documents be

9   produced, is it possible that that could include an expedited

10  schedule for any stay?

11         THE COURT:  If there's an appeal, it's up to the

12  district judge, that's not for me.  I don't know where the

13  stay -- the stay may go before me.  So AstraZeneca will make

14  whatever application and you'll make whatever response, I'm

15  not going to put any time lines in it today.

16         MR. ALDRICH:  Okay.

17         MR. HENDLER:  That's fine, your Honor.

18         THE COURT:  Anything else that we need to address

19  today?

20         MR. HENDLER:  Nothing from AstraZeneca.

21         MR. ALDRICH:  Nothing from Apotex, your Honor.

22         THE COURT:  How about our other defendants here?

23         MR. PLUTA:  Nothing from Sandoz, your Honor.

24         MR. SALMEN:  Nothing from Breath, your Honor.

25         THE COURT:  The ones that are before me, I'll address

1   and then deal with the experts.  And I'll be ruling shortly on

2   this Dr. Barnes issue.  The motions to seal -- the *Markman*

3   hearing would be before the district judge.  No one objects to

4   each other's motions to seal, right?

5            MR. HENDLER:  That is correct.

6            MR. ALDRICH:  Correct for Apotex, your Honor.

7            MR. SALMEN:  Correct for Breath as well, your Honor.

8            MR. PLUTA:  And Sandoz.

9            THE COURT:  I looked at them recently, I will say it

10  on the record today, when you get the Order you can take care

11  of it, you all have been filing under seal en masse, the whole

12  brief is under seal, and that is not the least restrictive way

13  of handling it.  So I may be denying in part some of the

14  motions to seal, sealing currently but ordering you to file

15  redacted versions of briefs on the docket, and you'll see that

16  when I enter the Order.  But the filing of a brief completely

17  under seal is generally not warranted even if you end up

18  redacting significant portions of the brief.  Okay?

19       Anything further?  All right, counsel, thank you very

20  much.  Everyone have a nice day and safe travel.

21       We are adjourned.

22            (Proceedings Concluded.)

23

24

25

1

2

3

4

5

6

7                    C E R T I F I C A T E

8

9

10

              I, LISA MARCUS, Official Court Reporter for the
11    United States District Court for the District of New Jersey,
      Certified Shorthand Reporter and Notary Public of the State of
12    New Jersey, do hereby certify that the foregoing is a true and
      accurate transcription of my original stenographic notes to
13    the best of my ability of the matter hereinbefore set forth.

14

15                              _____
                                LISA MARCUS
                                Official U.S. Reporter
16                              N.J. Certificate No. XIO1492

17
      DATE:  June 1, 2011
18

19

20

21

22

23

24

25

**'**

**'834** [10] - 6:21, 7:10, 7:12, 13:24, 16:8, 16:11, 16:19, 27:22, 39:12, 45:3

# 0

**06905-5619** [1] - 2:15
**07095** [1] - 2:22
**07102** [2] - 2:4, 2:19
**07102-5311** [1] - 3:4
**08-1512** [2] - 1:10, 4:5
**08101** [1] - 1:20
**08543** [1] - 2:12
**09-4115** [1] - 1:5

# 1

**1** [2] - 29:2, 61:17
**1,000** [1] - 27:24
**10-5785** [1] - 1:16
**100** [2] - 2:4, 45:24
**10036** [1] - 2:8
**102** [1] - 19:16
**10th** [1] - 3:3
**11** [1] - 16:2
**111** [1] - 29:3
**120** [2] - 25:13, 25:19
**1200** [1] - 2:18
**1211** [1] - 2:8
**122** [4] - 26:3, 41:24, 42:6
**1480** [1] - 2:22
**1492** [1] - 1:25
**161** [1] - 45:4

# 2

**2010** [1] - 29:4
**2011** [2] - 1:21, 61:17
**202** [1] - 2:11
**203** [1] - 2:16
**204** [1] - 2:22
**212** [1] - 2:9
**219** [1] - 29:2
**219-1** [1] - 29:1
**222-6301** [1] - 3:8
**23** [1] - 1:21
**26** [3] - 48:10, 48:13, 49:8
**26(c** [1] - 17:18
**26(c)** [1] - 17:23
**2d** [1] - 11:1

# 3

**30** [2] - 16:13, 29:4
**309** [1] - 11:1

**312** [1] - 3:8
**324-6155** [1] - 2:16
**35** [2] - 15:25, 46:15
**363** [9] - 15:9, 15:25, 16:5, 28:15, 43:7, 43:11, 43:19, 45:14, 46:15

# 4

**4** [1] - 15:10
**424-2000** [1] - 2:19
**4TH** [1] - 1:20

# 5

**500** [1] - 3:7
**596-9000** [1] - 2:9

# 6

**6** [2] - 3:7, 46:2
**60610** [1] - 3:7
**609** [1] - 2:12
**61** [1] - 29:3
**622-3333** [1] - 3:4
**622-4444** [1] - 2:5
**63** [1] - 16:15
**636-4500** [1] - 2:23
**649** [1] - 11:1

# 7

**732** [1] - 2:23
**734-6395** [1] - 2:12
**744** [1] - 2:18

# 8

**8** [1] - 36:2
**856** [1] - 1:21

# 9

**9** [2] - 2:22, 15:15
**968-4986** [1] - 1:21
**973** [2] - 2:5, 2:19, 3:4
**986** [1] - 2:15
**99** [1] - 47:1

# A

**AB** [3] - 1:3, 1:8, 1:13
**ability** [2] - 37:24, 61:13
**able** [4] - 10:9, 45:23, 47:6, 55:6
**absolute** [1] - 20:1
**absolutely** [3] - 10:21, 19:22, 45:7

**accept** [1] - 37:12
**acceptable** [2] - 57:1, 59:4
**account** [1] - 25:10
**accurate** [1] - 61:12
**accurately** [1] - 25:8
**acknowledge** [1] - 41:19
**acknowledged** [2] - 11:3, 13:2
**acknowledges** [1] - 46:9
**action** [3] - 53:15, 53:16, 53:17
**ACTION** [3] - 1:4, 1:10, 1:15
**activated** [1] - 14:17
**Adam** [1] - 4:12
**add** [1] - 55:19
**addition** [1] - 18:24
**address** [10] - 11:15, 21:5, 44:1, 47:19, 52:2, 54:5, 55:8, 59:2, 59:18, 59:25
**addressed** [6] - 13:7, 21:24, 29:25, 30:6, 32:25, 33:21
**addresses** [1] - 10:23
**addressing** [1] - 23:21
**adequate** [1] - 6:9
**adjourned** [1] - 60:21
**admission** [1] - 12:17
**adopted** [1] - 8:5
**advice** [15] - 6:8, 8:9, 10:2, 18:13, 18:19, 20:21, 39:6, 48:15, 49:10, 49:21, 49:23, 50:2, 50:4, 50:8
**advise** [2] - 37:10, 38:19
**advocate** [1] - 18:11
**affects** [1] - 56:11
**afternoon** [12] - 4:3, 4:7, 4:14, 4:15, 4:21, 4:22, 4:24, 5:1, 5:2, 5:4, 5:8, 5:9
**agent** [2] - 9:13, 10:1
**agents** [3] - 7:16, 9:8, 9:10
**ago** [3] - 14:15, 21:24, 33:11
**agree** [13] - 10:19, 11:7, 11:10, 35:10, 35:14, 35:17, 37:19, 38:3, 45:7, 49:5, 50:21, 57:23, 58:23
**agreeable** [1] - 56:22
**agreed** [1] - 56:3
**ahead** [1] - 17:7
**ALDRICH** [36] - 2:14, 4:21, 21:2, 21:4, 21:9, 23:20, 24:13, 26:3, 26:6, 26:10, 27:11, 27:14, 27:16, 27:20, 29:7, 29:10, 30:5, 31:24, 33:19, 35:5, 42:5, 42:12, 50:16, 51:15, 52:7, 53:9, 55:1, 55:17, 55:24, 56:1, 57:3, 58:25, 59:5, 59:16, 59:21, 60:6
**Aldrich** [13] - 4:19, 21:2, 21:3, 29:6, 30:2, 37:5, 38:22, 41:19, 41:23, 42:4, 44:2, 47:17, 58:21
**Aldrich's** [2] - 36:23, 54:6
**aligned** [2] - 9:15, 12:2
**alignment** [2] - 9:17, 49:20
**allegedly** [3] - 24:3, 33:2, 35:1
**allow** [1] - 21:17
**allowed** [1] - 34:8
**alone** [1] - 53:4
**alter** [1] - 50:5

**alternative** [1] - 57:25
**alternatives** [2] - 57:23, 58:1
**Americas** [1] - 2:8
**analysis** [13] - 12:24, 13:3, 13:5, 17:24, 18:9, 18:13, 20:8, 24:5, 29:17, 34:15, 36:2, 46:1, 56:11
**analyzed** [6] - 17:16, 33:2, 33:8, 45:23, 46:3, 56:2
**analyzing** [1] - 23:24
**AND** [1] - 1:20
**ANN** [1] - 1:22
**answer** [3] - 48:8, 56:7, 56:9
**answered** [1] - 56:7
**anyway** [1] - 23:15
**apart** [1] - 42:22
**Apotex** [4] - 4:16, 4:18, 7:19, 9:23, 11:13, 11:19, 12:6, 12:17, 13:1, 13:10, 15:13, 15:14, 17:25, 18:18, 18:25, 19:1, 20:6, 21:1, 37:9, 41:17, 42:14, 45:20, 47:4, 56:3, 59:21, 60:6
**APOTEX** [4] - 1:11, 2:13, 2:16
**Apotex's** [8] - 8:5, 11:15, 11:23, 12:17, 24:2, 35:23, 36:16, 49:21
**appeal** [4] - 57:9, 57:16, 59:11
**appealed** [1] - 56:21
**appearances** [1] - 4:5
**application** [164] - 5:22, 7:14, 7:21, 7:22, 7:23, 7:25, 8:1, 8:3, 8:4, 8:6, 8:7, 8:18, 8:23, 9:2, 10:12, 12:9, 12:18, 13:16, 13:17, 13:24, 13:25, 14:2, 14:3, 14:4, 14:9, 14:10, 14:11, 14:14, 14:15, 14:16, 14:17, 14:21, 14:22, 15:10, 15:15, 15:19, 15:20, 15:21, 15:22, 15:24, 16:1, 16:3, 16:6, 16:7, 16:9, 16:13, 16:14, 16:16, 16:17, 16:18, 16:19, 16:20, 16:23, 17:12, 17:15, 20:17, 23:11, 23:25, 24:7, 24:14, 24:15, 24:18, 24:21, 24:25, 25:1, 25:4, 25:6, 25:12, 25:16, 25:17, 25:21, 25:23, 25:24, 26:1, 26:5, 26:6, 26:17, 26:20, 27:2, 27:9, 28:4, 28:18, 28:25, 31:9, 32:24, 36:25, 37:1, 37:3, 38:13, 38:25, 39:20, 39:21, 40:5, 40:6, 40:18, 41:3, 41:6, 41:7, 41:9, 41:15, 41:16, 41:20, 41:24, 42:2, 42:13, 42:17, 43:7, 43:12, 43:13, 43:18, 43:19, 44:3, 44:7, 44:8, 44:9, 44:10, 44:13, 44:18, 44:19, 44:20, 44:21, 44:22, 45:10, 45:11, 45:19, 46:11, 47:12, 50:6, 51:24, 52:3, 52:12, 52:15, 52:23, 53:4, 53:11, 53:13, 53:20, 53:21, 53:22, 53:23, 54:17, 54:20, 57:15, 57:17, 57:20, 59:3, 59:14
**applications** [41] - 6:15, 6:16, 6:18, 7:16, 7:20, 9:1, 12:15, 12:21, 12:23, 12:25, 13:9, 14:22, 23:1, 24:17, 28:8, 28:9, 36:9, 36:10, 39:15, 39:18, 39:20, 39:23, 41:11, 43:2, 44:17, 46:4, 46:25, 51:11, 51:12, 51:18, 51:19, 51:22, 52:12, 52:20, 54:23, 56:25

**applied** [5] - 17:15, 17:17, 17:22, 17:23, 18:5
**applies** [1] - 49:15
**apply** [9] - 11:18, 17:21, 17:25, 25:20, 30:17, 33:9, 34:23, 53:1, 53:7
**applying** [1] - 6:4, 9:5, 9:6, 9:18, 9:25, 11:17, 19:17, 33:24, 34:2, 34:24, 48:18
**appropriate** [1] - 11:3
**approval** [1] - 21:17
**argue** [3] - 34:5, 42:9, 50:19
**argued** [1] - 18:18
**arguing** [6] - 5:12, 8:15, 11:17, 24:8, 24:9, 40:11
**argument** [32] - 4:3, 5:10, 5:16, 6:13, 8:5, 11:16, 11:20, 13:23, 16:23, 17:7, 20:25, 21:3, 25:8, 25:21, 25:25, 31:22, 31:23, 33:16, 34:6, 34:18, 34:23, 35:6, 40:2, 40:11, 41:8, 42:8, 42:11, 42:12, 42:15, 45:6, 52:2, 58:18
**argument's** [1] - 35:3
**arguments** [8] - 11:19, 23:22, 24:14, 37:9, 55:4, 55:5, 55:13, 58:23
**art** [5] - 24:21, 28:14, 29:12, 41:4, 52:13
**Article** [1] - 16:2
**articulate** [2] - 32:18, 32:19
**articulated** [3] - 8:21, 43:24, 49:23
**articulating** [1] - 52:24
**aside** [4] - 15:17, 47:22, 48:7, 52:3
**assert** [1] - 58:18
**asserted** [1] - 28:14
**asserting** [2] - 13:16, 47:21
**assertion** [1] - 49:9
**associate** [1] - 4:11
**assume** [1] - 48:21
**assuming** [2] - 18:4, 50:3
**assumptions** [1] - 31:13
**Astra** [28] - 9:18, 10:6, 10:11, 10:20, 12:1, 13:6, 18:22, 19:17, 20:11, 30:1, 30:6, 36:1, 36:5, 36:6, 36:14, 37:4, 38:8, 38:11, 39:18, 41:7, 45:25, 46:16, 47:2, 47:15, 49:19, 54:6, 54:7
**astray** [1] - 41:18
**ASTRAZENECA** [6] - 1:2, 1:7, 1:13
**AstraZeneca** [32] - 4:9, 4:10, 5:13, 6:2, 7:24, 17:19, 18:7, 18:10, 21:6, 22:18, 22:24, 23:14, 31:13, 32:1, 32:4, 32:25, 33:3, 33:15, 34:6, 41:23, 42:8, 42:24, 44:23, 49:8, 50:11, 53:2, 56:4, 56:12, 57:8, 57:15, 59:13, 59:20
**Astrazeneca's** [6] - 6:22, 15:18, 16:23, 18:17, 18:19, 24:1
**attention** [1] - 10:17
**attorney** [15] - 6:8, 10:2, 18:13, 18:19, 20:21, 27:3, 27:4, 47:22, 48:15, 49:10, 49:21, 49:23, 50:2, 50:4, 50:8
**attorney/client** [19] - 18:20, 19:16, 20:7, 20:10, 23:9, 32:6, 33:4, 33:6, 33:7, 33:8, 33:14, 33:17, 34:22, 48:2, 48:4, 49:18, 50:19, 50:22, 53:6

**ATTORNEYS** [8] - 2:5, 2:9, 2:13, 2:16, 2:20, 2:23, 3:5, 3:8
**August** [1] - 29:4
**authority** [4] - 11:5, 13:19, 24:20, 25:2
**automatically** [1] - 58:19
**available** [1] - 51:21
**Avenue** [1] - 2:8
**aware** [1] - 19:25
**AZ's** [1] - 15:9

# B

**balancing** [3] - 6:5, 9:11, 19:13
**ban** [2] - 19:22, 20:1
**Barnes** [1] - 60:2
**base** [23] - 5:22, 6:16, 10:15, 12:9, 12:25, 13:3, 13:4, 13:9, 13:14, 17:14, 20:16, 20:20, 36:8, 38:13, 38:22, 39:2, 40:25, 46:6, 46:17, 46:21, 46:22, 47:1, 50:3
**based** [5] - 11:22, 38:13, 40:12, 54:18, 57:20
**basic** [4] - 5:19, 51:9, 51:16, 51:17
**basis** [9] - 11:24, 16:21, 22:1, 23:9, 31:14, 39:11, 48:1, 48:14, 49:9
**bear** [1] - 16:11
**bears** [1] - 26:11
**become** [1] - 41:11
**Bedford** [1] - 2:15
**beg** [1] - 11:9
**began** [1] - 28:21
**begin** [1] - 27:5
**beginning** [2] - 42:18, 42:19
**behalf** [1] - 5:12
**belief** [1] - 38:15
**benefit** [1] - 29:11
**best** [1] - 61:13
**between** [14] - 7:21, 9:7, 19:6, 25:5, 28:10, 28:12, 36:6, 39:18, 40:8, 41:15, 44:3, 46:4, 53:11, 54:22
**big** [1] - 28:10
**blocking** [2] - 34:8, 34:14
**blur** [1] - 41:17
**borne** [1] - 16:8
**bound** [7] - 10:20, 11:7, 11:10, 11:12, 11:13, 11:18, 22:2
**breached** [1] - 19:8
**Breath** [4] - 5:3, 5:5, 59:24, 60:7
**BREATH** [3] - 1:5, 3:5, 3:8
**brief** [10] - 15:8, 15:16, 20:6, 21:19, 31:3, 39:17, 46:2, 60:12, 60:16, 60:18
**briefing** [8] - 21:12, 21:13, 21:20, 29:16, 29:24, 30:9, 50:20
**briefly** [1] - 50:16
**briefs** [2] - 21:17, 60:15
**bring** [1] - 10:17
**British** [4] - 9:8, 9:10, 9:13, 46:9
**Broad** [1] - 2:18
**Budesonide** [6] - 6:22, 7:4, 7:5, 15:5,

54:9, 54:10
**burden** [11] - 6:2, 17:17, 17:22, 17:24, 18:7, 18:8, 47:23, 48:12, 48:19, 48:20, 49:16
**Burling** [1] - 29:1
**business** [1] - 55:12
**BY** [8] - 2:3, 2:7, 2:11, 2:14, 2:18, 2:21, 3:3, 3:6
**bypass** [1] - 26:19

## C

**CAMDEN** [1] - 1:20
**camera** [3] - 36:22, 36:23, 38:1
**cannot** [1] - 20:11
**capitulated** [1] - 24:11
**capture** [1] - 58:1
**care** [2] - 32:13, 60:10
**carefully** [1] - 47:8
**Carnegie** [1] - 2:11
**case** [85] - 4:4, 6:20, 7:18, 7:24, 8:20, 8:22, 8:24, 9:3, 9:14, 9:18, 9:22, 9:23, 10:10, 10:15, 10:17, 10:20, 10:22, 11:4, 12:1, 12:16, 12:18, 12:22, 13:1, 13:7, 13:21, 14:24, 22:1, 22:5, 22:15, 22:23, 23:2, 23:16, 24:1, 26:14, 27:7, 27:19, 29:14, 29:16, 29:19, 29:21, 29:22, 31:8, 31:13, 31:17, 31:21, 32:15, 36:1, 36:5, 36:11, 37:17, 37:20, 37:21, 38:3, 38:4, 38:5, 38:6, 38:7, 38:9, 38:16, 45:8, 45:12, 45:13, 45:20, 45:21, 46:1, 46:2, 47:2, 47:5, 47:9, 47:23, 49:4, 49:7, 49:18, 49:19, 50:25, 55:9, 55:23, 56:16, 57:8, 57:21
**cases** [28] - 8:12, 11:22, 12:6, 12:11, 12:12, 12:13, 12:24, 13:6, 13:10, 31:3, 31:4, 31:5, 31:8, 31:12, 31:19, 32:16, 34:14, 38:2, 39:3, 45:22, 45:24, 47:4, 47:7, 47:11, 47:15, 49:11
**categories** [1] - 16:12
**categorizing** [1] - 14:9
**category** [3] - 44:14, 44:17, 53:20
**Center** [3] - 2:3, 2:11, 3:3
**certain** [6] - 18:6, 23:8, 26:22, 30:7, 34:10, 41:1
**certainly** [7] - 15:15, 15:23, 22:13, 22:19, 34:11, 34:16, 58:1
**CERTIFICATE** [1] - 1:25
**Certificate** [1] - 61:16
**Certified** [1] - 61:11
**certify** [1] - 61:12
**change** [2] - 43:6, 50:4
**changing** [1] - 57:20
**characterization** [3] - 44:6, 44:12, 49:22
**characterized** [1] - 46:18
**Cheryl** [3] - 7:8, 54:11, 54:14
**chicago** [1] - 3:7
**Chicago** [1] - 5:7
**Christer** [1] - 42:25

**CHRISTINA** [1] - 2:11
**Christina** [1] - 4:17
**chronologically** [1] - 8:7
**circumstance** [1] - 8:17
**circumstances** [2] - 34:11, 41:1
**cited** [11] - 7:18, 7:19, 9:23, 9:24, 12:17, 13:11, 31:5, 38:2, 39:4, 46:15, 46:18
**cites** [3] - 12:7, 16:17, 46:23
**citizen** [4] - 7:9, 8:23, 8:24, 15:1
**citizens** [1] - 8:22
**Civil** [2] - 48:9, 49:5
**CIVIL** [3] - 1:4, 1:10, 1:15
**claim** [1] - 41:12
**claiming** [1] - 46:11
**claims** [1] - 41:4
**clarify** [2] - 10:18, 38:16
**clarity** [1] - 57:3
**clear** [12] - 14:13, 14:18, 28:20, 29:5, 29:8, 32:17, 32:21, 39:16, 45:14, 47:15, 49:16, 57:25
**clearly** [9] - 12:22, 14:16, 20:2, 32:19, 32:20, 36:25, 49:25, 51:3, 56:9
**CLERK** [1] - 4:1
**client** [2] - 19:6, 37:25
**clients** [1] - 49:25
**close** [3] - 8:19, 55:4, 55:12
**co** [1] - 5:6
**co-counsel** [1] - 5:6
**Colors** [1] - 15:1
**comity** [1] - 9:5
**comment** [4] - 29:17, 36:23, 42:1, 54:6
**comments** [1] - 39:1
**commit** [1] - 22:4
**communicating** [1] - 15:1
**communication** [1] - 20:19
**communications** [16] - 9:21, 18:12, 24:9, 30:20, 30:22, 31:9, 31:14, 33:12, 34:19, 34:21, 35:2, 36:6, 39:18, 46:24, 52:10, 54:18
**company** [2] - 14:12, 52:10
**compared** [1] - 16:19
**compel** [4] - 18:19, 58:10, 58:11, 58:20
**compelled** [3] - 19:9, 19:24, 56:10
**compelling** [10] - 10:7, 18:25, 19:2, 19:3, 19:5, 19:15, 20:1, 20:21, 20:22, 49:22
**compellingly** [1] - 18:20
**complete** [3] - 21:12, 21:14, 21:20
**completely** [6] - 25:8, 26:13, 26:18, 28:3, 30:11, 60:16
**complicated** [1] - 28:6
**complied** [1] - 14:19
**concerning** [1] - 43:15
**Concluded** [1] - 60:22
**conclusion** [1] - 42:15
**conclusions** [2] - 47:6, 47:14
**conduct** [4] - 12:24, 13:4, 17:24, 18:9
**conducted** [1] - 52:14
**conference** [1] - 55:20

**confidences** [1] - 19:8
**confidential** [2] - 18:14, 54:16
**conflict** [3] - 9:6, 22:23, 34:12
**conflicts** [2] - 33:4, 33:14
**confusion** [1] - 51:8
**conjunction** [1] - 39:9
**Connecticut** [1] - 2:15
**connection** [11] - 4:4, 43:24, 45:17, 45:18, 52:4, 52:14, 52:16, 52:17, 53:7, 54:22
**consider** [6] - 12:8, 14:13, 17:10, 23:14, 53:12, 57:20
**consideration** [2] - 21:20, 57:7
**considered** [4] - 12:12, 18:13, 22:21, 30:10
**considering** [1] - 9:19
**consistent** [1] - 10:1
**constitute** [2] - 19:4, 56:10
**constitutes** [3] - 15:21, 43:18, 45:10
**construction** [1] - 41:12
**context** [3] - 13:8, 18:19, 54:21
**continuation** [1] - 26:19, 26:20, 51:11
**continue** [6] - 12:5, 17:7, 29:9, 56:23, 58:16, 58:18
**CONTINUED** [1] - 3:1
**continues** [2] - 45:20, 56:21
**continuing** [3] - 32:4, 51:19, 56:13
**contrary** [2] - 47:14, 47:18
**COOPER** [1] - 1:20
**Cooperation** [1] - 46:12
**copy** [4] - 16:11, 24:25, 27:2, 28:24
**CORP** [1] - 1:11
**Corp** [4] - 8:12, 10:2, 18:23, 49:19
**correct** [8] - 18:3, 21:25, 26:11, 27:20, 31:4, 35:18, 40:11, 42:5, 58:25, 60:5, 60:6, 60:7
**cough** [1] - 6:24
**counsel** [18] - 5:6, 23:10, 30:21, 30:22, 30:23, 31:2, 33:12, 34:24, 34:25, 36:7, 36:14, 37:10, 50:24, 51:3, 51:5, 56:23, 60:19
**count** [1] - 52:1
**counterparts** [2] - 10:13, 22:11
**counties** [1] - 41:24
**countries** [21] - 8:13, 8:16, 15:5, 25:10, 25:13, 25:14, 25:19, 26:2, 26:4, 26:7, 42:3, 42:6, 42:10, 50:21, 50:23, 52:1, 52:18, 52:22, 53:1, 53:3
**country** [11] - 14:25, 26:16, 31:7, 31:9, 31:11, 31:15, 39:9, 41:16, 41:21, 50:1, 52:23
**country's** [3] - 30:8, 53:5, 53:6
**counts** [3] - 28:16, 51:23, 51:25
**couple** [6] - 21:21, 22:7, 22:8, 33:19, 50:16, 50:18
**course** [3] - 8:14, 15:13, 49:4
**Court** [36] - 5:20, 5:25, 6:6, 9:4, 11:10, 11:12, 11:13, 11:17, 11:21, 17:9, 18:5, 18:9, 19:14, 22:2, 22:4, 25:7, 30:9,

31:25, 32:3, 33:1, 33:20, 33:21, 35:11, 35:13, 35:15, 35:16, 35:20, 37:13, 37:15, 45:8, 49:24, 52:4, 56:24, 59:7, 61:10, 61:11

**court** [30] - 8:21, 9:9, 9:11, 9:18, 9:20, 9:24, 10:3, 11:2, 12:19, 13:3, 18:22, 18:23, 19:17, 19:20, 19:24, 20:11, 21:17, 29:19, 29:22, 33:25, 34:1, 34:9, 34:13, 46:2, 46:5, 46:14, 46:16, 46:21

**COURT** [112] - 1:1, 4:2, 4:13, 4:15, 4:20, 4:22, 5:2, 5:9, 5:12, 5:15, 6:13, 6:24, 7:2, 10:19, 11:7, 11:10, 11:15, 12:5, 13:15, 13:19, 14:1, 14:7, 15:8, 15:13, 16:22, 17:4, 17:6, 17:9, 19:10, 19:12, 20:23, 20:25, 21:3, 21:7, 23:19, 25:25, 26:5, 26:9, 27:7, 27:12, 27:15, 27:18, 28:20, 29:2, 29:5, 29:8, 30:2, 31:23, 33:16, 35:4, 35:6, 35:10, 35:13, 35:16, 35:21, 36:20, 37:8, 37:19, 37:24, 38:7, 38:17, 39:25, 40:2, 40:7, 40:10, 40:17, 40:21, 40:23, 41:19, 42:1, 42:7, 43:11, 43:14, 44:14, 44:17, 44:23, 45:1, 45:4, 45:6, 45:17, 47:3, 47:19, 47:21, 48:7, 48:21, 49:4, 49:7, 49:13, 50:13, 50:15, 51:13, 52:2, 53:8, 54:3, 54:24, 55:2, 55:4, 55:16, 55:22, 55:25, 56:22, 57:5, 58:2, 58:6, 58:8, 58:16, 59:1, 59:11, 59:18, 59:22, 59:25, 60:9

**Court's** [3] - 10:19, 11:7, 11:18

**COURTHOUSE** [1] - 1:19

**courts** [10] - 9:17, 10:24, 12:8, 13:2, 17:22, 18:21, 20:2, 38:2, 39:4

**cover** [1] - 28:7

**covered** [1] - 32:6

**credence** [1] - 6:9

**custody** [1] - 21:15

**cut** [1] - 9:5

## D

**damage** [3] - 49:21, 50:11, 56:12

**data** [2] - 16:13, 16:16

**date** [22] - 14:17, 16:2, 16:5, 28:11, 28:12, 28:13, 28:16, 29:12, 43:7, 43:15, 44:3, 44:4, 44:5, 44:6, 44:12, 51:24, 51:25, 52:1, 57:13

**DATE** [1] - 61:17

**dates** [5] - 37:2, 41:13, 43:21, 51:10, 51:20

**David** [2] - 4:19, 21:2

**DAVID** [1] - 2:14

**days** [2] - 21:21, 57:14

**deal** [2] - 53:25, 60:1

**dealt** [2] - 12:19, 30:9

**decide** [2] - 38:18, 59:3

**decided** [1] - 37:15

**deciding** [1] - 5:21

**decision** [16] - 10:3, 10:6, 12:4, 19:17, 22:23, 23:7, 30:1, 30:6, 37:23, 38:11,

38:14, 38:23, 55:6, 56:24

**decisions** [4] - 10:25, 11:8, 11:11, 11:13

**declaration** [9] - 10:11, 14:20, 18:11, 27:3, 29:1, 37:3, 42:25, 49:16, 49:17

**declarations** [1] - 28:25

**declined** [1] - 13:3

**DEFENDANT** [6] - 2:13, 2:16, 2:20, 2:23, 3:5, 3:8

**defendant** [4] - 4:18, 4:23, 5:5, 46:9

**Defendant** [3] - 1:6, 1:12, 1:17

**defendants** [2] - 4:16, 59:22

**Denise** [2] - 4:10, 5:14

**DENISE** [1] - 2:7

**deny** [6] - 57:6, 58:10, 58:13, 58:20, 59:8

**denying** [1] - 60:13

**DEPUTY** [1] - 4:1

**describe** [2] - 47:13, 47:16

**described** [1] - 13:24

**describing** [1] - 37:4

**description** [1] - 40:13

**descriptions** [1] - 39:16

**designate** [3] - 8:3, 26:7, 43:14

**designated** [17] - 14:12, 14:16, 14:20, 15:20, 24:19, 25:11, 25:18, 26:1, 26:2, 41:21, 42:2, 42:3, 42:6, 42:8, 42:17, 42:20, 53:24

**designates** [2] - 25:13

**designating** [4] - 16:1, 42:10, 43:18, 45:9

**designation** [2] - 8:4, 15:19

**detail** [1] - 24:24

**determine** [1] - 37:9

**developed** [2] - 15:4, 54:11

**developing** [1] - 7:10

**development** [2] - 6:22, 23:24

**difference** [7] - 7:21, 28:10, 28:12, 28:13, 29:10, 40:21, 44:2

**different** [14] - 8:17, 12:3, 22:16, 25:10, 26:18, 28:9, 30:11, 30:18, 30:24, 50:23, 51:2, 51:21, 52:18, 53:20

**directly** [5] - 10:4, 10:13, 10:23, 11:6, 54:14

**disagree** [1] - 39:1

**disclose** [1] - 54:16

**disclosed** [3] - 12:13, 19:9, 50:10

**disclosure** [4] - 19:5, 20:4, 50:8, 56:10

**discourse** [1] - 19:6

**discovered** [1] - 45:8

**discovery** [8] - 9:12, 9:22, 19:19, 29:19, 33:24, 34:3, 48:10, 48:24

**discuss** [1] - 23:17

**discussed** [1] - 29:15

**discussing** [1] - 29:15

**discussion** [2] - 12:20, 45:2

**discussions** [3] - 8:11, 49:24, 54:17

**disingenuous** [1] - 35:3

**dispute** [7] - 15:9, 15:14, 16:22, 17:4, 17:5, 17:25, 20:15

**dissolved** [2] - 58:19

**distinction** [5] - 7:17, 25:5, 41:15, 41:17, 53:11

**distinguish** [1] - 40:7

**distinguishable** [1] - 8:11

**distinguished** [2] - 11:22, 16:18

**distinguishing** [1] - 12:2

**District** [6] - 23:4, 23:5, 23:6, 23:7, 61:11

**DISTRICT** [2] - 1:1, 1:1

**district** [6] - 10:23, 11:6, 12:8, 22:1, 59:12, 60:3

**districts** [2] - 10:25, 11:5

**Docket** [2] - 28:23, 29:1

**docket** [2] - 45:4, 60:15

**document** [5] - 24:10, 29:6, 37:25, 40:13, 45:1

**documented** [1] - 29:2

**documents** [98] - 7:14, 9:19, 10:9, 10:11, 12:14, 12:19, 17:13, 17:19, 18:1, 19:1, 19:4, 19:8, 20:13, 20:16, 20:20, 21:14, 21:21, 21:25, 22:9, 22:13, 22:14, 22:20, 22:23, 22:24, 23:1, 23:5, 23:8, 23:9, 23:13, 24:5, 27:18, 27:21, 27:24, 27:25, 28:1, 28:2, 29:20, 29:23, 30:1, 30:7, 30:11, 30:14, 30:18, 31:6, 31:7, 31:10, 32:6, 34:9, 34:10, 35:23, 35:24, 36:5, 36:13, 36:15, 36:18, 37:5, 37:13, 38:1, 38:12, 38:15, 38:18, 38:24, 39:5, 39:14, 39:21, 39:23, 40:3, 40:12, 40:14, 46:6, 46:10, 46:17, 46:21, 46:22, 47:13, 47:14, 47:16, 47:22, 48:1, 48:5, 48:10, 48:11, 50:2, 50:3, 50:5, 50:7, 56:15, 56:17, 57:12, 58:10, 58:11, 58:13, 58:20, 59:3, 59:8

**dominated** [1] - 9:12

**done** [4] - 24:21, 24:22, 25:9, 54:15

**DONIO** [1] - 1:22

**doubt** [1] - 41:22

**downplayed** [1] - 19:20

**Dr** [4] - 13:4, 18:11, 19:24, 60:2

**draft** [10] - 12:14, 39:15, 39:17, 39:19, 53:11, 53:13, 53:15, 53:21, 53:22

**drafted** [1] - 52:19

**draw** [3] - 42:15, 47:6, 47:14

**dreams** [1] - 46:16

**drug** [1] - 15:4

**Duane** [1] - 4:25

**DUANE** [1] - 2:17

**dubious** [1] - 34:17

**due** [1] - 23:3

## E

**earliest** [1] - 28:11

**easily** [1] - 42:8

**effect** [7] - 15:17, 16:2, 16:6, 43:9, 43:15, 46:20, 49:11

**effective** [4] - 28:11, 44:4, 44:5, 44:12
**Eisai** [1] - 13:4
**either** [11] - 11:8, 11:11, 11:14, 23:10, 24:24, 39:23, 44:13, 45:23, 57:6, 58:9, 58:17
**Elkin** [3] - 7:8, 54:12, 54:15
**Elkins** [1] - 7:15
**employee** [2] - 37:4
**employees** [1] - 36:6
**en** [1] - 60:11
**encourage** [1] - 49:24
**end** [10] - 22:22, 23:12, 23:15, 29:18, 29:21, 29:23, 43:23, 49:14, 55:13, 60:17
**English** [1] - 4:8
**ENGLISH** [1] - 2:2
**enter** [2] - 26:15, 60:16
**entering** [3] - 26:21, 26:25, 27:8
**entitled** [1] - 9:9
**entries** [1] - 22:8
**erred** [2] - 11:17, 39:13
**erroneous** [1] - 11:23
**error** [1] - 22:4
**Escanlar** [1] - 5:5
**ESCANLAR** [2] - 3:3, 5:4
**especially** [1] - 7:23
**ESQUIRE** [9] - 2:3, 2:7, 2:7, 2:11, 2:14, 2:18, 2:21, 3:3, 3:6
**essentially** [1] - 29:10
**established** [1] - 56:9
**European** [2] - 7:15, 50:9
**evidence** [7] - 18:6, 35:19, 35:21, 35:22, 37:16, 38:3, 38:4
**eviscerates** [1] - 48:18
**exact** [1] - 22:10
**exactly** [2] - 36:4, 40:23
**examples** [1] - 54:14
**exception** [1] - 31:11
**excluding** [1] - 34:21
**excuse** [1] - 11:2
**excused** [1] - 49:8
**expectations** [1] - 30:25
**expected** [1] - 36:11
**expecting** [1] - 53:3
**expedited** [1] - 59:9
**experts** [1] - 60:1
**explained** [3] - 33:5, 33:22, 52:16
**explanation** [1] - 26:12
**explicitly** [3] - 21:17, 31:4, 31:5
**expressed** [1] - 51:3
**extend** [1] - 55:14
**extended** [6] - 50:24, 51:3, 51:4, 55:11, 56:20, 57:4
**extending** [1] - 56:4
**extent** [1] - 24:17
**extraordinarily** [1] - 18:14
**extremely** [1] - 30:14

# F

**face** [15] - 13:24, 16:9, 16:13, 16:15, 16:18, 22:16, 23:16, 28:17, 28:21, 36:2, 36:4, 44:22, 51:8, 51:9, 51:16
**facilities** [1] - 54:8
**facility** [1] - 54:13
**fact** [30] - 6:7, 6:19, 8:2, 8:9, 8:24, 9:15, 9:17, 10:24, 12:1, 12:14, 12:16, 14:13, 14:25, 15:19, 16:8, 18:14, 18:18, 19:3, 19:21, 19:23, 20:19, 23:23, 32:4, 39:8, 42:16, 43:5, 43:6, 46:7, 50:2, 53:4
**factor** [1] - 33:1
**facts** [8] - 6:1, 14:23, 18:6, 42:16, 43:25, 45:16, 46:3, 52:5
**factual** [4] - 5:21, 11:21, 18:9, 39:3
**fallacy** [1] - 25:20
**falls** [1] - 53:5
**family** [1] - 51:10
**far** [4] - 13:10, 19:25, 28:13, 31:3
**favor** [1] - 9:6
**FDA** [1] - 7:4
**Federal** [3] - 48:9, 48:10, 49:5
**federal** [2] - 32:10, 47:25
**fellow** [1] - 15:2
**felt** [1] - 9:11
**few** [1] - 21:24
**fifth** [2] - 32:25, 33:1
**file** [12] - 16:5, 24:20, 26:20, 27:3, 41:12, 42:18, 44:9, 44:10, 47:23, 52:21, 53:3, 60:14
**filed** [32] - 4:4, 7:22, 8:5, 8:10, 14:14, 14:15, 14:16, 14:23, 15:22, 15:24, 16:3, 16:24, 17:1, 24:18, 25:2, 25:17, 26:13, 27:10, 29:3, 34:1, 35:18, 41:24, 42:5, 43:3, 43:5, 43:8, 44:9, 52:13, 52:15, 53:2, 53:23
**filing** [45] - 7:24, 8:6, 14:18, 15:18, 16:2, 16:5, 21:5, 21:8, 22:2, 24:16, 25:12, 26:13, 26:18, 27:1, 28:11, 28:12, 28:16, 29:12, 35:11, 35:14, 35:17, 37:3, 37:12, 38:25, 39:14, 39:22, 40:4, 40:14, 40:16, 40:17, 41:7, 42:21, 43:7, 43:11, 43:15, 43:20, 49:2, 51:24, 51:25, 52:1, 52:20, 59:6, 60:11, 60:16
**filings** [7] - 22:19, 23:22, 24:6, 26:25, 28:3, 28:6, 31:21
**Finally** [1] - 46:8
**finally** [1] - 22:22
**fine** [1] - 59:17
**firms** [1] - 36:14
**first** [16] - 5:20, 6:14, 6:19, 12:12, 21:4, 21:5, 21:10, 23:21, 23:23, 31:25, 33:7, 33:20, 34:7, 35:8, 39:2, 52:11
**five** [1] - 31:4
**Flaherty** [1] - 4:8
**FLAHERTY** [2] - 2:3, 4:7
**Floor** [1] - 3:3
**flow** [1] - 54:14

**focus** [2] - 8:14, 52:4
**focusing** [1] - 44:5, 44:6
**folks** [1] - 41:7
**followed** [1] - 22:4
**following** [2] - 6:18, 43:17
**FOR** [9] - 1:1, 2:5, 2:9, 2:13, 2:16, 2:20, 2:23, 3:5, 3:8
**foregoing** [1] - 61:12
**foreign** [32] - 7:19, 7:20, 8:13, 8:14, 8:15, 8:16, 9:5, 9:18, 9:25, 10:12, 12:8, 12:15, 12:22, 12:25, 13:8, 14:22, 16:10, 16:12, 16:20, 22:11, 24:10, 24:14, 28:3, 31:6, 31:15, 32:11, 41:16, 44:7, 44:13, 44:18, 46:25, 49:20
**forget** [1] - 22:10
**form** [2] - 7:6, 27:2
**former** [1] - 37:4
**forth** [2] - 15:1, 61:13
**four** [1] - 2:3
**fourth** [1] - 33:1
**frank** [2] - 19:6, 49:24
**frankly** [1] - 31:18
**free** [5] - 9:12, 9:22, 19:19, 34:11, 34:16
**front** [1] - 41:25
**future** [1] - 52:23

# G

**game** [1] - 21:19
**Gateway** [2] - 2:3, 3:3
**gather** [1] - 36:15
**general** [2] - 40:12, 48:23
**generally** [2] - 48:23, 60:17
**generated** [1] - 39:5
**German** [3] - 12:20, 25:24, 42:9
**GERRY** [1] - 1:19
**GILMAN** [1] - 2:21
**Golden** [7] - 8:12, 9:23, 12:16, 18:22, 47:5, 47:9, 49:19
**governed** [6] - 7:20, 34:1, 47:25, 48:8, 48:22, 49:4
**governs** [1] - 33:13
**grant** [7] - 56:23, 57:11, 57:19, 58:5, 58:9, 58:12, 59:1
**granted** [2] - 35:13, 35:17
**Gray** [3] - 4:10, 4:11, 4:12
**GRAY** [1] - 2:6
**grounds** [1] - 5:19
**guess** [6] - 13:22, 31:25, 32:23, 32:25, 44:9, 55:17

# H

**hairs** [1] - 53:19
**half** [2] - 32:23, 33:7
**hand** [2] - 37:11, 38:19
**handling** [1] - 60:13
**hard** [1] - 48:3

**harm** [14] - 17:18, 18:2, 19:7, 32:1, 32:14, 32:15, 32:17, 32:18, 32:21, 47:18, 50:8, 50:11, 56:4
**head** [1] - 42:18
**heading** [1] - 16:16
**hear** [4] - 5:16, 6:11, 6:13, 21:3
**hearing** [3] - 21:21, 55:20, 60:3
**HEINZ** [1] - 3:6
**Heinz** [1] - 5:6
**held** [2] - 12:3, 31:25
**HENDLER** [10] - 2:7, 55:10, 57:2, 57:24, 58:4, 58:7, 58:14, 59:17, 59:20, 60:5
**Hendler** [1] - 4:11
**hereby** [1] - 61:12
**hereinbefore** [1] - 61:13
**higher** [2] - 17:22, 18:4
**highly** [1] - 42:24
**Hill** [1] - 4:17
**HILL** [1] - 2:10
**historical** [1] - 51:17
**history** [2] - 41:12, 51:10
**hold** [1] - 50:21
**holding** [1] - 46:19
**holdings** [1] - 47:15
**holds** [1] - 13:22
**honest** [2] - 45:13, 45:21
**Honor** [130] - 4:7, 4:18, 4:21, 5:1, 5:4, 5:8, 5:11, 5:14, 5:17, 5:18, 6:11, 7:1, 7:17, 7:18, 8:5, 8:19, 9:3, 9:14, 9:24, 10:5, 10:7, 10:16, 10:21, 10:25, 11:2, 11:12, 11:20, 11:25, 12:3, 12:10, 12:17, 13:6, 13:12, 13:18, 13:21, 14:5, 14:6, 15:12, 15:24, 16:12, 16:21, 17:2, 17:11, 17:13, 17:15, 17:17, 17:20, 17:23, 18:8, 18:18, 18:21, 18:24, 19:2, 19:14, 20:5, 20:24, 21:2, 21:4, 21:24, 23:17, 23:20, 24:12, 24:25, 28:24, 29:7, 31:20, 31:24, 32:7, 33:5, 35:5, 35:7, 35:12, 35:18, 36:3, 36:11, 36:12, 36:19, 36:21, 37:6, 37:18, 37:22, 38:10, 38:14, 38:16, 38:21, 39:10, 40:20, 41:18, 43:22, 44:4, 44:16, 45:5, 45:12, 45:15, 46:1, 47:7, 47:14, 48:3, 48:17, 49:12, 50:14, 50:17, 52:7, 52:16, 53:10, 54:1, 54:5, 55:1, 55:3, 55:10, 55:11, 55:15, 55:18, 55:21, 56:1, 56:3, 56:6, 56:19, 57:2, 57:3, 57:4, 58:14, 58:25, 59:5, 59:17, 59:21, 59:23, 59:24, 60:6, 60:7
**Honor's** [5] - 5:19, 10:17, 12:1, 33:5, 35:25
**hope** [1] - 55:6
**hoping** [1] - 47:25
**house** [15] - 20:8, 20:10, 30:19, 30:22, 30:23, 31:2, 33:12, 34:25, 35:1, 36:7, 39:19, 50:24, 51:3, 51:5
**Hubbard** [1] - 3:7

**I**

**i.e** [1] - 16:20
**idea** [2] - 22:12, 45:22
**identified** [3] - 32:20, 44:21, 44:23
**identifies** [2] - 16:9, 16:14
**identify** [1] - 19:2
**Illinois** [1] - 3:7
**immediate** [1] - 57:14
**implicated** [1] - 39:7
**implied** [1] - 36:24
**imply** [1] - 41:23
**implying** [1] - 22:25
**importance** [2] - 49:18, 49:22
**important** [7] - 14:5, 14:8, 14:10, 18:14, 18:21, 42:24, 43:25
**improper** [1] - 11:3, 21:10, 21:22
**improperly** [1] - 33:2
**in-house** [15] - 20:8, 20:10, 30:19, 30:22, 30:23, 31:2, 33:12, 34:25, 35:1, 36:7, 39:19, 50:24, 51:3, 51:5
**INC** [2] - 1:11, 1:16
**incidental** [2] - 5:23, 52:17
**incidentally** [1] - 24:7
**inclined** [1] - 55:14
**include** [2] - 37:13, 59:9
**included** [1] - 51:9
**including** [2] - 18:10, 54:8
**incorrect** [1] - 56:15
**indeed** [4] - 6:17, 10:12, 13:1, 18:7
**indefinitely** [3] - 56:13, 56:20, 58:24
**independent** [1] - 25:22
**indicate** [2] - 18:6, 42:22
**indicated** [1] - 27:13
**indicates** [1] - 17:3
**indication** [2] - 14:18, 22:15
**individual** [1] - 10:11
**influence** [3] - 30:23, 31:2, 51:6
**inform** [1] - 37:15
**information** [7] - 11:25, 18:15, 19:25, 51:9, 51:17, 51:18, 51:20
**infringes** [1] - 24:3
**injured** [1] - 19:5
**injuries** [1] - 18:17
**injury** [1] - 6:2
**input** [3] - 7:13, 7:15, 54:19
**inquiry** [3] - 6:19, 38:22, 39:3
**inspection** [2] - 36:22, 36:23
**instance** [1] - 30:11
**intents** [2] - 26:22, 26:24
**interest** [36] - 5:23, 6:5, 6:6, 6:8, 6:17, 8:21, 9:12, 9:13, 9:15, 9:16, 9:21, 9:22, 9:24, 9:25, 10:1, 15:3, 19:15, 19:18, 19:19, 19:20, 20:3, 20:22, 29:18, 29:23, 29:24, 33:13, 33:23, 33:25, 34:2, 34:4, 34:5, 34:19, 35:1, 39:7, 41:10, 42:22
**interests** [3] - 9:12, 19:6, 33:23

**international** [20] - 15:21, 15:23, 15:25, 16:2, 24:20, 25:12, 27:9, 42:1, 43:12, 43:13, 43:15, 43:17, 44:15, 44:19, 44:21, 45:9, 45:10, 46:12, 52:13, 53:23
**interpretation** [1] - 21:25
**intimately** [1] - 7:10
**invention** [12] - 6:21, 6:23, 7:3, 7:6, 7:12, 8:25, 14:24, 15:6, 39:8, 39:12, 42:19, 54:23
**inventor** [6] - 7:9, 8:23, 39:9, 52:5, 54:7, 54:12
**inventors** [9] - 8:8, 14:25, 15:2, 27:6, 39:10, 39:19, 50:9, 52:8, 52:11
**inventorship** [1] - 46:8
**invoke** [1] - 30:12
**involve** [1] - 10:14
**involved** [7] - 7:10, 8:24, 15:2, 20:16, 39:6, 41:2, 41:10
**involvement** [1] - 8:21
**involving** [1] - 46:24
**irrelevant** [1] - 44:4
**isolated** [2] - 29:16, 45:21
**Israeli** [1] - 12:20
**issue** [26] - 9:19, 10:10, 10:23, 12:14, 14:11, 17:13, 22:17, 23:21, 27:9, 27:19, 31:10, 36:23, 38:24, 45:24, 46:6, 46:10, 46:22, 47:13, 47:16, 47:23, 48:4, 48:12, 50:25, 55:6, 56:21, 60:2
**issued** [1] - 55:15
**issues** [6] - 5:21, 6:1, 9:5, 33:21, 41:2, 56:2
**Italian** [3] - 12:18, 12:21
**itself** [3] - 13:3, 14:1, 24:15

**J**

**James** [3] - 14:20, 41:6, 42:18
**Japan** [1] - 26:16
**Japanese** [2] - 25:23, 42:9
**Jersey** [8] - 2:4, 2:12, 2:19, 3:4, 10:24, 11:14, 61:11, 61:12
**JERSEY** [2] - 1:1, 1:20
**John** [1] - 4:8
**JOHN** [2] - 1:19, 2:3
**JOHNSTON** [1] - 2:14
**Johnston** [1] - 4:19
**Jones** [2] - 36:4, 38:12
**judge** [5] - 10:15, 11:4, 37:15, 59:12, 60:3
**JUDGE** [1] - 1:23
**Judge** [3] - 11:2, 36:4, 38:11
**judicially** [1] - 56:10
**Judy** [1] - 4:9
**June** [1] - 61:17

## K

**KAPLAN** [1] - 2:21
**Katherine** [1] - 5:5
**KATHERINE** [1] - 3:3
**keep** [4] - 6:25, 28:7, 30:3, 44:15
**keeps** [2] - 51:21, 52:18
**key** [2] - 5:21, 6:1
**Korean** [10] - 9:19, 9:20, 19:17, 30:1, 30:7, 30:10, 30:11, 30:13, 30:16

## L

**L'arrivee** [3] - 7:8, 54:12, 54:15
**L'arrivee-Elkin** [3] - 7:8, 54:12, 54:15
**language** [3] - 14:2, 22:10, 43:20
**largest** [1] - 42:23
**last** [4] - 10:8, 21:5, 35:9, 55:19
**late** [3] - 21:11, 21:19, 37:12
**law** [81] - 6:3, 6:7, 6:9, 7:18, 7:20, 8:1, 8:14, 8:16, 9:5, 9:6, 9:7, 9:8, 9:10, 9:18, 9:20, 9:25, 11:17, 12:20, 12:21, 13:13, 13:21, 14:19, 17:13, 17:15, 17:16, 17:24, 19:1, 19:18, 19:22, 20:2, 20:6, 20:12, 22:3, 22:4, 23:16, 25:19, 29:15, 30:12, 30:13, 30:16, 30:19, 31:21, 32:11, 32:24, 33:4, 33:6, 33:7, 33:8, 33:9, 33:10, 33:14, 34:8, 34:13, 34:20, 34:22, 34:23, 34:25, 35:2, 41:2, 41:4, 41:5, 41:10, 45:8, 47:17, 47:21, 48:19, 48:23, 49:2, 49:7, 49:18, 49:20, 50:7, 50:25, 51:1, 53:1, 53:6
**laws** [2] - 26:11, 30:8
**lawyer** [2] - 19:7, 50:9
**lawyers** [6] - 8:8, 10:14, 20:8, 20:10, 39:19, 49:24
**leads** [1] - 57:12
**least** [4] - 14:24, 39:8, 55:13, 60:12
**leave** [4] - 35:10, 35:13, 35:16, 37:13
**led** [3] - 6:21, 9:1, 41:18
**legal** [7] - 5:21, 6:1, 8:9, 11:21, 18:10, 18:13, 39:6
**less** [1] - 29:13
**lesson** [1] - 47:6
**letter** [8] - 10:8, 21:18, 35:8, 35:19, 37:12, 46:13, 46:17, 50:20
**liberal** [1] - 33:24
**liberally** [1] - 34:3
**lift** [1] - 56:19
**light** [2] - 20:13, 41:4
**LIMITED** [3] - 1:5, 3:5, 3:8
**Limited** [1] - 5:3
**lines** [1] - 59:15
**LISA** [3] - 1:24, 61:10, 61:15
**listed** [2] - 28:18, 48:4
**lists** [1] - 51:23
**litigation** [5] - 34:1, 36:10, 37:14, 47:24, 48:8

**live** [1] - 54:13
**lives** [1] - 7:9
**LLC** [2] - 3:2, 5:5
**locate** [1] - 10:9
**log** [11] - 7:13, 7:14, 10:10, 22:8, 27:21, 27:25, 37:2, 39:17, 40:12, 48:5, 54:20
**logs** [1] - 36:20
**look** [20] - 7:12, 12:16, 16:10, 20:5, 20:12, 20:18, 22:6, 23:13, 25:1, 30:8, 30:15, 33:9, 37:5, 37:16, 38:18, 39:3, 39:4, 42:13, 42:16
**looked** [4] - 35:24, 56:1, 56:8, 60:9
**looking** [4] - 10:24, 31:6, 33:13, 37:2
**Loring** [16] - 4:10, 5:14, 5:15, 23:21, 23:22, 25:5, 28:21, 29:15, 29:25, 30:6, 31:12, 50:18, 51:21, 52:18, 53:10, 54:4
**LORING** [69] - 2:7, 4:14, 5:11, 5:14, 5:17, 6:14, 7:1, 7:3, 10:21, 11:9, 11:12, 11:20, 12:6, 13:18, 13:21, 14:5, 14:8, 15:12, 15:23, 17:1, 17:5, 17:8, 17:11, 19:11, 19:13, 20:24, 24:12, 28:24, 29:3, 35:7, 35:12, 35:15, 35:18, 35:22, 36:21, 37:18, 37:21, 38:6, 38:8, 38:21, 40:1, 40:3, 40:9, 40:16, 40:20, 40:22, 40:24, 41:22, 42:13, 43:13, 43:22, 44:16, 44:20, 44:24, 45:3, 45:5, 45:12, 45:18, 47:4, 47:20, 48:3, 48:14, 49:1, 49:6, 49:11, 49:14, 50:14, 54:5, 55:3
**Loring's** [2] - 33:16, 52:2
**lost** [2] - 24:8, 36:15
**louder** [1] - 51:14
**LP** [3] - 1:2, 1:7, 1:13
**LYNN** [1] - 2:11

## M

**magistrate** [1] - 11:4
**MAGISTRATE** [1] - 1:23
**maintained** [1] - 23:8
**manufactured** [1] - 54:10
**manufacturing** [1] - 54:11
**MARCUS** [3] - 1:24, 61:10, 61:15
**MARIE** [1] - 1:22
**market** [4] - 15:4, 15:5, 42:20, 42:23
**Markman** [1] - 60:2
**Massachusetts** [2] - 7:9, 54:9
**masse** [1] - 60:11
**matter** [8] - 18:12, 31:17, 32:13, 37:14, 43:23, 53:12, 61:13
**MAY** [1] - 1:21
**MAZZOCHI** [1] - 3:6
**Mazzochi** [1] - 5:7
**McCarter** [2] - 2:2, 4:8
**mean** [9] - 16:7, 22:24, 30:20, 31:7, 37:19, 40:7, 52:15, 53:12, 55:23
**means** [1] - 22:15
**meant** [2] - 32:3, 41:23

**meantime** [1] - 56:18
**meet** [5] - 11:16, 18:7, 18:8, 32:10, 32:12
**meeting** [1] - 8:2
**meets** [1] - 41:3
**mention** [1] - 53:9
**mentioned** [5] - 14:14, 23:23, 32:7, 32:8, 50:18
**met** [2] - 6:2, 49:15
**methods** [1] - 7:8
**microphone** [1] - 30:3
**might** [5] - 26:23, 35:20, 41:1, 42:15, 52:23
**mind** [8] - 8:9, 37:6, 41:6, 41:10, 52:20, 52:21, 52:22, 57:20
**minute** [2] - 21:5, 33:10
**minutes** [1] - 21:24
**misread** [1] - 23:5
**miss** [1] - 32:4
**Molino** [1] - 5:7
**MOLINO** [1] - 3:6
**moment** [3] - 14:14, 16:12, 38:10
**MONDAY** [1] - 1:21
**MORRIS** [1] - 2:17
**Morris** [1] - 4:25
**most** [4] - 13:22, 15:15, 55:23, 55:24
**motion** [28] - 4:4, 15:11, 17:7, 18:19, 21:13, 21:16, 21:20, 21:22, 22:2, 22:5, 32:5, 35:24, 36:2, 36:17, 47:24, 48:13, 48:16, 49:2, 57:6, 57:7, 57:9, 57:11, 57:19, 58:9, 58:11, 58:12, 59:8
**motions** [3] - 60:2, 60:4, 60:14
**move** [7] - 13:12, 23:18, 23:19, 27:15, 31:21, 31:23, 32:9
**moved** [1] - 36:14
**moving** [2] - 18:4, 45:20
**MR** [51] - 4:7, 4:21, 5:1, 5:8, 21:2, 21:4, 21:9, 23:20, 24:13, 26:3, 26:6, 26:10, 27:11, 27:14, 27:16, 27:20, 29:7, 29:10, 30:5, 31:24, 33:19, 35:5, 42:5, 42:12, 50:16, 51:15, 52:7, 53:9, 55:1, 55:10, 55:17, 55:24, 56:1, 57:2, 57:3, 57:24, 58:4, 58:7, 58:14, 58:25, 59:5, 59:16, 59:17, 59:20, 59:21, 59:23, 59:24, 60:5, 60:6, 60:7, 60:8
**MS** [71] - 4:14, 4:17, 4:24, 5:4, 5:11, 5:14, 5:17, 6:14, 7:1, 7:3, 10:21, 11:9, 11:12, 11:20, 12:6, 13:18, 13:21, 14:5, 14:8, 15:12, 15:23, 17:1, 17:5, 17:8, 17:11, 19:11, 19:13, 20:24, 24:12, 28:24, 29:3, 35:7, 35:12, 35:15, 35:18, 35:22, 36:21, 37:18, 37:21, 38:6, 38:8, 38:21, 40:1, 40:3, 40:9, 40:16, 40:20, 40:22, 40:24, 41:22, 42:13, 43:13, 43:22, 44:16, 44:20, 44:24, 45:3, 45:5, 45:12, 45:18, 47:4, 47:20, 48:3, 48:14, 49:1, 49:6, 49:11, 49:14, 50:14, 54:5, 55:3
**Mulberry** [1] - 2:4
**multi** [1] - 51:11

multiple [1] - 51:19
must [1] - 8:1

## N

N.J [1] - 61:16
name [1] - 4:7
named [1] - 8:23
national [5] - 16:3, 26:15, 26:21, 26:25, 27:8
nature [3] - 20:18, 40:13, 50:5
necessary [1] - 37:10
need [16] - 14:19, 18:24, 20:18, 25:23, 27:4, 27:5, 30:17, 32:4, 32:12, 32:16, 38:19, 42:16, 48:24, 55:8, 56:25, 59:18
never [4] - 19:24, 20:3, 27:23, 50:9
NEW [2] - 1:1, 1:20
new [10] - 11:25, 26:18, 27:1, 27:2, 27:3, 27:4, 35:19, 35:21, 35:22
New [15] - 2:4, 2:8, 2:12, 2:19, 3:4, 10:24, 11:14, 22:15, 23:4, 23:5, 23:6, 23:7, 61:11, 61:12
Newark [3] - 2:4, 2:19, 3:4
nice [1] - 60:20
NJ [1] - 2:22
NO [3] - 1:5, 1:10, 1:16
none [4] - 11:14, 12:12, 12:13, 22:12
nonsense [1] - 46:5
nonsterile [1] - 7:6
North [1] - 2:22
Norweigian [1] - 12:20
Notary [1] - 61:11
note [2] - 58:21, 58:22
notes [1] - 61:12
nothing [9] - 11:6, 20:24, 44:11, 45:25, 55:1, 57:21, 59:20, 59:21, 59:24
Nothing [1] - 59:23
notion [2] - 43:1, 49:23
Number [2] - 28:23, 29:1
number [8] - 4:5, 12:10, 16:13, 16:15, 17:3, 42:3, 45:4, 51:10
numerous [1] - 28:22

## O

object [3] - 21:9, 55:17, 58:22
objection [1] - 55:16
objections [1] - 37:8
objects [1] - 60:3
obligation [1] - 32:9
obtain [1] - 37:24
obviously [2] - 22:17, 48:9
occur [1] - 32:15
occurred [1] - 8:6
odd [2] - 25:19, 34:22
Odone [19] - 8:20, 9:3, 9:9, 10:3, 10:20, 12:2, 12:3, 13:7, 29:16, 33:25, 45:20,

45:24, 45:25, 46:16, 46:18, 46:23, 47:15
OF [1] - 1:1
offer [2] - 36:21, 36:22
office [21] - 14:3, 16:25, 17:1, 17:3, 24:19, 24:22, 25:3, 26:14, 26:15, 27:10, 43:1, 43:3, 43:4, 43:9, 44:25, 53:14, 53:15, 53:16, 53:18, 53:24
Office [2] - 16:4, 46:14
offices [1] - 8:15
OFFICIAL [1] - 1:25
Official [2] - 61:10, 61:15
often [1] - 7:19
once [3] - 7:22, 56:5, 59:3
One [1] - 3:3
one [29] - 11:18, 16:12, 21:25, 24:18, 26:19, 26:23, 28:5, 28:7, 28:25, 29:21, 29:22, 30:13, 30:17, 31:11, 31:25, 44:1, 45:22, 45:24, 47:19, 50:25, 51:22, 52:8, 54:5, 55:18, 55:21, 55:22, 55:24, 58:2, 60:3
ONE [1] - 1:19
ones [1] - 59:25
ONGE [1] - 2:14
Onge [1] - 4:19
opinion [3] - 37:16, 50:23, 51:2
Opinion [3] - 32:2, 32:3, 55:6
oppose [2] - 57:10, 57:17
opposed [4] - 5:24, 15:21, 43:6, 47:10
opposition [3] - 15:14, 15:16, 35:23
optimistic [1] - 59:7
option [1] - 57:18
Order [14] - 5:19, 18:7, 32:8, 33:5, 33:20, 33:22, 35:25, 55:12, 57:7, 57:16, 57:21, 58:17, 60:10, 60:16
order [17] - 17:18, 18:16, 27:4, 32:5, 32:9, 34:10, 42:14, 47:24, 48:13, 48:16, 48:18, 48:20, 48:25, 49:3, 50:1, 57:19, 58:6
ordering [2] - 34:13, 60:14
original [1] - 61:12
otherwise [1] - 48:1
ought [1] - 17:25
ourselves [1] - 50:20
outlier [1] - 45:21
outside [3] - 7:5, 30:21, 34:24
outweighed [3] - 9:21, 19:19, 33:23
overlooked [9] - 5:21, 6:1, 6:7, 9:4, 11:21, 12:10, 18:6, 19:14, 19:23
overturned [1] - 56:5
own [4] - 12:17, 21:15, 21:21, 25:22

## P

Pablo [1] - 4:10
PABLO [1] - 2:7
page [2] - 28:7, 28:21, 29:3
Page [7] - 15:10, 15:15, 19:16, 29:2, 36:2, 46:2, 47:1

pages [1] - 29:3
papers [1] - 6:20
paperwork [1] - 27:2
paraphrasing [1] - 25:7
pardon [1] - 11:9
part [8] - 6:21, 39:8, 41:11, 42:17, 43:16, 53:18, 54:18, 60:13
partially [1] - 14:24
particular [8] - 26:16, 31:9, 31:11, 31:15, 47:9, 52:23, 53:5, 57:19
parties [4] - 24:23, 39:4, 56:25, 57:22
parties' [1] - 58:17
parts [1] - 33:3
party [3] - 24:24, 45:23, 48:13
passing [1] - 45:15
patent [69] - 6:15, 6:21, 7:10, 7:15, 8:15, 8:17, 8:25, 9:8, 9:10, 9:13, 10:1, 10:13, 10:14, 13:24, 16:3, 16:8, 16:11, 16:14, 16:15, 16:19, 23:25, 24:2, 24:3, 24:19, 24:22, 25:3, 27:10, 27:22, 28:6, 28:8, 28:16, 28:22, 31:10, 31:15, 31:16, 38:24, 38:25, 39:12, 39:15, 39:17, 39:19, 40:18, 41:3, 41:5, 42:9, 43:2, 44:22, 44:24, 45:3, 46:9, 46:11, 46:13, 50:9, 51:8, 51:9, 51:16, 51:17, 51:18, 52:8, 53:13, 53:14, 53:18, 53:23, 53:24, 54:14, 54:17, 54:23
Patent [3] - 16:4, 46:12, 46:14
patentability [1] - 8:16
patents [8] - 5:22, 8:2, 24:2, 24:6, 27:22, 28:18, 46:24, 46:25
PCT [75] - 8:3, 8:4, 10:12, 12:15, 12:25, 13:16, 13:23, 14:3, 14:9, 14:11, 14:21, 15:9, 15:14, 15:19, 15:20, 15:22, 15:24, 16:3, 16:6, 16:9, 16:17, 16:23, 17:2, 22:11, 23:1, 23:22, 24:7, 24:15, 24:16, 24:20, 24:24, 25:12, 25:16, 25:21, 26:1, 26:5, 26:6, 26:9, 26:10, 26:11, 26:13, 26:20, 26:21, 27:1, 27:2, 27:9, 28:3, 28:15, 28:16, 29:11, 31:20, 37:3, 39:21, 40:5, 40:18, 41:9, 41:20, 41:24, 42:13, 42:20, 43:3, 44:8, 44:20, 45:19, 46:12, 50:6, 51:23, 52:3, 52:12
PCT's [1] - 22:18
PCT/SE [1] - 17:3
Peel [4] - 14:20, 15:1, 41:6, 42:18
pending [3] - 56:23, 57:16, 59:1
perform [1] - 13:2
performed [1] - 34:15
PERGAMENT [1] - 2:21
period [2] - 30:18, 57:7
permanent [1] - 56:12
permit [2] - 35:13, 35:17
permitted [2] - 20:3, 35:11
person [1] - 39:6
personnel [1] - 8:8
persuasive [3] - 11:5, 13:10, 13:23
pharmaceutical [1] - 42:23
philosophy [1] - 30:24
phone [1] - 56:6

**place** [5] - 24:4, 25:3, 25:4, 48:20, 52:11
**plain** [1] - 38:14
**PLAINTIFF** [2] - 2:5, 2:9
**plaintiffs** [1] - 4:9
**Plaintiffs** [3] - 1:4, 1:9, 1:14
**play** [1] - 57:5
**playing** [1] - 57:22
**PLAZA** [1] - 1:19
**Pluta** [1] - 4:25
**PLUTA** [4] - 2:21, 5:1, 59:23, 60:8
**point** [25] - 5:25, 6:4, 6:14, 7:17, 8:13, 10:4, 11:6, 11:25, 14:6, 14:8, 14:10, 17:9, 24:11, 25:20, 28:5, 32:16, 39:10, 42:4, 44:2, 44:10, 44:22, 45:16, 47:19, 54:5, 55:9
**pointed** [5] - 6:20, 11:14, 18:11, 18:22, 31:12
**pointing** [1] - 28:7, 51:22
**points** [4] - 6:12, 12:10, 12:23, 51:7
**policy** [7] - 20:7, 30:21, 31:1, 33:12, 34:20, 34:24, 51:4
**portion** [2] - 29:25, 30:6
**portions** [1] - 60:18
**posed** [1] - 56:3
**position** [4] - 15:18, 21:7, 38:17, 49:8
**possible** [2] - 59:7, 59:9
**power** [2] - 27:3, 27:4
**practice** [2] - 7:11, 7:12
**practitioner** [1] - 27:5
**precede** [1] - 37:2
**predominant** [6] - 6:17, 15:3, 29:18, 29:24, 33:25, 34:2
**prefer** [1] - 26:23
**prejudice** [1] - 58:17
**preparation** [15] - 7:13, 7:22, 8:25, 25:6, 25:7, 25:9, 39:15, 40:5, 40:8, 40:15, 40:19, 41:15, 47:10, 53:19
**prepare** [2] - 7:23, 53:17
**prepared** [7] - 6:11, 8:1, 8:7, 14:21, 37:11, 37:12, 53:3
**preparing** [7] - 7:16, 8:17, 25:16, 41:5, 53:11, 53:21, 53:22
**present** [1] - 50:4
**preserve** [1] - 58:23
**presume** [3] - 28:17, 32:2, 58:22
**previously** [2] - 32:7, 55:11
**Princeton** [1] - 2:12
**priority** [37] - 5:22, 6:15, 7:23, 9:1, 12:9, 12:15, 12:18, 12:21, 12:22, 12:25, 13:8, 14:22, 16:10, 16:13, 25:16, 28:9, 28:12, 28:19, 31:7, 31:8, 36:9, 37:3, 41:11, 41:13, 41:15, 44:3, 44:5, 44:9, 44:10, 44:11, 46:11, 46:25, 47:12, 51:11, 51:19
**priv** [1] - 54:19
**privilege** [49] - 9:7, 9:8, 9:9, 9:13, 9:15, 10:1, 10:10, 13:8, 18:20, 19:16, 19:18, 20:7, 20:9, 20:10, 20:12, 22:8, 23:9, 27:21, 27:25, 30:12, 30:16, 30:18, 32:7, 33:4, 33:6, 33:7, 33:8, 33:9,

33:10, 33:11, 33:14, 33:17, 34:22, 34:23, 36:20, 37:2, 39:17, 40:12, 47:22, 48:2, 48:4, 48:5, 49:18, 50:19, 50:22, 51:2, 53:6, 56:5
**privileged** [6] - 9:21, 27:21, 37:6, 48:6, 50:2, 56:17
**problem** [2] - 12:23, 48:16, 48:17
**procedure** [1] - 26:7
**Procedure** [2] - 48:9, 49:5
**proceed** [1] - 5:10
**proceedings** [2] - 6:25, 60:22
**process** [1] - 54:11
**produce** [4] - 34:9, 34:13, 34:16, 48:24
**produced** [10] - 29:20, 34:9, 34:10, 48:11, 50:12, 56:16, 57:12, 58:10, 58:12, 59:9
**producing** [5] - 29:20, 29:23, 30:7, 30:14, 30:17, 58:13
**product** [10] - 6:22, 7:11, 15:6, 15:7, 23:24, 24:1, 24:3, 24:4, 38:23, 39:11
**production** [6] - 10:7, 18:25, 19:22, 19:24, 57:8, 57:13
**products** [1] - 7:8
**prong** [2] - 27:12, 56:12
**proof** [3] - 6:2, 17:17, 17:22
**proper** [5] - 11:24, 22:1, 22:5, 23:13, 41:4
**properly** [2] - 36:7, 36:8
**proposition** [1] - 12:7
**prosecute** [2] - 27:6, 43:2
**prosecution** [26] - 7:19, 7:21, 8:13, 24:6, 24:16, 25:6, 26:17, 27:5, 28:1, 31:6, 31:10, 31:15, 31:16, 38:25, 39:14, 39:22, 40:4, 40:9, 40:16, 40:17, 40:24, 41:16, 47:10, 53:12, 53:13, 53:18
**protect** [3] - 18:16, 31:2, 50:1
**protected** [5] - 9:10, 20:17, 33:18, 50:7, 50:22
**protecting** [16] - 6:8, 6:9, 9:15, 9:16, 9:21, 9:25, 10:2, 19:15, 19:18, 19:21, 20:7, 20:22, 30:22, 34:19, 35:1, 49:21
**protection** [2] - 20:11, 46:13
**protective** [11] - 18:16, 32:5, 32:9, 47:24, 48:13, 48:16, 48:18, 48:20, 48:24, 49:2, 50:1
**protects** [3] - 30:19, 30:20, 47:22
**prove** [3] - 17:19, 23:2, 23:15
**provide** [2] - 13:2, 19:1
**provided** [4] - 7:12, 7:13, 36:19, 36:20
**providing** [1] - 54:19
**proving** [1] - 6:2
**Public** [1] - 61:11
**purposes** [3] - 26:22, 26:24, 45:11
**pursuant** [3] - 14:3, 17:18, 46:11
**pursued** [3] - 27:23, 28:1, 28:2
**pursuing** [1] - 27:23
**put** [8] - 28:22, 47:22, 48:7, 54:17, 57:7, 57:13, 58:17, 59:15
**putting** [3] - 15:17, 52:3, 57:18

**Q**

**questions** [3] - 13:13, 31:20, 54:2
**quick** [2] - 51:7, 53:10
**quickly** [1] - 21:5
**quite** [1] - 36:25
**quote** [3] - 24:16, 30:15, 46:19
**quoted** [1] - 46:2
**quoting** [1] - 15:10

**R**

**RAFTERY** [1] - 2:18
**raise** [2] - 10:8, 10:25
**RAKOCZY** [1] - 3:6
**Rakoczy** [1] - 5:6
**rather** [1] - 12:3
**read** [9] - 9:9, 15:25, 32:2, 36:10, 36:11, 43:16, 43:19, 43:22, 47:7
**reading** [3] - 10:17, 37:22, 38:14
**ready** [2] - 5:10, 13:12
**real** [6] - 20:15, 43:25, 45:17, 45:18, 52:5, 54:21
**really** [4] - 45:15, 51:7, 52:4, 53:10
**reason** [10] - 18:15, 18:25, 19:2, 19:3, 20:1, 21:10, 28:9, 45:13, 48:11, 48:22
**reasons** [6] - 6:18, 21:9, 26:23, 34:6, 41:14, 43:24
**rebuttal** [1] - 35:6
**received** [2] - 35:25, 36:16
**receiving** [6] - 14:3, 16:24, 17:1, 17:3, 26:14, 35:23, 43:1, 43:3, 43:8
**recent** [2] - 55:23, 55:24
**recently** [1] - 60:9
**recited** [1] - 18:24
**recognize** [1] - 49:20
**recognized** [2] - 9:17, 18:21
**reconsider** [4] - 57:19, 58:3, 58:10
**reconsideration** [20] - 4:4, 5:18, 11:16, 11:25, 21:13, 21:14, 21:16, 21:23, 22:2, 22:5, 35:24, 36:3, 36:17, 57:11, 58:5, 58:9, 58:11, 58:12, 58:20, 59:8
**record** [7] - 4:5, 28:20, 29:5, 29:8, 58:21, 58:22, 60:10
**redacted** [1] - 60:15
**redacting** [1] - 60:18
**Reddy's** [1] - 13:4
**reducing** [1] - 7:11
**reduction** [1] - 7:11
**REENS** [1] - 2:14
**Reens** [1] - 4:19
**refer** [1] - 19:16
**referencing** [1] - 28:21
**referred** [1] - 20:6
**referring** [2] - 19:21, 29:6
**refresher** [1] - 30:10
**regarding** [1] - 6:7
**regardless** [4] - 20:19, 22:3, 48:17,

49:15
**regularly** [1] - 16:3
**regulations** [2] - 54:18, 54:21
**reiterate** [1] - 47:5
**relate** [19] - 7:15, 10:13, 12:22, 13:25, 20:21, 22:10, 23:1, 24:6, 28:2, 31:16, 36:24, 37:1, 38:12, 38:24, 39:14, 39:15, 40:14, 40:19, 40:25
**related** [18] - 16:9, 16:16, 16:19, 23:10, 27:21, 28:1, 28:8, 28:18, 30:1, 30:7, 31:10, 31:14, 31:17, 36:9, 37:13, 37:14, 51:18, 51:22
**relating** [3] - 10:12, 24:4, 30:14
**relationship** [3] - 22:19, 45:16, 46:4
**relevance** [2] - 14:11, 14:13
**relevant** [14] - 21:23, 24:5, 33:6, 37:19, 37:21, 40:22, 40:24, 41:12, 41:13, 48:1, 48:24, 51:10, 51:20
**relied** [1] - 11:4
**rely** [1] - 22:14
**relying** [2] - 12:23, 32:11
**remember** [1] - 53:1
**remind** [1] - 55:22
**render** [1] - 52:24
**reply** [4] - 20:6, 21:17, 21:18, 50:15
**Reporter** [3] - 61:10, 61:11, 61:15
**REPORTER** [1] - 1:25
**representations** [1] - 22:17
**request** [3] - 5:18, 48:10, 56:23
**requested** [1] - 56:17
**require** [3] - 15:6, 18:25, 57:12
**required** [1] - 50:10
**requirement** [2] - 7:4, 15:7
**requirements** [3] - 8:2, 17:16, 41:3
**requiring** [1] - 48:16
**research** [2] - 24:4, 25:2
**researchers** [1] - 7:7
**reserve** [1] - 55:6
**respect** [6] - 6:14, 10:4, 12:11, 21:7, 23:3, 25:3, 35:8, 39:20, 39:21, 55:19, 59:3
**respectfully** [8] - 5:18, 5:20, 5:25, 9:4, 17:20, 18:5, 19:14, 41:18
**response** [3] - 36:17, 53:15, 59:14
**restatement** [3] - 6:5, 19:13, 33:1
**restrictive** [1] - 60:12
**result** [1] - 19:7
**returned** [1] - 56:15
**reverse** [1] - 9:14
**review** [3] - 37:8, 37:10, 55:5
**reviewed** [2] - 5:15, 38:2
**rise** [2] - 4:1, 23:24
**RMB/AMD** [3] - 1:5, 1:10, 1:16
**ROBERT** [1] - 2:21
**Robert** [1] - 4:25
**Rodriguez** [1] - 11:2
**role** [1] - 39:5
**Ropes** [3] - 4:10, 4:11, 4:12
**ROPES** [1] - 2:6

**Route** [1] - 2:22
**rule** [2] - 21:16, 56:24
**Rule** [5] - 17:18, 17:23, 48:10, 48:13, 49:8
**rules** [10] - 21:16, 29:19, 30:14, 32:10, 33:24, 34:2, 34:3, 47:25, 54:21, 57:4
**Rules** [2] - 48:9, 49:5
**ruling** [7] - 55:15, 55:18, 56:14, 59:2, 60:1
**run** [1] - 34:12

# S

**sacred** [1] - 18:20
**sacredness** [2] - 49:22, 50:19
**safe** [1] - 60:20
**sAIBER** [1] - 3:2
**Saiber** [1] - 5:5
**SALMEN** [4] - 3:6, 5:8, 59:24, 60:7
**Salmen** [1] - 5:6
**Sande** [3] - 18:11, 19:24, 49:16
**SANDOZ** [1] - 1:16, 2:20, 2:23
**Sandoz** [3] - 4:23, 59:23, 60:8
**SAVERIANO** [2] - 2:11, 4:17
**Saveriano** [1] - 4:17
**scenario** [1] - 57:13
**scenarios** [2] - 57:5, 57:6
**schedule** [1] - 59:10
**seal** [6] - 60:2, 60:4, 60:11, 60:12, 60:14, 60:17
**sealing** [1] - 60:14
**search** [3] - 24:20, 24:21, 52:13
**seated** [1] - 4:2
**second** [5] - 5:25, 27:12, 32:23, 34:4, 57:24
**secret** [20] - 6:3, 13:13, 17:12, 18:15, 19:22, 19:25, 20:11, 31:21, 32:24, 33:18, 34:20, 34:25, 35:2, 47:21, 48:12, 48:14, 48:21, 48:22, 49:1, 49:9
**secrets** [7] - 6:10, 9:16, 17:19, 19:4, 19:21, 19:23, 20:4
**Section** [7] - 15:9, 15:25, 16:5, 28:15, 43:7, 45:14, 46:15
**section** [1] - 28:9
**sections** [1] - 51:21
**see** [13] - 20:13, 22:13, 22:20, 25:1, 36:12, 43:20, 45:13, 47:8, 48:7, 54:19, 57:22, 60:15
**seek** [1] - 48:24
**seeking** [2] - 8:8, 46:13
**seem** [2] - 24:7, 24:9
**semantics** [1] - 53:12
**send** [1] - 53:14
**Sensient** [1] - 11:1
**sent** [1] - 10:8
**separate** [4] - 26:13, 26:25, 28:3, 37:14
**separately** [1] - 42:22
**separating** [1] - 48:4
**serious** [2] - 17:18, 19:7

**set** [2] - 36:2, 61:13
**several** [2] - 9:17, 47:8
**shall** [1] - 16:1
**shaped** [1] - 54:20
**SHEILA** [1] - 2:18
**Sheila** [1] - 4:24
**shielding** [1] - 33:12
**Shorthand** [1] - 61:11
**shortly** [2] - 55:7, 60:1
**show** [4] - 18:25, 19:3, 22:7, 23:4
**showed** [1] - 10:10
**showing** [8] - 17:18, 32:1, 32:10, 32:16, 32:17, 32:21, 47:18, 58:3
**shows** [3] - 49:25, 51:8, 51:10
**shuffle** [1] - 36:15
**side** [2] - 45:24, 45:25
**significant** [3] - 19:7, 27:4, 60:18
**significantly** [1] - 56:11
**silly** [1] - 31:18
**similar** [2] - 22:11, 26:24
**similarly** [1] - 10:6
**site** [2] - 54:9, 54:10
**situation** [6] - 8:19, 8:20, 10:4, 10:18, 10:22, 36:14
**situations** [1] - 11:21
**Siwik** [1] - 5:7
**SIWIK** [1] - 3:6
**six** [5] - 11:13, 12:6, 13:10, 31:5, 47:4
**SKB** [1] - 13:1
**skipping** [1] - 44:15
**slower** [1] - 51:13
**small** [1] - 54:5
**sold** [1] - 7:5
**somewhat** [1] - 34:17
**soon** [2] - 27:23, 27:25
**sorry** [9] - 12:13, 25:7, 30:5, 30:20, 35:12, 44:16, 51:15, 58:4, 58:14
**sort** [1] - 53:20
**sorts** [1] - 41:14
**Southern** [4] - 23:4, 23:5, 23:6, 23:7
**specific** [11] - 6:19, 13:15, 14:23, 15:17, 20:9, 23:23, 30:20, 30:21, 32:14, 33:11, 48:8
**specifically** [5] - 13:7, 30:19, 34:20, 47:11, 47:12
**specifics** [1] - 22:20
**splitting** [1] - 53:19
**sprung** [1] - 15:6
**St** [1] - 4:19
**ST** [1] - 2:14
**stage** [5] - 26:15, 26:21, 26:25, 27:7, 27:8
**Stamford** [1] - 2:15
**stand** [1] - 47:7
**standard** [14] - 11:16, 17:21, 17:23, 18:1, 18:2, 18:3, 18:5, 26:7, 32:1, 32:10, 32:12, 42:18, 48:18, 49:15, 56:1
**start** [1] - 26:17
**starting** [1] - 4:16

**State** [1] - 61:11
**state** [2] - 47:11, 47:12
**statement** [3] - 13:20, 15:8, 16:21
**STATES** [3] - 1:1, 1:19, 1:23
**states** [1] - 18:7
**States** [58] - 5:23, 6:6, 6:8, 6:16, 6:17, 6:23, 7:4, 7:6, 7:7, 7:25, 8:3, 8:10, 9:7, 9:11, 10:16, 11:1, 12:9, 13:1, 13:10, 14:12, 14:23, 15:2, 15:3, 15:20, 16:1, 16:4, 16:24, 17:14, 19:15, 20:15, 20:20, 36:8, 38:13, 41:1, 41:8, 41:20, 42:19, 42:23, 43:4, 43:18, 43:19, 45:9, 46:4, 46:6, 46:14, 46:18, 46:21, 46:23, 46:24, 47:1, 50:4, 50:10, 52:6, 54:7, 54:8, 54:15, 54:22, 61:11
**States'** [1] - 46:20
**status** [1] - 55:9
**statute** [4] - 28:16, 34:7, 34:8, 43:17
**statutes** [1] - 34:15
**stay** [19] - 55:11, 55:14, 55:19, 56:2, 56:4, 56:13, 56:19, 56:23, 57:9, 57:15, 57:21, 58:16, 58:18, 58:23, 59:1, 59:6, 59:10, 59:13
**Steinmetz** [1] - 4:12
**stenographic** [1] - 61:12
**sterile** [4] - 7:5, 7:8, 15:6, 15:7
**Steward** [1] - 4:19
**STEWARD** [1] - 2:14
**still** [5] - 23:2, 32:19, 36:1, 51:7, 57:11
**strategic** [1] - 26:22
**Street** [4] - 2:4, 2:15, 2:18, 3:7
**STREETS** [1] - 1:20
**strictly** [1] - 7:20
**strong** [6] - 6:7, 20:3, 34:5, 34:18, 35:1, 42:22
**strongly** [1] - 39:1
**subject** [3] - 18:12, 30:23, 51:5
**submission** [8] - 21:11, 23:12, 23:17, 36:6, 38:4, 38:5, 38:6, 38:8
**submissions** [5] - 5:16, 11:23, 18:9, 18:10, 28:22
**submit** [23] - 5:20, 6:16, 8:19, 9:4, 11:23, 13:6, 17:20, 18:2, 18:5, 19:3, 19:14, 20:5, 20:8, 20:18, 27:1, 37:22, 49:14, 53:14, 53:16, 53:18, 53:21
**submitted** [8] - 21:18, 22:7, 22:8, 24:23, 24:24, 28:25, 35:8, 45:8
**submitting** [2] - 21:20, 38:1
**subsequently** [1] - 56:8
**substantial** [1] - 5:24
**substantive** [1] - 23:18
**substantively** [1] - 22:6
**substituted** [2] - 17:21, 50:6
**substitutes** [1] - 48:19
**sufficient** [2] - 18:16, 50:1
**suggest** [2] - 31:19, 42:7
**suggests** [2] - 14:2, 23:14
**suit** [1] - 46:11
**Suite** [3] - 2:18, 2:22, 3:7

**summer** [1] - 4:11
**Supp** [1] - 11:1
**supplied** [1] - 38:15
**supported** [1] - 10:24
**supportive** [1] - 10:6
**supports** [3] - 10:16, 37:22, 49:7
**supposed** [1] - 32:21
**supposedly** [2] - 21:25, 24:6
**Supreme** [1] - 49:23
**sur** [1] - 50:15
**sur-reply** [1] - 50:15
**Sweden** [25] - 6:6, 7:7, 16:25, 17:2, 20:13, 20:14, 24:19, 25:4, 25:17, 30:18, 30:25, 33:11, 33:22, 34:5, 34:8, 34:18, 40:25, 43:5, 48:20, 52:9, 52:10, 53:21, 53:24
**Sweden's** [4] - 33:13, 33:14, 34:4, 34:7
**Swedish** [65] - 6:3, 6:9, 9:16, 10:12, 13:12, 14:21, 14:25, 16:14, 16:18, 16:20, 17:8, 17:12, 17:15, 17:16, 17:22, 17:24, 18:11, 19:1, 19:20, 19:22, 20:2, 20:6, 20:7, 24:10, 24:19, 24:22, 25:2, 25:16, 25:24, 26:14, 27:10, 31:21, 32:23, 32:24, 33:9, 33:10, 33:11, 34:13, 39:9, 39:20, 40:4, 40:6, 40:17, 40:18, 41:2, 41:3, 41:5, 41:8, 43:1, 44:7, 45:18, 47:17, 47:21, 48:19, 48:22, 50:6, 51:1, 52:10, 52:12, 53:24, 54:6

# T

**talks** [4] - 7:19, 43:20, 49:17
**teased** [1] - 42:21
**technical** [2] - 18:15, 49:1
**telephone** [1] - 55:20
**ten** [1] - 57:14
**tenuous** [1] - 53:7
**terms** [6] - 12:6, 17:12, 28:14, 38:22, 47:17, 59:6
**test** [1] - 6:5
**THE** [112] - 1:1, 4:2, 4:13, 4:15, 4:20, 4:22, 5:2, 5:9, 5:12, 5:15, 6:13, 6:24, 7:2, 10:19, 11:7, 11:10, 11:15, 12:5, 13:15, 13:19, 14:1, 14:7, 15:8, 15:13, 16:22, 17:4, 17:6, 17:9, 19:10, 19:12, 20:23, 20:25, 21:3, 21:7, 23:19, 25:25, 26:5, 26:9, 27:7, 27:12, 27:15, 27:18, 28:20, 29:2, 29:5, 29:8, 30:2, 31:23, 33:16, 35:4, 35:6, 35:10, 35:13, 35:16, 35:21, 36:20, 37:8, 37:19, 37:24, 38:7, 38:17, 39:25, 40:2, 40:7, 40:10, 40:17, 40:21, 40:23, 41:19, 42:1, 42:7, 43:11, 43:14, 44:14, 44:17, 44:23, 45:1, 45:4, 45:6, 45:17, 47:3, 47:19, 47:21, 48:7, 48:21, 49:4, 49:7, 49:13, 50:13, 50:15, 51:13, 52:2, 53:8, 54:3, 54:24, 55:2, 55:4, 55:16, 55:22, 55:25, 56:22, 57:5, 58:2, 58:6, 58:8, 58:16, 59:1, 59:11,

59:18, 59:22, 59:25, 60:9
**themselves** [2] - 27:6, 39:5
**therefore** [3] - 11:24, 41:14, 42:24
**they've** [2] - 21:18, 22:7, 24:10
**thinking** [3] - 25:15, 25:18, 25:19
**third** [5] - 6:4, 22:6, 44:14, 44:17, 57:18
**three** [5] - 5:19, 6:12, 52:8, 57:6, 57:23
**tight** [1] - 30:14
**timing** [3] - 14:10, 15:18, 59:6
**today** [10] - 4:9, 32:20, 55:8, 55:12, 55:13, 56:20, 58:21, 59:15, 59:19, 60:10
**together** [1] - 42:21
**took** [3] - 25:3, 25:4, 52:10
**topics** [1] - 23:18
**total** [1] - 20:6
**totally** [1] - 44:4
**touch** [9] - 5:22, 6:16, 17:14, 20:20, 36:8, 38:13, 40:25, 46:6, 50:3
**touched** [8] - 10:15, 12:25, 13:9, 20:16, 46:17, 46:21, 46:22, 46:25
**touches** [1] - 39:2
**touching** [5] - 12:9, 13:2, 13:4, 13:13, 38:22
**tough** [1] - 34:6
**towards** [1] - 22:9
**Trade** [7] - 8:12, 9:23, 12:16, 18:22, 47:5, 47:9, 49:19
**trade** [28] - 6:3, 6:9, 9:16, 13:12, 17:12, 17:19, 18:15, 19:4, 19:21, 19:22, 19:23, 19:25, 20:4, 20:10, 31:21, 32:24, 33:18, 34:20, 34:25, 35:2, 47:21, 48:12, 48:14, 48:21, 48:22, 49:1, 49:9
**Trademark** [2] - 16:4, 46:14
**transcription** [1] - 61:12
**travel** [1] - 60:20
**Treaty** [1] - 46:12
**treaty** [1] - 14:1
**tremendous** [1] - 41:14
**tried** [1] - 22:14
**trouble** [1] - 52:25
**true** [5] - 8:6, 9:14, 41:22, 50:20, 61:12
**try** [2] - 35:16, 36:18
**trying** [1] - 33:15
**turned** [2] - 17:14, 56:13
**two** [14] - 10:9, 16:12, 23:5, 23:22, 26:18, 33:3, 34:6, 45:22, 50:22, 51:21, 52:9, 52:11, 57:5
**type** [2] - 34:19, 52:17
**types** [3] - 18:1, 32:15, 34:21
**typically** [2] - 18:1, 32:15

# U

**U.S** [129] - 5:22, 5:23, 6:15, 7:4, 7:9, 8:1, 8:2, 8:6, 8:9, 8:20, 8:22, 8:24, 9:2, 9:6, 9:12, 9:15, 9:20, 9:22, 10:1, 10:13, 10:14, 13:16, 13:25, 14:4, 14:9, 14:12,

14:15, 14:18, 14:19, 15:1, 15:4, 15:6,
15:10, 15:15, 15:21, 16:6, 16:7, 16:9,
16:16, 16:19, 19:18, 20:16, 20:22,
22:19, 23:10, 24:2, 25:11, 25:18,
25:21, 25:22, 26:1, 26:16, 26:17, 27:5,
28:1, 28:8, 28:11, 28:16, 28:18, 28:25,
29:12, 29:19, 29:23, 30:24, 31:8, 33:4,
34:1, 34:2, 36:9, 36:10, 36:24, 37:1,
38:13, 39:7, 39:9, 41:10, 41:11, 42:2,
42:7, 42:17, 42:20, 42:22, 43:6, 43:7,
43:8, 43:14, 44:7, 44:8, 44:9, 44:10,
44:13, 44:18, 44:22, 44:24, 45:11,
46:7, 46:10, 46:25, 47:12, 47:24, 48:8,
49:2, 49:20, 50:6, 50:7, 50:25, 51:22,
51:24, 51:25, 52:3, 52:9, 52:14, 52:15,
52:21, 54:18, 54:21, 61:15
**U.S.'s** [1] - 33:23
**U.S.C** [2] - 15:25, 46:15
**UK** [3] - 8:23, 9:8
**ultimately** [2] - 52:15, 53:2
**unable** [2] - 10:22, 36:13
**unauthorized** [1] - 21:18
**under** [34] - 6:3, 8:16, 9:20, 12:19,
14:23, 15:9, 15:22, 15:24, 16:2, 17:23,
17:24, 18:25, 19:13, 20:2, 26:9, 26:10,
32:10, 33:18, 34:8, 34:19, 34:25, 35:2,
41:1, 41:5, 43:6, 46:13, 48:13, 49:2,
50:7, 53:5, 60:11, 60:12, 60:17
**understood** [2] - 27:24, 27:25
**undue** [3] - 30:23, 31:2, 51:6
**United** [59] - 5:23, 6:6, 6:7, 6:16, 6:17,
6:22, 7:4, 7:5, 7:7, 7:25, 8:3, 8:10, 9:7,
9:11, 10:16, 11:1, 12:9, 13:1, 13:9,
14:11, 14:23, 15:2, 15:3, 15:20, 16:1,
16:4, 16:24, 17:14, 19:15, 20:15,
20:20, 36:8, 38:13, 41:1, 41:8, 41:20,
42:19, 42:23, 43:4, 43:18, 45:9, 46:4,
46:6, 46:13, 46:18, 46:20, 46:21,
46:23, 46:24, 47:1, 50:3, 50:10, 52:5,
54:7, 54:8, 54:15, 54:22, 61:11
**UNITED** [3] - 1:1, 1:19, 1:23
**unless** [5] - 13:13, 23:17, 27:6, 31:20,
54:1
**unquote** [2] - 24:16, 30:15
**unreasonable** [2] - 50:24, 51:1
**unusual** [2] - 29:21, 29:22
**up** [7] - 7:7, 30:3, 37:11, 38:19, 56:8,
59:11, 60:17
**usable** [1] - 56:15
**useful** [1] - 35:20

## V

**vacuum** [3] - 20:12, 30:15, 42:14
**vague** [2] - 22:9, 22:12
**valid** [1] - 8:2
**valuable** [1] - 29:13
**various** [2] - 21:9, 56:2
**versions** [1] - 60:15

**versus** [3] - 6:6, 44:5, 53:11
**view** [3] - 48:15, 55:9, 55:13
**VLT** [4] - 8:12, 10:2, 18:23, 49:19
**voice** [1] - 30:3
**vs** [4] - 1:4, 1:10, 1:15, 11:1

## W

**Wahlstrom** [2] - 42:25, 49:17
**waived** [2] - 56:5, 56:8
**waiver** [1] - 56:10
**walk** [1] - 38:10
**Wallack** [1] - 4:18
**WALLACK** [1] - 2:10
**Waltham** [1] - 54:9
**wants** [1] - 24:25
**warranted** [1] - 60:17
**water** [1] - 7:1
**ways** [3] - 11:22, 11:23, 26:19
**week** [2] - 10:8, 35:9
**weighs** [1] - 6:5
**welcome** [1] - 4:13
**West** [1] - 3:7
**whatsoever** [1] - 12:21
**whole** [5] - 30:8, 40:2, 42:3, 43:1, 60:11
**Wiggins** [1] - 4:24
**WIGGINS** [2] - 2:18, 4:24
**wish** [1] - 17:9
**withheld** [9] - 7:13, 7:14, 12:14, 12:19,
36:7, 40:3, 40:11, 40:14, 47:13
**withhold** [4] - 32:6, 39:24, 40:1, 47:25
**Woodbridge** [1] - 2:22
**word** [1] - 43:12
**works** [1] - 30:25
**world** [7] - 42:24, 43:25, 45:17, 45:18,
52:5, 54:21, 58:1
**worried** [1] - 56:20

## X

**XIO1492** [1] - 61:16

## Y

**York** [5] - 2:8, 22:15, 23:4, 23:5
**York's** [2] - 23:6, 23:7
**Yun** [1] - 4:9